UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


ADAM STEELE,
BRITTANY MONTROIS, and     )
    A Class of More Than     )
    700,000 Similarly Situated     )
    Individuals and Businesses,     )
                                   )
    Plaintiffs     )
v.     )     CIVIL ACTION
     )     FILE NO.  1:cv-14-1523
UNITED STATES OF AMERICA     )
     )
    Defendant.     )     COMPLAINT-CLASS ACTION


## INTRODUCTORY STATEMENT

COME NOW Plaintiffs and file this complaint against Defendant, UNITED STATES OF AMERICA, to recover annual payments delineated as user fees to receive and renew a preparer tax identification number ("PTIN") to be placed on tax returns prepared by tax return preparers for others for compensation, and to prohibit the U.S. Treasury Department ("Treasury") from charging such fees in the future.

1.

Plaintiffs prepare tax returns for others for compensation and:  (a) paid the initial PTIN issuance user fee; or (b) paid the initial PTIN issuance user fee and one or more PTIN renewal user fees.

2.

Plaintiffs seek refunds of all user fees paid, plus interest, with respect to those Plaintiffs who have already paid such fees.   Plaintiffs also ask the Court to issue an injunction prohibiting the Defendant and any agency of the Defendant from charging user fees in order to receive an initial PTIN or annually renew a PTIN.   Finally, Plaintiffs ask the Court to issue an injunction prohibiting Treasury from asking more information than is necessary to issue a PTIN, and requiring Treasury to ask for such necessary information only once.   Alternative requests are set forth in the Counts at the end of this Complaint.

## THE PARTIES

3.

Named Plaintiff Adam Steele resides in Bemidji, Minnesota.

4.

Adam Steele is a certified public accountant (CPA) licensed by the State of Minnesota.  He has been a Minnesota CPA since 1998.

5.

Adam Steele regularly prepares, and has, for many years, prepared tax returns for compensation.

6.

As a Minnesota CPA, Adam Steele has met Minnesota CPA licensing requirements for each year since 1998.

7.

As a Minnesota CPA, Adam Steele must complete periodic renewal forms and annually renew his firm permit.  As a Minnesota CPA, Adam Steele was or is required to, among other things:  (a) pass an initial competency test; (b) meet State-specified ethics requirements; and (c) take annual Continuing Professional Education (CPE) courses.

8.

Named Plaintiff Brittany Montrois resides in McDonough, Georgia.

9.

Brittany Montrois is a CPA licensed by the State of Georgia.  She has been a Georgia CPA since 2011.

10.

Brittany Montrois, through Brittany L. Montrois, CPA, P.C., regularly prepares, and has for many years prepared, tax returns for compensation.

11.

As a Georgia CPA, Brittany Montrois has met the Georgia CPA licensing requirements for each year since 2011.

12.

As a Georgia CPA, Brittany Montrois must complete periodic renewal forms and semi-annually renew her firm permit.  As a Georgia CPA, Brittany Montrois was or is required to, among other things:  (a) pass an initial competency test; and (b) take annual CPE courses.

13.

The Plaintiff class is composed of individuals who prepare tax returns for others for compensation and firms (including partnerships) and companies the employees or some or all of the owners of which prepare tax returns for others for compensation, and who:  (a) paid the initial PTIN issuance user fee; or (b) paid the initial PTIN issuance user fee and one or more PTIN renewal user fees.  However, Allen Buckley and Allen Buckley LLC are excluded from the class.

14.

The Defendant has, through the Department of Treasury (Treasury) and the Internal Revenue Service (IRS), charged the class representatives and others who prepare tax returns, annual user fees for issuance and annual renewal of a PTIN.   It has also required filing of Form W-12 with respect to initial issuance and annual renewal of PTINs.

## PERTINENT FACTS

### 15.

In 2010, Adam Steele filed IRS Form W-12 and paid Treasury $64.25 to receive a PTIN for utilization in 2011.

### 16.

In 2011, Brittany Montrois, through Brittany Montrois, CPA, P.C., paid Treasury $64.25 to receive a PTIN for utilization in 2011.

### 17.

In 2011, Adam Steele paid Treasury $63 to renew his PTIN for 2012. His PTIN did not change from the PTIN he received for 2011.

### 18.

In 2012, Brittany Montrois, through Brittany Montrois, CPA, P.C., paid Treasury $63 to renew her PTINs for 2012.  Her PTIN did not change from the PTIN she received for 2011.

### 19.

In 2013, both Adam Steele and Brittany Montrois (through Brittany Montrois, CPA, P.C.) paid Treasury $63 to renew their PTINs for 2013. Their PTINs did not change from the PTINs received for 2011 and 2012.

### 20.

Prior to March 2, 2014, Adam Steele filed three (3) separate refund claims, requesting reimbursement of the PTIN user fees paid for 2011-2013.

### 21.

Adam Steele did not receive a refund claim rejection notice or approval notice from the U.S. Department of the Treasury ("Treasury") with respect to his initial PTIN fee payment of $64.25 or his two PTIN renewal fee payments of $63.

## IRS/TREASURY ACTIONS IN ISSUE[1]

---

[1]   The following citation and short form references to IRS/Treasury documents appear throughout this complaint:

| Formal Citation | Short Form |
|---|---|
| IRS Publication 4832 , "Return Preparer Review" (Rev. 12-2009) | Publication 4832 |
| "Notice of Proposed Rulemaking, *Furnishing Identifying Number of Tax Return Preparer*," 75 Fed. Reg. 14539 (March 26, 2010) | Proposed Regulations |
| "Notice of Proposed Rulemaking, *User Fees Relating to Enrollment and Preparer Tax Identification Numbers*, 75 Fed. Reg. 43110 (July 23, 2010) | Proposed User Fee Regulations |
| "Notice of Proposed Rulemaking, *Regulations Governing Practice Before the Internal Revenue Service*," 75 Fed. Reg. 51713 (Aug. 23, 2010) | Proposed Circular 230 Regulations |
| "Final Regulations, *Furnishing Identifying Number of Tax Return Preparer*," 75 Fed. Reg. 60309 (Sept. 30, 2010) | Final Regulations |
| "Final Regulations, *Regulations Governing Practice Before the Internal Revenue Service*" 76 Fed. Reg. 32286 (June 3, 2011) | Final Circular 230 Regulations |

22.

In January 2010, the IRS issued IRS Publication 4832, "Report Preparer Review (Rev. 12-2009)" [hereinafter "Publication 4832].[2]   This document, which is not law, proposed certain actions be taken to regulate the tax return preparation industry.

23.

Publication 4832 states (at 1, 8):  "Currently, any person may prepare a federal tax return for another for a fee."

24.

With the exception of persons prohibited from preparing tax returns by court order, the quoted sentence of the immediately preceding paragraph was correct upon the date of issuance of Publication 4832, and it has remained correct through the present date.

25.

No recently enacted legislation led to preparation and issuance of Publication 4832.   Instead, this publication is purely an IRS-generated product. No law has been enacted since issuance of Publication 4832 that would permit Treasury or any federal agency to prohibit anyone from preparing tax returns for compensation.   No law existed prior to the issuance of Publication 4832 that would have permitted any Treasury or

---

[2] Publication 4832 can be found at http://www.irs.gov/pub/irs-pdf/p4832.pdf.

any federal agency to issue a regulation or regulations that would have prohibited anyone from preparing tax returns for compensation.

26.

Publication 4832 recommended that the tax return preparation industry be regulated in a particular manner, including IRS testing of certain preparers to determine eligibility to be able to prepare returns for others for compensation and annual continuing professional education requirements for those persons who passed the IRS' test.

27.

Previously, the IRS required tax return preparers to include an identifying number of prepared returns.  Return preparers could use their Social Security Number or obtain (for free) a PTIN from the IRS.

28.

Publication 4832 recommended that, in order to aid the IRS, individuals who prepare tax returns be required to acquire a Treasury-provided PTIN, and be charged upon issuance and every three years thereafter for the PTIN.

29.

On March 26, 2010, the IRS issued "Notice of Proposed Rulemaking, *Furnishing Identifying Number of Tax Return Preparer*," 75 Fed. Reg. 14539 [hereinafter "Proposed Regulations"].  The Proposed Regulations would, if

adopted, require individuals who prepare tax returns to acquire and annually renew a PTIN.

30.

The preamble to the Proposed Regulations states:  "The Report [i.e., Publication 4832] recommended, in part, that tax return preparers be required to obtain and use a PTIN as the exclusive preparer identifying number and undergo a tax-compliance check.  As discussed below, the proposed regulations implement those recommendations."

31.

On July 23, 2010, the IRS issued a notice of proposed rulemaking and notice of public hearing titled "User Fees Relating to Enrollment and Preparer Tax Identification Numbers," 75 Fed. Reg. 43110 (July 23, 2010) [hereinafter "Proposed User Fee Regulations]. The regulations proposed that tax return preparers be charged $50 to acquire a PTIN and, thereafter, $50 annually to renew a PTIN.

32.

The preamble to the Proposed User Fee Regulations described in the preceding paragraph provides:  "The IRS is implementing the recommendations of Publication 4832 . . ."

33.

On September 30, 2010, the IRS issued "Final Regulations, *Furnishing Identifying Number of Tax Return Preparer*," 75 Fed. Reg. 60309 [hereinafter "Final Regulations"], requiring individuals who prepare tax returns to acquire and annually renew a PTIN, and pay $50 for PTIN issuance and $50 per year thereafter for renewal.

34.

Under the Final Regulations, PTINs expire annually and must be renewed each year.

35.

The preamble to the Final Regulations stated: "Individuals who obtain a PTIN receive the ability to prepare all or substantially all of a tax return or claim for refund." The preamble to the Final Regulations noted that commentators questioned IRS's legal authority to bestow (or withhold) the "ability" to prepare tax returns. Nonetheless, without citing any legal authority establishing its ability to bestow (or withhold) the "ability" to prepare tax returns, the IRS stated that it had such legal authority.

36.

In addition, as part of the initiative arising out of Publication 4832, the IRS also published proposed regulations amending the "Treasury Department Circular 230" rules governing representatives before the Internal Revenue Service to, for the first time ever, include tax return

preparation in the list of regulated activities. "Notice of Proposed Rulemaking, *Regulations Governing Practice Before the Internal Revenue Service*," 75 Fed. Reg. 51713 (Aug. 23, 2010) [hereinafter "Proposed Circular 230 Regulations"]. The Proposed Circular 230 Regulations required that certain persons take a test, pass the test, acquire a PTIN and take certain continuing education courses in order to be permitted to prepare tax returns for compensation.

37.

The preamble to the Proposed Circular 230 Regulations states: "This document proposes amendments to Circular 230 based upon certain of the recommendations in the Report [i.e., Publication 4832]."

38.

On June 3, 2011, the above-described portions of the Proposed Circular 230 Regulations (i.e., testing, continuing education and PTINs) were issued as final regulations. "Final Regulations, *Regulations Governing Practice Before the Internal Revenue Service*" 76 Fed. Reg. 32286 (June 30, 2011) [hereinafter "Final Circular 230 Regulations"].

39.

Substantial portions of the Final Circular 230 Regulations, including the testing and continuing education requirements, were struck down as unlawful in *Loving v. Internal Revenue Service*, 917 F. Supp. 2d 67 (D.D.C. 2013), *aff'd* 742 F.3d 1014 (D.C. Cir. 2014). Among other things, *Loving* held

that tax return preparation is not subject to regulation under 31 U.S.C. § 330 because preparing a tax return is not representing a person before Treasury.

40.

 PTIN fees, and the lawfulness of such fees, were not in issue in *Loving*.

41.

Once issued, a PTIN does not change.

42.

When a practitioner renews a PTIN, the number (PTIN) that applied in the preceding year continues to be the number, regardless of the information provided to the IRS or its agent by the practitioner in the renewal process.

43.

The Final Circular 230 Regulations stated that a PTIN is required to prepare tax returns on behalf of individuals, companies and other entities for compensation.

44.

The Final Circular 230 Regulations added a category to the "Who may practice" section of Circular 230 to, for the first time ever, include a category titled "registered tax return preparers."

45.

In 2014, after the *Loving* decision became final, Treasury issued a document titled "Guidance to Practitioners Regarding Professional Obligations under Treasury Circular 230." This document excludes "registered tax return preparers" from the list of persons regulated under Circular 230.

46.

In pertinent part, 26 U.S.C. §6109(a)(4) provides: "A return or claim for refund prepared by a tax return preparer shall bear such identifying number for securing proper identification of such preparer, his employer, or both, as may be prescribed."

47.

The legislative history of 26 U.S.C. § 6109(a)(4) provided that the PTIN requirement was created to ". . . enable the IRS to identify all returns prepared by an specific individual in cases where the IRS has discovered some returns improperly prepared by that individual."

48.

Nothing in the legislative history of 26 U.S.C. § 6109(a)(4) indicates that the provision was enacted to help or provide a special benefit to tax return preparers.

49.

Under 26 U.S.C. §6109(c), Treasury is authorized to require tax return preparers to provide identifying information necessary for Treasury to issue a PTIN, but no additional information can be required.

50.

26 CFR §301.6109-1(a)(ii) provides: "Uses.  Social Security numbers, IRS individual taxpayer identification numbers and IRS adoption taxpayer identification numbers are used to identify persons."

51.

For an individual with a Social Security number (SSN) or a Taxpayer Identification Number (TIN), a PTIN can be issued following receipt of the individual's name, SSN or TIN, and address.

52.

Under 26 U.S.C. §6109(d), absent a Treasury regulation requiring a different identifying number, an individual's SSN is his identifying number for purposes of the requirements of 26 U.S.C. §6109, including the PTIN requirement of 26 U.S.C. §6109(a)(4).

53.

For Treasury identification purposes, a person's PTIN is based on his SSN.  Each individual's SSN is unique (i.e., no two individuals in the federal tax system have the same SSN or TIN).

54.

Regulations issued in January 2009 permitted a preparer to omit his PTIN (including possibly his Social Security number) from the copy of the return he provided to the taxpayer.

55.

A thorough penalty system exists for failure to include one's PTIN on a prepared return, including a $50 per return penalty (up to a maximum of $25,000 per year) and a provision (26 U.S.C. §7407) allowing the U.S. Treasury Department sue a preparer and seek an injunction requiring the preparer to include a PTIN on prepared returns.  Section 7407 further provides for possible prevention of future return preparation ability for repeated failure to include a PTIN on returns following an order that the PTIN be disclosed on prepared returns.  Many other penalties exist in the Internal Revenue Code that potentially apply to tax return preparers.

56.

Although regulations issued in 2010 set the PTIN issuance and renewal fees at $50, additional fees were added after issuance of the regulations, adding additional charges to be paid to one or more third party vendors.

57.

Neither the Proposed Regulations nor the Final Regulations relating to the PTIN and PTIN fees specified activities or services that the IRS would perform in connection with the user fees it collected.

58.

The IRS' basis for charging of fees for PTINs was first stated in the preamble to the Final Circular 230 Regulations.

59.

The preamble to the Final Circular 230 Regulations provided that the PTIN issuance fee was set at $64.25, including a $14.25 charge paid to a third party to "administer the PTIN application and renewal process."

60.

Annual renewal fees include $13 paid to a third party to administer the PTIN renewal and $50 paid to the IRS to perform activities that were ruled unlawful by the *Loving* decision.  Thus, the total annual renewal fee is $63.

61.

The incremental cost to Treasury to issue a PTIN is $14.25, and such cost is paid to a third party.

62.

The incremental cost to Treasury to renew a PTIN is $13, and such cost is paid to a third party.

63.

In the preamble to the Final Circular 230 Regulations, Treasury estimated revenue from the user fee charged for PTINs and specified the things to be done for the fees.  The preamble provided that it anticipated 800,000 to 1,200,000 PTINs would be issued or renewed annually and tax return preparers would annually pay $51 Million to $77 Million for PTIN issuance and renewal.    The anticipated expenses payable to vendors "to administer the PTIN application and renewal process" was $11 Million to $17 Million.  The fees to be retained by the IRS, at a rate of $50 per PTIN, were estimated at $59,427,633.

64.

The preamble to the Final Circular 230 Regulations stated the IRS would use the $59,427,633 of the fees collected for the following activities: (1) costs of administering registration cards or certificates for each registered preparer; (b) costs associated with prescribing forms, instructions, or other guidance with respect to registered preparers; and (c) tax compliance and suitability checks.

65.

Registration cards or certificates have not been issued with respect to PTINs.  Instead, individuals receiving a PTIN have been notified of the PTIN via letter or email.   In 2012, the second page of the PTIN acknowledgement letter included a section which was approximately two inches by three inches with rounded corners that listed Treasury identifying information and the name of the PTIN recipient, the PTIN, Treasury's file number and the PTIN's expiration date.

66.

Historically, the IRS has never charged for issuing tax instructions, issuing guidance to taxpayers or tax return preparers, or for creation (or dissemination) of tax forms.

67.

Tax compliance and suitability checks have not been conducted with respect to anyone in connection with issuance or renewal of PTINs.

68.

The Final Circular 230 Regulations provided that attorneys and CPAs would not be subject to the tax compliance checks and suitability checks.

69.

According to Carol A. Campbell, Director of the Return Preparation Office of the IRS, the IRS had collected more than $105,000,000 in PTIN and competency testing user fees through 2012.

70.

Treasury, the IRS, or another federal agency has sold the PTIN database to vendors.

71.

Vendors have used the PTIN database that they purchased in attempts to sell goods and services to person who paid for a PTIN.

72.

According to a 2010 article in *The Washington Examiner* by Timothy P. Carney, the former (i.e., including in 2007) CEO of H&R Block (Mark Ernst) was hired in 2009 as the Deputy Commissioner of the IRS, and Mr. Ernst acted as "co-leader" of the IRS Publication 4832 project.

73.

In 2011, the IRS issued IRS Notice 2011-6.

74.

Among other things, IRS Notice 2011-6 exempted employees of many large tax return preparation companies other than CPA firms (e.g., H&R Block) from the testing and continuing education requirements, provided

PTINs were acquired and PTIN fees were paid by all tax return preparers and individuals of such companies who helped prepare tax returns, and further provided that all of such employees who were not a CPA, attorney or enrolled agent ("EA") were supervised by a person who was a CPA, attorney or EA.

75.

IRS Form W-12 must be completed to acquire a PTIN and to renew a PTIN for each year after initial issuance.

76.

The following questions are included in the current Form W-12:  birth date, email address, past felony convictions, federal tax compliance status, professional credentials, whether Form 1040 is prepared, whether the preparer is supervised by someone, and whether the tax return preparer is self-employed or an owner of a tax preparation business.

77.

Other than name, address and SSN, none of the questions on Form W-12 are necessary to issue a PTIN.

78.

In all states, in order to become a CPA, a competency test must be passed.

79.

In all 50 states, once a person is licensed as a CPA, recurring fees must be paid to the state and annual continuing education courses must be taken to maintain the license.

80.

In order to become an EA qualified to represent persons before Treasury, a competency test must be passed and a fee must be paid to Treasury.

81.

Once a person becomes an EA, in order for EA status to be retained, generally recurring fees must be paid to the IRS and annual continuing education courses must be taken.

82.

Based on information provided by a former IRS employee who now represents persons in tax controversy matters as an EA but, does not prepare tax returns, the IRS is now requiring EAs who do not prepare tax returns to acquire and renew a PTIN.

83.

In 2011, Jesse E. Brannen, III, P.C. filed a refund claim with respect to his initial PTIN application, and that refund claim was denied.

84.

Prior to 2013, Allen Buckley filed refund claims with respect to the initial PTIN fee paid by Allen Buckley and a PTIN renewal fee paid by Allen Buckley LLC, and the Internal Revenue Service neither accepted nor rejected the refund claims.

## BASIS UTILIZED FOR CHARGING FEES

85.

The alleged basis for legality of the user fees for issuance and renewal of PTINs, cited in the Proposed User Fee Regulations, is the user fee statute, 31 U.S.C. § 9701.

86.

Under the user fee statute, 31 U.S.C. § 9701, fees may be charged by agencies for certain "services and things of value" provided by agencies. This statute permits agency heads to prescribe regulations establishing charges for services or things of value provided by the agency. Such regulations are subject to policies prescribed by the President and must be as uniform and practicable.

87.

Each charge under the user fee statute must be fair and based on:  (a) costs to the government; (b) the value of the service or thing to the recipient; (c) public policy or interest served; and (d) other relevant facts.

## CASE LAW REQUIREMENTS FOR CHARGING USER FEES

88.

Applicable case law holds that fairness is determined by analyzing the costs incurred by the federal government for the thing provided.

89.

The user fee statute has been applied to voluntary payment situations wherein by law someone does not have a right to something, such as utilization of government property.

90.

Under authority of the U.S. Supreme Court, including *Federal Power Commission v. New England Power Company*, 415 U.S. 345 (1974), a "special benefit" must exist in order for someone to be charged a user fee under the user fee statute, 31 U.S.C. §9701.   This benefit must be a personal benefit, not an industry benefit or a general public benefit.  Furthermore, under these authorities, a user fee cannot be charged with respect to an involuntary activity.  Under *National Cable Television Association v. United*

*States*, 415 U.S. 336 (1974),  imposition of a user fee in excess of the amount required to provide a special benefit to the payer is unlawful.

91.

The law does not permit user fees under 31 U.S.C. § 9701 to be charged with respect to fulfillment of a requirement that is subject to a penalty enforcement scheme because no special benefit is granted and the thing that is done is done involuntarily.

92.

According to *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Co.*, 463 U.S. 29, 50 (1983), the reason given by a federal agency for its actions is what must be analyzed to determine whether regulatory action is lawful.

93.

No special benefit is provided to a tax return preparer who obtains or renews a PTIN because, in accordance with the *Loving* case and the U.S. Constitution, a tax return preparer has a right to prepare returns for others for compensation.

94.

Tax returns preparers who had acquired a PTIN prior to the new (2010/2011) regulatory scheme prompted by Publication 4832 continued to

use the same PTIN, but they were annually charged to renew such PTIN annually after 2010.

95.

Including numbers and letters, a PTIN has the same number of digits as an SSN.

**UNLAWFULNESS**

96.

Tax return preparers have unlawfully been required by the IRS to pay the IRS to acquire a PTIN and to pay the IRS to renew the acquired PTIN, because the IRS has required them to acquire a PTIN, and penalties potentially apply for failure acquire a PTIN and place it on prepared tax returns.

97.

The Final Regulations state that the special benefit tax return preparers receive in exchange for the fee is the right to prepare returns and refund claims for compensation.  However, as specifically and correctly pointed out in Publication 4832 in two places (pages 1 and 8), that right exists and has always existed.  Thus, there is no benefit and there is no special benefit.  Accordingly, charging of fees to issue a PTIN is unlawful.

98.

Since there is no lawful basis for requiring renewal of a PTIN, charging user fees for renewal of a PTIN is unlawful.

99.

Since all that is necessary to issue a PTIN is name, SSN (or TIN) and address, requiring tax return preparers to provide any additional information is unlawful.

100.

Alternatively, if charging an initial user fee for the limited purpose of issuing a PTIN is not unlawful, the initial issuance user fee amount (currently $64.25) is excessive by $50 because the activities the IRS asserted it would fund with the $50 per person fee (a) were ruled to be unlawful by *Loving*, and (b) with the exception of issuing Form W-12 and related guidance, have not been done.  Accordingly, this fee is unlawful to the extent it exceeds $14.25.

101.

Also alternatively, if the PTIN renewal user fee (currently $63) is not unlawful, it is excessive by $50 for the reasons specified in the preceding paragraph and thus is unlawful to the extent of $50.

## JURISDICTION AND VENUE

### 102.

This Court has subject matter jurisdiction of this action under 28 U.S.C §1331, 5 U.S.C. §702 and 5 U.S.C §706.  Alternatively, this Court has subject matter jurisdiction under 28 U.S.C. § 1346.

### 103.

This action is for equitable relief and restitution of monies unlawfully exacted by the IRS from plaintiffs.  The Secretary of the Treasury, Jack Lew, is personally responsible for compliance.

### 104.

This Court has jurisdiction over all parties to this lawsuit, and venue is appropriate in this District pursuant to 28 U.S.C. §1391.  Concerning venue, in Stafford v. Briggs, 444 U.S. 527, 544 (1980), the U.S. Supreme Court stated:  "Without doubt, under §1391(e), venue lies in every one of the 95 federal districts . . ."

## CLASS ACTION ALLEGATIONS

### 105.

The Plaintiffs bring this action pursuant to Rule 23 and, in particular, Rule 23(b) (1), of the Federal Rules of Civil Procedure.  Class certification is also appropriate under Rule 23(b) (2).

106.

The class is so numerous that joinder of all members is impractical. The number of plaintiffs is believed to be between 700,000 and 1,200,000. The total sought to be recovered is believed to exceed $130,000,000.

107.

The questions of law common to all plaintiffs are the following:

Is it lawful for Treasury to require payment of the $64.25 user fee by the Plaintiffs in order to obtain a PTIN?

Is it lawful for Treasury to require payment of the $63 user fee by Plaintiffs to renew a PTIN?

Is it lawful for Treasury to annually require tax return preparers to complete Form W-12, when such form asks information beyond what is required to issue a PTIN?

108.

The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would impose incompatible standards of conduct for Defendant.  In addition, the prosecution of separate actions by individuals of the class would create a risk of adjudications with respect to individual class members which, as a practical matter would be dispositive of the interests of the other members not parties to such individual adjudications or which could substantially impair or impede their ability to protect their interests.

109.

Treasury has acted or refused to act on grounds that apply generally to the class, so that similar relief is appropriate respecting the class as a whole.

110.

The class is so numerous that joinder of all members is impractical. There are questions of law common to the class.  The claims and defensive of the representative parties are typical of the claims or defenses of the class.  The representatives will fairly and adequately protect the interests of the class.

111.

The Plaintiffs are entitled to injunctive relief prohibiting Treasury from charging PTIN issuance and renewal user fees in the future.

112.

The Plaintiffs who have paid the fee(s) are entitled to a refund of the user fee(s) paid via restitution, and there are no factual issues in dispute (i.e., the class is composed of people who have paid PTIN user fees).

113.

All dispositive questions of law and fact are common to the Plaintiff class.  Judicial economy and case management dictate that the case proceeds as a class action.

114.

The named Plaintiffs incurred the user fees (both the initial fee and two renewal fees) and, with respect to Adam Steele, unsuccessfully sought refunds of the fees.

## REQUESTED RELIEF

WHEREFORE, the Plaintiffs pray for the following relief against the Defendant:

<u>Count 1</u>: A declaratory judgment by the Court that Treasury is without statutory authority to charge user fees for issuance of a PTIN;

<u>Count 2</u>:  A declaratory judgment by the Court that Treasury is without statutory authority to charge user fees for renewal of a PTIN, and that all renewal requirements should cease;

<u>Count 3</u>:  Should the Court determine that it is not unlawful for Treasury to charge for issuance of a PTIN, a declaratory judgment by the Court that the user fees charged for issuance of a PTIN are excessive and unlawful to the extent they are excessive;

<u>Count 4</u>:  Should the Court determine that it is not unlawful for Treasury to require annual renewal of a PTIN and to charge for renewal of a PTIN, a declaratory judgment by the Court that the user fees charged for renewal of a PTIN are excessive and unlawful to the extent they are excessive;

<u>Count 5</u>:   As restitution or damages, the Court order Treasury to refund to Plaintiffs any user fees paid to acquire or renew the PTINs issued to Plaintiffs, plus interest;

<u>Count 6</u>:  Should the Court determine it is lawful to charge for the issuance of a PTIN but the PTIN issuance user fee is excessive, in lieu of the restitution requested in Count 5, the Court order Treasury to refund to Plaintiffs, as restitution or damages, the excessive amount paid, plus interest;

<u>Count 7</u>:  Should the Court determine it is lawful to charge for the renewal of a PTIN but the PTIN renewal user fee is excessive, in lieu of the restitution requested in Count 5, the Court order Treasury to refund to Plaintiffs, as restitution or damages, the excessive amount paid for all years for which renewal user fees are paid, plus interest;

<u>Count 8:</u> A permanent injunction prohibiting the Treasury Department or any agency or department thereof from charging user fees to issue a PTIN;

<u>Count 9:</u> A permanent injunction prohibiting the Treasury Department or any agency or department thereof from charging user fees to renew a PTIN;

<u>Count 10:</u>  Should the Court determine that it is lawful to charge fees to issue a PTIN but the user fees are excessive, a permanent injunction

prohibiting the Treasury Department or any agent thereof from charging excessive user fees for issuance of a PTIN;

Count 11:  Should the Court determine that it is lawful to charge user fees to renew a PTIN but the user fees are excessive, a permanent injunction prohibiting the Treasury Department or any agent thereof from charging excessive user fees for renewal of a PTIN;

Count 12:  An injunction prohibiting Treasury from asking more information than is necessary to issue a PTIN, and requiring Treasury to ask for such necessary information only once;

Count 13:  Award to Plaintiffs the costs of litigation, legal fees and other penalties allowed by law, including reasonable compensation to the class representatives for their time, effort and risk and reasonable compensation to counsel for the Plaintiffs for undertaking the action; and

<u>Count 14:</u>  Award the Plaintiffs all further relief that it deems just and proper.

Respectfully submitted,

/s/  Stuart J. Bassin

_____

Stuart J. Bassin
DC Bar Number 366669
The Bassin Law Firm PLLC
Suite 300
1629 K Street, NW
Washington, DC 20006
(202) 895-0969
sjb@bassinlawfirm.com

COUNSEL FOR PLAINTIFFS