UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADAM STEELE and,<br>BRITTANY MONTROIS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendants. | Civil Case No. 14-1523 |
| WALLACE G. DICKSON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendants. | Civil Case No. 14-2221 |

## MEMORANDUM OPINION

Plaintiff Wallace Dickson and plaintiffs Adam Steele and Brittany Montrois seek an order consolidating the above-captioned cases because they share common questions of law and fact. Plaintiff Dickson further moves for appointment of the law firms Hausfeld LLP and Boies Schiller & Flexner LLP ("BSF Group") to serve as interim co-lead counsel in the proposed consolidated action. Plaintiffs Steele and Montrois seek the appointment of the law firm Motley Rice as interim lead counsel in the proposed consolidated action, to work with Allen Buckley and others ("Motley Rice Group").

I.  **BACKGROUND**

In 2010, the IRS promulgated new regulations requiring tax-return preparers to meet requirements for competency testing and engage in continuing education. *See* 31 C.F.R. §§ 10.4(c), 10.5(b), 10.6(d)(6), (e)(3). Additionally, the IRS also required all tax preparers to pay to obtain a Preparer Tax Identification Number ("PTIN"), and pay to renew it each ear. *See* 26 C.F.R. § 300.12(a), (b).

Allen Buckley subsequently agreed to represent Jesse Brannen, a tax-return preparer who wanted to challenge the new PTIN fees in court. In May 2011, Buckley filed a complaint, *Brannen v. United States*, No. 4:11-cv-00135, 2011 WL 8245026 (N.D. Ga. Aug. 26, 2011), arguing that the IRS lacks statutory authority to require paid tax preparers to file for, pay for, and receive a PTIN. *Id.* at *1. Although the *Brannen* case was subsequently dismissed, *see Brannen*, 2011 WL 8245026; *aff'd*, 682 F.3d 1316 (11th Cir. 2012), Mr. Buckley further developed these themes in an article he wrote, *Is Treasury's New Regulatory Scheme for Return Preparers Lawful?*, published in Tax Notes magazine in October 2012. Buckley Decl. ¶ 8, Ex. A (reprinted at http://www.taxanalysts.com/www/features.nsf/Articles/F40714F3406FC5E585257D86000CDD68?OpenDocument).

Mr. Buckley also alleges that he was substantially involved in another case challenging the legality of the IRS's efforts to regulate tax-return preparers, *Loving v. IRS*, 917 F. Supp. 2d 67 (D.D.C. 2013). Buckley Decl. ¶ 7. He alleges that he reviewed all major briefs, provided research, and frequently consulted with Daniel Alban, lead counsel in the *Loving* case. *Id.* This case was successful: In February 2014, the D.C. Circuit affirmed the lower court's holding that the IRS lacked the authority to regulate tax-return preparers. *Loving v. IRS*, 742 F.3d 1013, 1014-15 (D.C.

Cir. 2014). The D.C. Circuit opinion relied on many of the same arguments Buckley set forth two years earlier in his Tax Notes article.

In the meantime, Mr. Buckley had agreed to represent Adam Steele, who was introduced to him by Mr. Alban. Knowing Mr. Buckley sought local counsel in Washington, D.C., Mr. Alban introduced Mr. Buckley to Stuart Bassin. Buckley Decl. ¶ 13. Mr. Bassin also claims to have been involved with the *Loving* case, occasionally sharing insights and making substantive suggestions about the case on appeal. Decl. of Stuart Bassin, *Dickson* ECF No. 17-2.[1] Mr. Bassin, after working extensively with Allen Buckley, filed the *Steele* complaint in this Court on September 8, 2014. *Steele* Compl. The *Steele* plaintiffs seek review of the IRS's decision under the Administrative Procedure Act (APA).

Several attorneys became interested in the litigation at this point, including James Pizzirusso of Hausfeld, Jeffrey Kaliel of Tycko & Zavareei, and Scott Gant of BSF. In the meantime, the relationship between Mr. Buckley and Mr. Bassin deteriorated, and they terminated their working relationship. Buckley Decl. ¶ 16; Bassin Decl. ¶¶ 13-14. After meeting with Mr. Buckley and discussing potential arrangements as co-counsel, Mr. Pizzirusso and Mr. Kaliel declined to work with him. Buckley Decl. ¶ 19, Pizzirusso Decl. ¶ 18. Mr. Buckley alleges that Mr. Gant of BSF declined to return his calls. Buckley Decl. ¶ 21. Mr. Buckley reached an agreement with Motley Rice LLC that it would serve as counsel in the *Steele* case.

Later that month, Hausfeld, BSF, and Tycko & Zavareei LLP, filed the *Dickson* complaint on December 31, 2014. The *Dickson* complaint asserts claims for illegal exactions, contending that the IRS lacks legal authority to impose PTINs fees—at all, or alternatively, in the amounts charged.

---

[1] Mr. Bassin is now collaborating with the *Dickson* plaintiff.

One week later, the plaintiff in *Dickson* moved to consolidate the *Dickson* and *Steele* actions, and sought appointment of Hausfeld and BSF as interim co-lead counsel for the proposed class, supported by Mr. Bassin. The *Steele* plaintiffs also move for consolidation, but seek the appointment of Motley Rice as interim class counsel, working with Mr. Buckley and others. The government has not opposed their motions.

## II. CONSOLIDATION

Federal Rule 42(a) permits consolidation of actions that involve "a common question of law or fact." Fed. R. Civ. P. 42(a). Local Rule 40.5 states that two or more civil cases "are deemed related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction or (iv) involve the validity or infringement of the same patent." LCvR 40.5(a)(3).

"In deciding whether to consolidate, courts must 'weigh the risks of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated." *Royer v. Fed. Bureau of Prisons*, 292 F.R.D. 60, 61 (D.D.C. 2013) (quoting *Nat'l Ass'n of Mort. Brokers v. Bd. of Governors of the Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 286 (D.D.C. 2011)). Consolidation is appropriate when cases involve the same general facts, are at similar stages of litigation, and when consolidation poses no risk of confusion or prejudice. *Id.*

These cases involve common questions of both law and fact, and the Court agrees with the parties that consolidation would promote convenience and judicial economy, simplify management of the cases, and facilitate global resolution of the class claims and conserve judicial resources.

*Dickson* and *Steele* share similar operative facts. While the cases present some differences, they are both predicated on allegations that the government assessed PTIN fees on tax preparers without legal authority to do so. The cases share basic relevant facts, involve the same defendant, and challenge the IRS's assessment of PTIN fees—or the level at which they were set.

Additionally, both cases are in their infancy. No discovery has been conducted in either, and consolidating the cases now will support judicial efficiency.

Finally, consolidation would avoid duplication, waste, and inconsistent results. Already, the Court and parties have been faced with unnecessarily duplicative motion practice and difficulties with coordination. These cases potentially involve hundreds of thousands of putative class members, and duplicative discovery disputes could become burdensome.

For these reasons, the Court will consolidate the *Dickson* and *Steele* cases into a single action.

### III. INTERIM CLASS COUNSEL

#### A. Legal Standard

Under Federal Rule of Civil Procedure 23(g)(3), the Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(1). Rule 23(g), which outlines the factors a court must consider when appointing class counsel, applies equally to the appointment of interim class counsel before certification. *In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2013 WL 183855, at *1 (M.D. Pa. Jan. 17, 2013); *Brigiotta's Farmland Produce & Garden Ctr., Inc. v. United Potato Growers of Idaho, Inc.*, No. 4:10-cv-307, 2010 WL 3928544, at *1 (D. Idaho Oct. 4, 2010); *Four In One Co. v. SK Foods, L.P.*, No. 08-cv-03017, 2009 WL 747160, at *1 (E.D. Cal.

Mar. 20, 2009); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006).

Rule 23(g) requires the court to consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Where more than one applicant seeks appointment as class counsel, the court must appoint the applicant "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

### B. Analysis

At the outset, the Court must determine exactly whose efforts and expertise are to be evaluated. BSF Group argues that "the court must choose lead counsel based on the work, experience, knowledge, and resources of the class counsel applicants themselves, not their paid consultants and experts." BSF's Reply, *Dickson* ECF No. 17 at 5, 8 (citing *In re Honey Transshipping Litig.*, No. 13-cv-2905 (N.D. Ill. Aug. 9, 2013) (rejecting co-lead applicants' reliance on his co-counsel's experience)). Therefore, it asserts, because the Motley Rice firm seeks to be chosen as solo lead counsel in this lawsuit, the role of Mr. Buckley and other retained firms is irrelevant to its adequacy as lead counsel.

However, Rule 23(g)(1)(B) explicitly permits the Court to consider, in addition to the four required factors, "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." The proposed involvement of the other counsel in the Motley Rice Group is "pertinent" to whether Motley Rice is the proposed class counsel "best able to represent the

interests of the class." Fed. R. Civ. P. 23(g)(2). There is no need to require those who seek to work together to seek a multiple lead counsel arrangement: The Court is assured that Motley Rice, Mr. Buckley, Mr. Beck, and Mr. Rizek, have a strong working relationship and can function as a team with Motley Rice at the helm. The proposed lawyers in the Motley Rice Group have each entered appearances in this case as counsel. Indeed, Mr. Buckley has previously entered into a co-counsel agreement with Motley Rice, indicating that the relationship is not merely one where Motley Rice hires "paid consultants" to make up for any perceived deficiencies, but a close working relationship. As such, the Court will consider *all* factors pertinent to Motley Rice's ability to represent the purported class, including its relationships with Mr. Buckley and others.

Each group is comprised of accomplished attorneys and has demonstrated significant experience in handling class actions, including class actions. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii). While both groups put forth arguments about specific types of lawsuits their opponents have not handled—for example, class actions against the government or illegal exaction claims, specifically—the Court is thoroughly impressed by the qualifications of both groups. The purported plaintiff class would benefit from the wealth of experience that either group offers. Furthermore, both groups of attorneys appear to have a strong command of the applicable law. *See* Fed. R. Civ. P. 23(g)(1)(A)(iii).

The Court is also satisfied that both groups of attorneys have significant resources that they are willing to commit to representing the putative class. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). The costs the Motley Rice Group may incur to travel to Washington D.C. throughout the course of litigation would be minimal, and the Court finds that does not affect its ability to effectively or efficiently represent the purported class.

While three of the four factors set forth in Rule 23(g)(1)(A) would support either group of attorneys, the Court finds that due to Mr. Buckley's extensive work laying the groundwork that made these cases possible, his group is the most qualified to further the interests of all putative class members. Mr. Buckley has conducted thorough and extensive pre-filing investigation and testing of the potential claims and initiated legal action months in advance of other applicants. Consideration of "the work counsel has done in identifying or investigating potential claims in the action" leads the Court to determine that the Motley Rice Group is better suited to represent the putative class. *See* Fed. R. Civ. P. 23(g)(1)(A)(i). While other counsel also claim to have conducted some investigative work, no claimed efforts appear to pre-date Mr. Buckley's work.

The Motley Rice Group has documented its work and investigative efforts to the Court in sufficient detail to satisfy that Court that it has conducted a comprehensive investigation, and made a significant investment in time and resources such that its commitment to this litigation is unquestioned. The Motley Rice Group was instrumental in ferretting out similar lawsuits as early as May 2011 before publishing an article on key issues at stake in this case in 2012. And while the BSF Group asserts that its "significant independent and original work" is reflected in its complaint, which differs in some respects from the *Steele* complaint, the Motley Rice Group had already initiated its claims in September, 2014. The Motley Rice Group has satisfied the Court that it has conducted more significant work in investigating and identifying potential claims in this action.[2]

---

[2] Indeed, even if this factor alone were insufficient to support the selection of the Motley Rice Group, the Court finds that since both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first. *See, e.g., Richey v. Ells*, No. 12-CV-02635-WJM-MEH, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) (citing *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (because all firms were more than qualified to handle the action, the court appointed counsel who first filed the case); *Moradi v. Adelson*, 11cv490–GMN–RJJ, 2011 WL 5025155, *3 (D. Nev. Oct. 20, 2011).

While both groups of attorneys have satisfied the Court that they have sufficient experience, adequate knowledge of the applicable law, and sufficient resources to adequately represent the putative class, the Motley Rice Group has demonstrated that it has conducted more significant work in identifying and investigating potential claims. Consideration of the factors set forth in Rule 23(g) thus leads the Court to conclude that it is the group that is best able to represent the interests of the putative class. For this reason, the Court will grant Motley Rice's motion to serve as interim class counsel.

## IV.   CONCLUSION

For the aforementioned reasons, the plaintiffs' motion for consolidation will be GRANTED. Motley Rice's motion for appointment as interim class counsel is GRANTED, while BSF's motion for appointment is DENIED.

A separate order consistent with this Opinion shall issue on this date.

Signed by Royce C. Lamberth, United States District Judge, on June 30, 2015.