IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Adam Steele, Brittany Montrois, ) <br> and Joseph Henchman, on behalf ) <br> of themselves and all others ) <br> similarly situated, ) <br>     *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> United States of America, ) <br>     *Defendant.* ) <br> ) | Civil Action No.: 1:14-cv-01523-RCL <br><br><br> **Amended Class Action Complaint** |

      In 2010, the Department of Treasury and the IRS issued a series of regulations targeting people who prepare tax returns for others—the first attempt to regulate tax return preparers in American history. As part of this novel regulatory effort, the IRS began requiring all tax return preparers to pay an initial $64.25 fee to obtain a preparer tax identification number (or PTIN), and an annual $63 renewal fee thereafter. All tax return preparers who were not licensed certified public accountants (CPAs), attorneys, or authorized tax practitioners known as enrolled agents were, for the first time, required to pass a qualifying exam and take continuing education courses in order to prepare tax returns for others for compensation.

      Last year, the D.C. Circuit held that 31 U.S.C. § 330, which permits the IRS to "regulate the practice of representatives of persons before the Department of the

Treasury," does not give the IRS authority to regulate tax return preparers. *See Loving v. Internal Revenue Serv.*, 742 F.3d 1014 (D.C. Cir. 2014). Despite this decision, the IRS has continued to charge tax return preparers the fees that were intended to fund its failed regulatory regime—fees that the agency had not charged before that regime took effect.

This case—a class action brought by tax return preparers who have paid PTIN fees—challenges the legality of those fees for two independent reasons: *First*, the IRS has no authority to charge any PTIN fees because tax return preparers receive no special benefit in return for them, but only an identifying number. *Second*, even if the IRS is authorized to charge a fee for issuance or renewal of a PTIN, it charges more than is permissible because the fees far exceed any cost the IRS incurs to issue a PTIN. The plaintiffs thus seek a declaratory judgment and return of these unlawful fees.

## Parties

1. Plaintiff Adam Steele, a resident of Bemidji, Minnesota, has been a licensed CPA in the State of Minnesota since 1998. He regularly prepares federal-income-tax returns for compensation. From 2010 to 2013, he paid the required fees for his PTIN.

2.      In 2014, Mr. Steele requested refunds of the PTIN fees he had paid prior to March 2, 2014. He received neither rejection notices nor any refund or approval notices from the IRS.

3.      Plaintiff Brittany Montrois, a resident of McDonough, Georgia, has been a licensed CPA in the State of Georgia since 2011. She regularly prepares federal-income-tax returns for compensation. She has paid the required annual fees for her PTIN since 2011.

4.      Plaintiff Joseph Henchman, a resident of Washington, District of Columbia, is an attorney specializing in tax law since 2007. He has paid the required fees for his PTIN every year since 2011.

## Jurisdiction and Venue

5.      This Court has subject-matter jurisdiction over this action under 5 U.S.C § 702, 28 U.S.C. § 1331, and 28 U.S.C. § 1346(a). The plaintiffs' individual claims against the defendant, as well as those of each member of the proposed class, do not exceed $10,000.

6.      The Court has personal jurisdiction over all parties to this lawsuit, and venue is proper under 5 U.S.C. § 703, 28 U.S.C. § 1391, and 28 U.S.C. § 1402(a).

## Factual Allegations

7. A tax return preparer is someone who prepares a federal-income-tax return for another taxpayer for compensation. The preparer need not be the taxpayer's "authorized representative" before Treasury and the IRS—a term the IRS regulations define to include CPAs, attorneys, and enrolled agents.

8. Since 1913, when the Sixteenth Amendment gave Congress the power to collect income taxes, taxpayers have increasingly hired tax return preparers to help them prepare their income-tax returns for filing with the IRS.

9. The rapid growth of the commercial tax-preparation industry in the decades after World War II led Congress to authorize Treasury, beginning in 1977, to require that tax return preparers place their social security numbers (SSNs) on every return they prepared. This authorization, which enabled the IRS to identify whether a preparer was engaging in abusive practices, was codified at 28 U.S.C. § 6109(a)(4).

10. In 1998, Congress amended § 6109 and authorized the use of alternative numbers to SSNs to identify tax return preparers. Starting in 1999, the IRS began issuing PTINs to preparers in order to protect their privacy and prevent inappropriate use of their personal SSNs. But these numbers were not mandatory: Tax return preparers were given the option to use either their SSNs or PTINs when

preparing another taxpayer's income-tax return. Regulations were issued in 2009, which are still effective, that also permitted tax return preparers to omit their PTIN or SSN (as applicable) from any copies of tax returns provided to taxpayers.

11. Until 2010, the IRS issued PTINs to tax return preparers at their request and at no charge. These PTINs never expired and, once issued, did not change.

12. During this period, the IRS urged Congress to consider several proposals to regulate the commercial tax return preparation industry and tax return preparers. None of these proposals, however, became law.

13. In June 2009, IRS Commissioner Douglas Shulman unilaterally launched the Return Preparer Review. The resulting findings and recommendations were subsequently published by the IRS in December 2009 in Publication 4832. In that publication, the agency recommended a regulatory scheme that included (a) the mandatory registration of tax return preparers through PTINs, (b) the mandatory testing of non-credentialed tax return preparers for competency, and (c) the mandatory continuing education of non-credentialed tax return preparers. It also suggested the possibility of a triennial "reasonable, nonrefundable fee to register as a tax return preparer."

14. Over the course of 2010 and 2011, as the IRS began to face increasing budgetary uncertainty, Treasury and the IRS promulgated new regulations,

5

collectively referred to as the "new regulatory scheme," that were based largely upon the findings of the 2009 Review. *See* 26 C.F.R. §§ 1.6109-2, 300, and Subtitle A, Part 10.

15. Although Congress had repeatedly rejected its legislative proposals on the issue, the IRS's declared legal authority to promulgate these new regulations arose primarily from 31 U.S.C. § 330, as well as 26 U.S.C. § 6109 and 31 U.S.C. § 9701. The regulations relating to identification numbers and related fees went into effect at the end of 2010. The regulations relating to testing, continuing education, and other facets went into effect in 2011 and thereafter.

16. Treasury and the IRS outlined the benefit to the IRS of the new PTIN regulations: "Requiring registration through the use of PTINs will enable the IRS to better collect and track data on tax return preparers. This data will allow the IRS to track the number of persons who prepare returns, track the qualifications of those who prepare returns, track the number of returns each person prepares, and more easily locate and review returns prepared by a tax return preparer when instances of misconduct are detected." User Fees Relating to Enrollment and Preparer Tax Identification Nos., 75 Fed. Reg. 43110, 43110-11 (proposed July 23, 2010).

17. Indeed, "enabl[ing] the IRS to more accurately identify tax return preparers and the tax returns and refund claims associated with each tax return

6

preparer" was described as "[t]he principal objective of the proposed regulations." Furnishing Identifying No. of Tax Return Preparer, 75 Fed. Reg. 14539, 14542 (proposed Mar. 26, 2010).

18. The regulations required non-credentialed tax return preparers (i.e., preparers other than attorneys, CPAs, and enrolled agents), for the first time, to pass a competency examination as a registration requirement. The IRS referred to those who successfully passed the examination and registered as "registered tax return preparers." These registered preparers were required to take fifteen hours of continuing professional education credit every year. Like the competency exam, this was another first-time requirement. Fees applied to testing and continuing professional education.

19. As part of the new regulatory scheme, the IRS also required—again for the first time—that all tax return preparers (including CPAs, attorneys, enrolled agents, and non-credentialed preparers) register with the IRS and obtain a PTIN. In late 2010, the IRS began charging an initial registration fee of $64.25 to every tax return preparer. The IRS also required tax return preparers to renew their PTINs every year—even though the PTINs did not change—and charged an annual renewal fee of $63.

20. This was in stark contrast with what the IRS had done before: For more than a decade, the IRS charged no fee to issue a PTIN and required tax return preparers to submit only their name, address, SSN (if applicable), and date of birth. The PTINs the agency issued before 2010 never expired, and the IRS required no fees or further information from a tax return preparer to maintain the validity of the PTIN after issuance.

21. Both the initial fee and renewal fee include a flat $50 fee that is collected by the IRS "for processing the application for a [PTIN]." 26 C.F.R. § 300.13(b). The remainder of each fee consists of fees charged by a third-party vendor to "administer the application and renewal process." User Fees Relating to Enrollment and Preparer Tax Identification Nos., 75 Fed. Reg. 60316, 60319 (Sept. 30, 2010).

22. In July 2010, the IRS stated that the proposed $50 fee would include costs associated with "the development and maintenance of the IRS information technology system that interfaces with the vendor and the development and maintenance of internal applications," as well as customer-support activities and suitability and compliance checks. User Fees Relating to Enrollment and Preparer Tax Identification Nos., 75 Fed. Reg. 43110, 43111 (proposed July 23, 2010). No further breakdown of the costs or cost analysis was provided.

23. In August 2010, the IRS stated that the $50 fee was designed to recover costs associated with "(1) the costs the government faces in administering registration cards or certificates for each registered tax preparer, (2) costs associated with prescribing by forms, instructions, or other guidance which forms and schedules registered tax preparers can sign for, and (3) tax compliance and suitability checks conducted by the government." Regulations Governing Practice Before the Internal Revenue Service, 75 Fed. Reg. 51713, 51721 (proposed Aug. 23, 2010). Only the third item (tax compliance and suitability checks) had previously been cited as a cost to be recovered by the $50 PTIN fee. Upon information and belief, Treasury and the IRS have never conducted tax compliance or suitability checks.

24. The plaintiffs have each paid the initial fee and one or more renewal fees since the new regulatory scheme went into effect in late 2010.

25. The plaintiffs each received their PTINs by email or letter–the same format used by the IRS prior to the imposition of the new regulatory scheme. The plaintiffs did not receive registration cards or certificates with their PTINs, and their PTINs did not change after initial issuance. In 2012, the second page of the PTIN acknowledgment letter included a section that was approximately two inches by three inches with rounded corners that listed Treasury identifying information and

the name of the PTIN recipient, the PTIN, Treasury's file number, and the PTIN's expiration date.

26. Since the PTIN fee requirements went into effect at the end of 2010, the IRS has collected over $175,000,000 in PTIN fees.

27. In 2014, the D.C. Circuit issued its decision in *Loving*, holding that tax return preparation is not subject to regulation under 31 U.S.C. § 330, and thus the IRS did not have authority under that statute to regulate tax return preparers.

28. Although the IRS's authority to charge all tax return preparers fees for PTINs was not specifically challenged in *Loving*, the D.C. Circuit's ruling effectively returned the IRS's regulation of tax return preparers to the *status quo ante*.

29. Since *Loving*, Treasury has issued guidance that eliminates tax return preparation from inclusion as activity subject to regulation under § 330. Yet the IRS continues to require tax return preparers to pay the same initial and annual PTIN fees of $64.25 and $63. Thus, based on the general costs cited by the IRS in setting the PTIN fees, the PTIN fees fund activities and programs that exceed the IRS's legal authority.

## Class Action Allegations

30. The plaintiffs bring this class action under Rules 23(b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure.

31. The plaintiffs seek certification of the following class:

*All individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek.*

32. The class is so numerous that joinder of all members is impractical. While the exact number and identify of class members is unknown to the plaintiffs at this time and can only be ascertained through appropriate discovery, the plaintiffs believe that the number of class members is between 700,000 and 1,200,000. The precise number and identification of the class members will be easily ascertainable from the defendant's records.

33. There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to:

   (i) Does the IRS have the legal authority to impose a fee for issuing a PTIN?

   (ii) Does the IRS have the legal authority to impose a fee for renewing a PTIN?

   (iii) Are the fees imposed by the IRS excessive?

34. The plaintiffs' claims are typical of the claims of the class because they, like the class members, paid the uniform fees required by the defendant in order to obtain their PTINs.

35. The plaintiffs will fairly and adequately protect the interests of the class because each of them has paid the fee required to obtain a PTIN during the class period, their interests do not conflict with the interests of the class, and they have obtained counsel experienced in litigating class actions and matters involving similar or the same questions of law.

36. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would impose incompatible standards of conduct for the defendant. In addition, the prosecution of separate actions by individuals of the class would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to such individual adjudications or that could substantially impair or impede their ability to protect their interests.

37. The defendant has acted or refused to act on grounds that apply generally to the class so that final injunctive relief is appropriate as to the class as a whole.

38. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating

the plaintiffs' claims. Joinder of all members is impracticable. Furthermore, because the injury suffered by the individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## Causes of Action

### FIRST CLAIM
### (Unlawful PTIN Fees)

39. The IRS lacks legal authority to charge a fee for the issuance or renewal of a PTIN.

40. The use of PTINs is for the benefit of the IRS.

41. Tax return preparers receive no specific or special benefit or thing of value in registering for and obtaining a PTIN.

42. Charging a fee for the issuance or renewal of a PTIN constitutes unlawful agency action under the Administrative Procedures Act, 5 U.S.C. § 706(2).

43. The IRS has violated the plaintiffs' rights under the Due Process Clause of the U.S. Constitution by imposing and collecting from the plaintiffs' PTIN fees that are not legally authorized.

44. The plaintiffs are entitled to a judgment declaring that Treasury and the IRS lack legal authority to charge a fee for issuance or renewal of a PTIN under 31 U.S.C. § 9701, or any other statute.

45. The plaintiffs are also entitled to the return or refund of all PTIN fees illegally exacted, or otherwise unlawfully charged, plus reasonable interest.

### SECOND CLAIM
### (Excessive PTIN Fees)

46. If the IRS has legal authority to charge a fee for the issuance or renewal of a PTIN, the fees charged exceed the amount that can be charged under 31 U.S.C. § 9701, as they include costs attributable to the public benefit and do not reasonably reflect the value of the specific service for which they are charged.

47. Furthermore, the fees charged for the issuance or renewal of a PTIN do not reasonably reflect the cost of the services performed by the IRS.

48. The IRS has violated the plaintiffs' rights under the Due Process Clause by imposing and collecting from the plaintiffs' PTIN fees that are not legally authorized.

49. The plaintiffs are entitled to a judgment declaring that the fees charged for the issuance and renewal of a PTIN are excessive.

50. The plaintiffs are entitled to the return or refund of the excessive PTIN fees illegally exacted or otherwise unlawfully charged, plus interest.

## Prayer for Relief

The plaintiffs, on behalf of themselves and members of the class, request that this Court grant the following relief:

1. A judgment declaring that the IRS lacks legal authority to charge a fee for issuance or renewal of a PTIN under 31 U.S.C. § 9701, or any other statute.

2. A judgment declaring that the fees charged for the issuance and renewal of a PTIN are excessive.

3. Restitution or return of all PTIN fees collected by Treasury or the IRS, plus reasonable interest.

4. Restitution or return of any PTIN fees collected by Treasury or the IRS that are found to exceed the amount authorized by law, plus reasonable interest.

5. A judgment declaring that the IRS may only request information from tax return preparers that is authorized by statute.

6. Such other relief as the Court deems equitable and just.

Dated: August 7, 2015 Respectfully submitted,

By: *s/ William H. Narwold*

MOTLEY RICE LLC

William H. Narwold
bnarwold@motleyrice.com
DC Bar No. 502352
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone:    (860) 882-1676
Facsimile:  (860) 882-1682

Nathan D. Finch
nfinch@motleyrice.com
Elizabeth Smith
esmith@motleyrice.com
3333 K Street NW, Suite 450
Washington, DC 20007
Telephone:    (202) 232-5504
Facsimile:  (202) 232-5513

GUPTA WESSLER PLLC

Deepak Gupta
deepak@guptawessler.com
Jonathan E. Taylor
jon@guptawessler.com
Peter Conti-Brown
peter@guptawessler.com
1735 20th Street, NW
Washington, DC 20009
Telephone: (202) 888-1741
Facsimile: (202) 888-7792

CAPLIN & DRYSDALE,
CHARTERED

Christopher S. Rizek
crizek@capdale.com
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Telephone: (202) 862-8852
Facsimile: (202) 429-3301

LAW OFFICE OF ALLEN BUCKLEY LLC

Allen Buckley
ab@allenbuckleylaw.com
2802 Paces Ferry Road, Suite 100-C
Atlanta, GA 30339
Telephone: (404) 610-1936
Facsimile: (770) 319-0110

*Attorneys for Plaintiffs Adam Steele, Brittany Montrois, Joseph Henchman and the Putative Class*

## Proof of Service

I, William H. Narwold, declare that I am over the age of eighteen (18) and not a party to the entitled action. I am a member of the law firm MOTLEY RICE LLC, and my office is located at 20 Church Street, 17th Floor, Hartford, CT 06103.

On August 7, 2015, I caused to be filed the following in the above-captioned case:

## Amended Class Action Complaint

with the Clerk of Court using the Official Court Electronic Document Filing system, which served copies on all interested parties registered for electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 7, 2015                                   Respectfully submitted,

                                                        By: *s/ William H. Narwold*
                                                            William H. Narwold
                                                            MOTLEY RICE LLC