## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                                    )
**ADAM STEELE, *et al.*,**                          )
                                                    )
               **Plaintiffs,**                      )
                                                    )
          **v.**                                    )     **Civil Case No. 14-1523 (RCL)**
                                                    )
**UNITED STATES OF AMERICA,**                       )
                                                    )
               **Defendant.**                       )
                                                    )
———————————————————— )

## <u>MEMORANDUM OPINION</u>

Currently before the Court is the plaintiffs' Motion for Class Certification [46]. Upon consideration of the motion, plaintiffs' opposition, defendant's reply, the entire record herein, and the applicable law, the Court finds that plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure (FRCP) 23 as it relates to plaintiffs' request for declaratory relief. The Court will certify the proposed class under FRCP 23(b)(2) for that portion of the case.

However, plaintiffs have not yet demonstrated that the Court has subject matter jurisdiction over plaintiffs' request for restitution. The Court will therefore deny plaintiffs' motion for certification as it relates to that aspect of plaintiffs' claims. This ruling is subject to reconsideration, if needed, after the parties more fully brief issues relating to jurisdiction, with specific attention paid to the doctrine of sovereign immunity. The Court will therefore GRANT IN PART and DENY IN PART plaintiffs' Motion to for Class Certification.

## I.   BACKGROUND

This lawsuit arises out of the Department of the Treasury and Internal Revenue Service's (IRS's) requirement that compensated tax return preparers both obtain and pay for a preparer tax identification number (PTIN). The regulation became effective on September 30, 2010 and specifically requires that "all tax return preparers must have a preparer tax identification number or other prescribed identifying number that was applied for and received at the time and in the manner, including the payment of a user fee, as may be prescribed by the Internal Revenue Service." 26 C.F.R. § 1.6109-2(d). This "user fee" is further described in 26 C.F.R. § 300.13(b), which states that "[t]he fee to apply for or renew a preparer tax identification number is $50 per year, which is the cost to the government for processing the application for a preparer tax identification number and does not include any fees charged by the vendor." In addition to this $50, the charge for a PTIN also "consists of fees charged by a third-party vendor to 'administer the application and renewal process.'" Am. Compl. ¶ 21, ECF No. 41 (quoting User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 60,316, 60,319 (Sept. 30, 2010)). In total, the IRS required an initial fee of $64.25 to obtain a PTIN and an annual $63 renewal fee thereafter. *See id.* at 1.[1]

Importantly, the IRS coupled its recent requirement for a PTIN with attempts to more comprehensively regulate tax return preparers. Although many of these broader regulations were recently invalidated in *Loving v. IRS*, 742 F.3d 1013 (D.C. Cir. 2014), the IRS continues to

---

[1] Note that these fees changed on October 30, 2015 when the IRS issued temporary regulation 26 C.F.R. § 300.13T. These new regulations effectively deleted the price structure of § 300.13(b), replacing it with: "The fee to apply for or renew a preparer tax identification number is $33 per year, which is the cost to the government for processing the application for a preparer tax identification number and does not include any fees charged by the vendor." 26 C.F.R. § 300.13T. Moreover, "[t]he vendor's fee, currently set at $14.25 for new applications and $13 for renewal applications, is paid directly to the vendor and covers the costs incurred by the vendor to process applications and renewals." Preparer Tax Identification Number (PTIN) User Fee Update, 80 Fed. Reg. 66,792, 66,794 (Oct. 30, 2015).

require tax return preparers to obtain and pay for a PTIN. As described in more detail below, the IRS points to different statutory authority, independent from the statute at issue in *Loving*, to justify the imposition of a PTIN fee. Specifically, the government relies on 31 U.S.C. § 9701, which permits agencies to issue regulations to establish a charge for a "service or thing of value" the agency provides.

In the current lawsuit, plaintiffs challenge the IRS's PTIN fee, arguing first that because the PTIN does not represent or confer a "service or thing of value," the IRS is not permitted to impose any fee at all for the identifying number. Am. Compl. ¶¶ 39-45. In the alternative, plaintiffs argue that even if the IRS is authorized to impose a fee for a PTIN, the amount the IRS charges is excessive and therefore impermissible at its current level. *Id.* at ¶¶ 46-50. In terms of relief, plaintiffs seek a judgment declaring either that the IRS lacks the authority to charge a fee for a PTIN or that the fee it charges is excessive. *Id.* at 15. Additionally, plaintiffs seek restitution or return of the PTIN fees collected by the IRS, or alternatively, simply those fees collected that exceed the amount authorized by law. *Id.*

For reasons to be discussed, plaintiffs argue that the two, alternative grounds they use to challenge the fees make this case "ideally suited for class treatment." Pls.' Mot. for Class Certification 1, ECF No. 46. The three named plaintiffs, Adam Steele, Brittany Montrois, and Joseph Henchman, have asked the court to certify under FRCP 23 the following class: "All individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek." *Id.*

## 1.  Statutory Framework

The IRS argues that two sets of statutory provisions work in combination to permit the agency to issue regulations requiring compensated tax return preparers to obtain and pay for a

PTIN. First, 26 U.S.C. § 6109 grants the IRS power to require, by regulation, that tax return preparers include a personal identifying number on the returns they prepare. *See* 26 U.S.C. § 6109(a)(4). Importantly, the statute specifically allows the agency to require tax return preparers to provide a personal identifying number other than their social security numbers (SSNs) on the returns they prepare. § 6109(d)(4). Nothing in the text of that statute, however, expressly permits the IRS to charge a fee for a PTIN. For such authority, the IRS instead relies on 31 U.S.C. § 9701, which permits agencies to issue regulations to establish a fee for a "service or thing of value" the agency provides. The IRS argues that the "service or thing of value" it provides in issuing PTINs is "the ability to prepare tax returns for compensation." *See* United States' Opp'n to Pls.' Mot. for Class Certification 15, ECF No. 50. As referenced, the plaintiffs contend that § 9701 does not authorize the IRS to require payment for a PTIN because a PTIN does not confer or represent a "service or thing of value," and even if the IRS is authorized to charge a fee for the PTIN, that fee is excessive[2] and therefore invalid at its current level.[3]

### 2. History of the PTIN and Other Recent Efforts to Regulate Tax Return Preparers

Although the IRS has used SSNs to track tax return preparers for decades, in 2010 and 2011 the agency issued a series of regulations designed to more broadly and comprehensively regulate the tax return preparation industry. Regulation of the industry began in the late 1970s when Congress enacted legislation to authorize the Treasury to require tax return preparers to provide their SSN on each return they prepared. Am. Compl. ¶ 9 (citing 26 U.S.C. § 6109(a)(4)). Until 1999, the IRS used that authority and required tax return preparers to include their SSNs in each return. *See* United States' Opp'n to Pls.' Mot. for Class Certification 3. Then, in an effort to

---

[2] For a discussion of the excessive fee standard, see section II.B.1.
[3] As referenced in footnote 1, beginning on October 30, 2015, the IRS charges $33 to issue a PTIN. *See* 26 C.F.R. § 300.13T.

protect the privacy of tax return preparers and minimize the risks associated with revealing one's SSN, Congress amended § 6109 to permit the IRS to authorize tax return preparers to use numbers other than their SSN to identify themselves on returns. *See* Am. Compl. ¶¶ 10-11. In keeping with the spirit of the statute, in 1999 the IRS immediately began to issue PTINs to offer return preparers an alternative to providing their SSN. *Id.* At this point, however, PTINs were not mandatory; instead, tax return preparers were given the option of providing either their SSN or PTIN on the returns they prepared. *Id.* Moreover, the IRS offered PTINs to tax return preparers free of charge. *Id.*

After this period of relative regulatory stability, in 2010 the IRS issued new regulations concerning tax return preparation and specifically the role of PTINs. First, the agency began to require that tax return preparers use PTINs; providing one's SSN as an alternative was no longer an option. Second, and importantly, the IRS began to charge a fee for the PTINs' issuance, $64.25 for the initial registration fee and $63 for each renewal. *Id.* at 1; s*ee id.* at ¶ 13. Both the initial and the renewal fees included a $50 charge the IRS used "for processing the application for a [PTIN]." *Id.* at ¶ 21. The remainder of each fee related to charges by a third-party vendor to "administer the application and renewal process." *Id*. For the first time, anyone—regardless of their credentials and licenses—who sought to prepare a tax return for compensation was required to pay this $64.25 to initially obtain (or $63 to renew) a PTIN.

In addition, as the IRS began to mandate the use of and payment for PTINs, the agency also issued separate regulations targeted at "non-credentialed tax return preparers (i.e., preparers other than attorneys, CPAs, and [other certified tax specialists])." *Id.* at ¶ 18. Breaking with its previous policies, the IRS required non-credentialed tax return preparers to pass a competency examination, pay an annual fee, and take fifteen hours of continuing education courses each year.

*See Loving v. IRS*, 917 F. Supp. 2d 67, 69 (D.D.C. 2013). In doing so, the IRS relied on a different statute, 31 U.S.C. § 330, which was originally enacted in 1884 and authorizes the IRS to "regulate the practice of representatives of persons before the Department of the Treasury." *See Loving v. IRS*, 742 F.3d 1013, 1014 (D.C. Cir. 2014). As never before, the new IRS regulations forced non-credentialed tax return preparers to satisfy additional requirements before they were permitted to prepare returns for compensation.

Responding to a legal challenge brought by non-credentialed tax return preparers, the D.C. Circuit invalidated these regulations in 2014 in *Loving v. IRS*, 742 F.3d 1013 (D.C. Cir. 2014). The Circuit found that § 330 did not authorize the IRS to regulate tax return preparers because, among other reasons, tax return preparers are not "representatives of persons before the Department of the Treasury." *Id.* at 1016-21 (interpreting the language of § 330). Essentially, "the traditional tools of statutory interpretation—including the statute's text, history, structure, and context—foreclose[d] and render[ed] unreasonable the IRS's interpretation of Section 330." *Id.* at 1021-22. Congress had simply not permitted the Treasury Department to broadly and comprehensively regulate the tax return preparation industry.

Although the D.C. Circuit invalidated the IRS's more wide-ranging attempts to regulate non-credentialed tax return preparers, the regulations requiring that all compensated tax return preparers—credentialed and non-credentialed alike—obtain and pay for a PTIN are still in effect. As stated, these regulations, which form the basis of the present lawsuit, are promulgated under 31 U.S.C. § 9701. This statute permits federal agencies to impose a fee in return for a "service or thing of value" the agency provides. According to the language of the statute, those fees are required to be "based on – (A) the costs to the Government; (B) the value of the service or thing to the recipient; (C) public policy or interest served; and (D) other relevant facts." 31 U.S.C. §

9701(b)(2). As discussed more fully in section II.B.1 of this opinion, however, the Supreme Court and D.C. Circuit have interpreted § 9701(b) very narrowly, stating that agencies may not impose fees for a service or thing of value that exceed a reasonable approximation of the cost to the government of providing the service. *See, e.g.*, *Seafarers Int'l Union of N. Am. v. US Coast Guard*, 81 F.3d 179, 185 (D.C. Cir. 1996) ("[T]he measure of fees [imposed under § 9701] is the cost of the government of providing the service, not the intrinsic value of the service to the recipient."); *Nat'l Cable Television Ass'n v. FCC*, 554 F.2d 1094, 1108 (D.C. Cir. 1976) (ruling that fees issued under § 9701 must "bear a reasonable relationship to the cost of the services rendered by the agency").

## II. LEGAL ANALYSIS

Finding that plaintiffs have satisfied the requirements of FRCP 23, the Court will grant plaintiffs' motion as it relates to declaratory relief and certify the proposed class under FRCP 23(b)(2) for that portion of the case. With respect to the restitution plaintiffs seek, the Court will deny plaintiffs' motion to certify a class, finding that plaintiffs have not demonstrated the Court has sufficient subject matter jurisdiction. This ruling is subject to reconsideration, if needed, after the parties more fully brief issues relating to jurisdiction, with specific attention devoted to the doctrine of sovereign immunity.

### A. Standard for Class Certification

As the party moving for class certification, plaintiffs bear the burden of establishing that the requirements set forth in FRCP 23 have been satisfied. *See, e.g.*, *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 614 (1997); *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit. Auth.*, 239 F.R.D. 9, 24 (D.D.C. 2006) (citing *Amchem Prods.* to declare plaintiffs bear the burden of establishing FRCP 23's requirements have been satisfied). First, plaintiffs

must show that they satisfy all four prerequisites of FRCP 23(a). These requirements are: (1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

In addition to the requirements of FRCP 23(a), plaintiffs must also show that the proposed class falls within at least one of the three categories set forth in FRCP 23(b). Rule 23(b)(1) relates to cases in which separate actions by or against individual class members would risk establishing "incompatible standards of conduct for the party opposing the class," Fed. R. Civ. P. 23(b)(1)(A), or would "as a practical matter be dispositive of the interests" of nonparty class members "or substantially impair or impede their ability to protect their interests," Fed. R. Civ. P. 23(b)(1)(B). FRCP 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Lastly, FRCP 23(b)(3) is "[f]ramed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations." *Amchem Prods.*, 521 U.S. at 615 (citing Adv. Comm. Notes, 28 U.S.C. App., p. 697). To satisfy FRCP 23(b)(3), a class must meet two conditions beyond FRCP 23(a)'s requirements: common questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." With respect to both the requirements of FRCP 23(a) and 23(b), a district court exercises broad discretion in deciding whether plaintiffs have carried their burden. *See Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994).

In evaluating FRCP 23's procedural standard, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 249 (D.C. Cir. 2013) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). At the same time, however, "the Supreme Court has long held [that] courts may not examine whether 'plaintiffs have stated a cause of action or will prevail on the merits' in order to determine whether class certification is appropriate." *In re Veneman*, 309 F.3d 789, 794 (D.C. Cir. 2002) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). In negotiating this somewhat subtle standard, the D.C. Circuit has stated that "[n]othing in *Eisen* precludes a court from scrutinizing plaintiffs' legal causes of action to determine whether they are suitable for resolution on a classwide basis." *McCarthy v. Kleindienst,* 741 F.2d 1406, 1412 n.6 (D.C. Cir. 1984). In fact, such scrutiny is "an essential ingredient of the determination whether to allow a case to proceed as a class action." *Id.* Put differently, it is unavoidable that class certification often "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 n.5 (D.C. Cir. 2006) (quoting *Falcon*, 457 U.S. at 160); *see also Lightfoot v. District of Columbia*, 273 F.R.D. 314, 323 (D.D.C. 2011) (quoting the same language).

### B.  Issues Currently in Dispute

The Court finds and defendant specifically and expressly does not dispute that plaintiffs have established that FRCP 23(a)'s requirements for numerosity, commonality, typicality, and adequacy are satisfied. *See* United States' Opp'n to Pls.' Mot. for Class Certification 11. With respect to numerosity, the plaintiffs estimate that the class contains between 700,000 and 1.2 million members, Am. Compl. ¶ 32, an amount which clearly makes "joinder of all members . . .

impracticable." Fed. R. Civ. P. 23(a)(1). Second, in terms of commonality, plaintiffs note there are two key questions at the heart of the case: (1) Does the IRS lack the legal authority to impose a fee for issuing or renewing a PTIN?; (2) Are the PTIN fees imposed by the IRS excessive? Pls.' Mot. for Class Certification 4 (quoting Am. Compl. ¶ 33). The ways in which these questions are answered will be common to and dispositive of each and every proposed class member's individual underlying claims.[4] Stated differently, because the government's policies apply equally and generally to the entire class, the truth or falsity of these questions would "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Third, the named plaintiffs are typical of the class because "each class members claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit. Auth.*, 239 F.R.D. 9, 27 (D.D.C. 2006) (quoting *Pigford v. Glickman*, 182 F.R.D. 341, 349 (D.D.C. 1998)). Again, each purported class member is challenging the same IRS regulation, which the agency applied consistently and uniformly to every member of the class.[5]

---

[4] Although the government does not directly dispute commonality, when challenging certification under the standard set forth in Rule 23(b)(3) it argues that "[n]one of the named plaintiffs are similarly situated because each takes different advantage of the benefit provided by the Service." United States' Opp'n to Pls.' Mot. for Class Certification 15. This argument, however, focuses on the variable benefit a PTIN may confer onto a recipient and effectively ignores § 9701's focus on costs. This argument is more fully addressed and rejected in section II.B.1.

[5] Once again, defendant does not challenge typicality under FRCP 23(a)(3). The United States does, however, challenge certification under FRCP 23(b)(2), arguing that certification is inappropriate because class members with professional licenses have different—and perhaps more persuasive—legal arguments available to them than unlicensed class members. *See* United States' Opp'n to Pls.' Mot. for Class Certification 20-21. This argument also brushes over the law's requirement that fees not exceed a reasonable estimation of their costs, and must therefore be rejected. This standard is more fully discussed in section II.B.1.

Lastly, like the other three prerequisites of FRCP 23(a), defendant does not contest that the named representatives "fairly and adequately represent the interests of the class."[6]

Although the parties agree that FRCP 23(a)'s requirements are met, the government argues that the requirements of FRCP 23(b) remain unsatisfied, for subsections 23(b)(1), (2), and (3). The Court will now address and reject these arguments. Because the Court is unconvinced it has subject matter jurisdiction over the restitution portion of this matter, *see* section II.B.2, it will discuss plaintiffs' request for declaratory relief separately from their request for restitution.

### 1.   The Portion of This Matter Relating to Declaratory Relief

The Court finds that plaintiffs have fulfilled the requirements of FRCP 23(b)(2) as it relates to their request to declaratory relief for both their first claim—that the IRS wholly lacks the authority to impose a fee for a PTIN—and their second, alternative claim that even if the IRS can impose a fee, the fee is excessive and therefore partially invalid.

As discussed, FRCP 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." According to this rule, "two elements must exist: (1) the defendant's action or refusal to act must be 'generally applicable to the class,' and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Disability Rights Council of Greater Wash.*, 239 F.R.D. at 28 (citing 7AA Charles Allen Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1775 (3d ed. 2006)); *see also Bynum v. District of Columbia*, 217 F.R.D. 43, 48 (D.D.C. 2003).

---

[6] Later in its brief, the United States argues that the named plaintiffs cannot properly represent other class members because many members hold different sets of credentials, which make them better suited to challenge the IRS's PTIN requirement. *See* United States' Opp'n to Pls.' Mot. for Class Certification 18-19. As to be discussed, however, the IRS has stated in the Federal Register that the agency charges the same amount for every PTIN because the PTIN costs the same to issue regardless of a recipient's credentials and professional status. For the same reasons described above, this argument must therefore be rejected.

In this case, plaintiffs have satisfied both elements with respect to their request for declaratory relief. Although the United States argues that the first element[7] of FRCP 23(b)(2) is unmet because the proposed class is not cohesive, *see* United States' Opp'n to Pls.' Mot. for Class Certification 20-22, that argument is unavailing. The government contends that the interests of and legal challenges available to CPAs, attorneys, and other certified tax specialists diverge from those of uncertified tax return preparers. Because all four subcategories are included in the proposed class, the argument goes, the class is not cohesive, making certification under FRCP 23(b)(2) inappropriate. More specifically, the government theorizes that because unlicensed tax return members are included in the proposed class, CPAs, attorneys, and other licensed tax professionals can no longer argue that (1) the mandatory PTIN fee is unauthorized specifically for those licensed individuals because they "are already subject to stringent professional requirements; and (2) [the fee] is excessive because those individuals already pay professional and other fees to prepare returns." *Id.* at 21. Essentially, defendant argues that certifying this class would "restrict hundreds of thousands of absent [certified tax specialists], CPA, and attorneys" from making these arguments and then would unfairly bind them to the result of this litigation. *Id.* Relatedly, when discussing the standard under FRCP 23(b)(3), defendant contends "none of the named plaintiffs are similarly situated because each takes different advantage of the benefit provided by the Service." *Id.* at 15;[8] *see also id.* at 21-22 ("[T]he class is not cohesive as to whether the PTIN User Fee is excessive [because] . . .

---

[7] Defendant does not challenge FRCP 23(b)(2)'s second element, that plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class.

[8] To support this point, defendants submit exhibits to show that the named plaintiff believes that charging unlicensed tax return preparers for a PTIN may be more reasonable than charging licensed return preparers because licensed return preparers already receive training and are subject to oversight. *See* United States' Opp'n to Mot. for Class Certification 20 (quoting Economides Decl. ¶ 5, Ex. 2).

determining whether the amount charged is excessive requires an individualized inquiry into the factual circumstances of each purported class member.").

But these arguments misunderstand the ways in which the Supreme Court and D.C. Circuit have interpreted 31 U.S.C. § 9701, the statute that permits agencies to establish a fee for a "service or thing of value" it provides. As discussed, the D.C. Circuit has stated, "scrutinizing plaintiffs' legal causes of action to determine whether they are suitable for resolution on a classwide basis" is "an essential ingredient of the determination whether to allow a case to proceed as a class action." *McCarthy v. Kleindienst*, 741 F.2d 1406, 1412 n.6 (D.C. Cir. 1984). Although the Court has entirely refrained from considering the merits of plaintiffs' claims, it has studied the legal requirements and limitations of § 9701 to determine if class certification is warranted for the declaratory judgment portion of this case.

In conducting this analysis, the Court has determined classwide resolution is appropriate for the declaratory relief plaintiffs seek because "the measure of fees [imposed under § 9701] is the cost of the government of providing the service, not the intrinsic value of the service to the recipients." *Seafarers Int'l Union of N. Am. v. US Coast Guard*, 81 F.3d 179, 185 (D.C. Cir. 1996). As mentioned, § 9701 permits agencies to issue regulations that establish a fee for a service or thing of value that an agency provides. And it is true that the text of this statute requires those fees to be based on "(A) the costs to the Government; (B) the value of the service or thing to the recipient; (C) public policy or interest served; and (D) other relevant facts." 31 U.S.C. § 9701(b). However, the D.C. Circuit has applied Supreme Court precedent to interpret this language very narrowly, ruling fees under § 9701 must "bear a reasonable relationship to the cost of the serviced rendered by the agency." *Nat'l Cable Television Ass'n v. FCC*, 554 F.2d 1094, 1108 (D.C. Cir. 1976). To rule otherwise and permit agencies to impose fees that exceed a

reasonable estimation of the cost "makes the assessment a tax rather than a fee. [And the Supreme Court] concluded that the [statute] must be narrowly read to prohibit this since there was no indication in the statute of an intent on the part of Congress to delegate the power to tax to [federal agencies]." *Nat'l Ass'n of Broadcasters v. FCC*, 554 F.2d 1118, 1129 (D.C. Cir. 1976) (interpreting *National Cable Television Ass'n v. United States*, 415 U.S. 342 (1974)).

In further elaborating on this cost-centered standard, the D.C. Circuit has expressly ruled that the fee base cannot "go so far as to include values created by licensees out of their grants." *Nat'l Ass'n of Broadcasters v. FCC*, 554 F.2d 1118, 1129 n.28 (D.C. Cir. 1976). Very clearly, "when the costs of the benefit conferred is exceeded by any material amount, one immediately gets into the taxing area and the result is [an impermissible] revenue and not a fee." *Id.* Importantly, the Circuit "recognize[s] the extent to which [its] opinion[s narrowly] interpret 'value to the recipient' . . . but . . . consider[s] that this strictly followed the two controlling decisions of the Supreme Court." *Id.* (referring to *National Cable Television Ass'n v. United States*, 415 U.S. 342 (1974) and *Federal Power Commission v. New England Power Co.*, 94 S. Ct. 1151 (1974)).

A set of Supreme Court and D.C. Circuit cases relating to the Federal Communications Commission's requirement that cable providers pay licensing fees helps to illustrate this standard. Essentially, under the terms of § 9701:

> [T]he [FCC has] no authority to charge for general activities which independently benefit the public at large, but allows "only specific charges for specific services to specific individuals or companies." Thus, the FCC is required to show the particular costs which they are assessing against the recipients [of cable licenses] so as to assure them they are paying only for the specific expenses which are incurred in connection with the service of granting them their operating authority.

*Nat'l Cable Television Ass'n v. FCC*, 554 F.2d 1094, 1104-05 (D.C. Cir. 1976) (quoting *National Cable Television Ass'n v. United States*, 415 U.S. 342, (1974)); *see also id.* at 1104

14

("[T]he agency must be more explicit in stating the cost basis for its individual fees. In order for a reviewing court to determine that a fee has indeed been measured by the 'value to the recipient,' the [federal agency] must make a public statement of the specific expenses which are included in the cost basis for that fee.").

The same is true in the present matter as it relates to the IRS and its PTIN fee. According to § 9701, the IRS may force PTIN recipients to pay only for the expenses that the agency incurs in the process of granting the identifying numbers and conferring the "ability to prepare tax returns for compensation." United States' Opp'n to Pls.' Mot. for Class Certification 15. Not to be overlooked, many of the IRS's own entries in the Federal Register relating to the PTIN user fee appear to conform to this conclusion. For example, when the PTIN fee was first introduced in September 2010, the IRS stated that "[t]he objective of the final regulations is to recover the costs to the government that are associated with providing this special benefit." User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 60,316, 60,319 (Sept. 30, 2010). More recently, the IRS has issued temporary regulations lowering the PTIN fee to $33. *See* Preparer Tax Identification Number (PTIN) User Fee Update, 80 Fed. Reg. 66,792 (Oct. 30, 2015). In doing so, the IRS observed that "[a]n agency that seeks to impose a user fee for government-provided services must calculate the full cost of providing those services. In general, a user fee should be set at an amount that allows the agency to recover the direct and indirect costs of providing the service." *Id.* at 66,793. Importantly, the IRS reduced the PTIN fee because it "has determined that the full cost of administering the PTIN program going forward has been reduced from $50 to $33 per application or renewal." *Id.* at 66,794.

Contrary to its previous emphasis on costs, however, the government now argues that certification is inappropriate because the ability to prepare tax returns for compensation provides

a different, more substantial benefit to uncertified tax return preparers than it does to lawyers, CPAs, and other certified tax professionals. *See* United States' Opp'n to Pls.' Mot. for Class Certification 17-21. This argument however misconstrues the prevailing (and binding) interpretation of § 9701, which states, again, "the measure of fees [imposed under § 9701] is the cost of the government of providing the service, not the intrinsic value of the service to the recipients." *Seafarers Int'l Union of N. Am. v. US Coast Guard*, 81 F.3d 179, 185 (D.C. Cir. 1996). Importantly, the IRS has stated time and again that the cost of issuing a PTIN is the same regardless of whether the pin number is issued to an attorney, CPA, or uncertified tax return preparer. As plaintiffs note, that is why the IRS decided in the first place to impose a uniform fee for every PTIN it issued—regardless of the recipient's professional status. Indeed, after the regulations' notice and comment period, the agency stated that "[h]aving a PTIN is a special benefit," and this "same special benefit is conferred on all persons who obtain a PTIN, and the cost to government is the same for providing PTINs to attorneys, certified public accountants, and enrolled agents as it is for providing PTINs to formerly unenrolled tax return preparers." User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 60,316, 60,317 (Sept. 30, 2010). Relatedly, the IRS also stated that "the cost of processing PTIN applications is not affected by the number of tax returns that a tax return preparer prepares during a given tax season." *Id.* at 60,318.

Because the IRS imposes the same fee for each PTIN application and the IRS has stated the cost of processing PTIN applications does not vary, it is clear that the IRS has "acted on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). When the party opposing the class has "established or acted pursuant to a regulatory scheme common to all class members," certification under FRCP 23(b)(2) is appropriate. Charles Allen Wright et al., 7AA Federal

Practice and Procedure § 1175 (3d ed. Apr. 2015). In analyzing plaintiffs' first claim, that the IRS wholly lacks the authority to impose a fee for a PTIN, it is difficult to imagine a scenario where certification is more appropriate. Because the IRS required all tax return preparers to obtain a PTIN and uniformly charged $64.25 for the PTIN's issuance and $63 for renewal, the agency action applies equally and generally across the entire class.[9]

Like their first claim, the plaintiffs' alternative claim, that the fee is excessive and thus impermissible at its current level, also applies generally to all class members. The only way it could not is if the IRS staggered its fees or if the cost of issuing PTINs varied. Under either scenario, it would be possible that the IRS has overcharged some though not all PTIN recipients, a finding that would undercut the class's cohesion and frustrate FRCP 23(b)'s requirement that the opposing party acted on grounds generally applicable to entire class.  As discussed, however, the IRS charges the same fee across the board and has indicated in the Federal Register that the costs of issuing PTINs are invariable—a fact which the government has not yet disputed.

In sum, defendant's primary argument against certification under 23(b)(2) is that "plaintiffs' claims impermissibly compromise the rights of absent [certified tax specialists], CPAs, and attorneys, because those class members are limited to challenges only available to unlicensed return preparers." United States' Opp'n to Pls.' Mot for Class Certification 17. This concern, however, is illusory in light of § 9701's focus on expenses along with the PTIN's constant costs and uniform fee structure. Because the IRS's conduct is "such that it can be . . . declared unlawful as to all of the class members or none of them," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011), certification under FRCP 23(b)(2) is appropriate. As requested, the Court will certify the following class as it concerns declaratory relief: "All

---

[9] Although after issuing 26 C.F.R. § 300.13T, the IRS lowered the PTIN fee to $33, that fee is still applied generally to all class members.

individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek."

Although the Court today will certify plaintiffs' proposed class, certifications are "inherently tentative" and may be modified "in light of subsequent developments in the case." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Lightfoot v. District of Columbia*, 273 F.RD. 314, 322 (D.D.C. 2011) (citing this language in *Falcon*). If the government were to later offer evidence that costs do in fact vary across the class (or present other legal authority or evidence important in the analysis), it may be appropriate to revisit the issue of certification. For now, however, the Court is satisfied the plaintiffs have met the requirements of FRCP 23(a) and that the IRS's actions apply generally to the class, making the declaratory relief they seek appropriate for certification under FRCP 23(b)(2).

## 2. The Portion of This Matter Relating to Plaintiffs' Request for Restitution

The Court will deny plaintiffs' motion to certify the proposed class as to their request for restitution because plaintiffs have not yet demonstrated that the Court holds subject matter jurisdiction over that aspect of the case. In its answer, the United States has raised sovereign immunity as an affirmative defense to plaintiffs' claim for restitution—a defense that, if successful, would bear jurisdictional significance. As of now, plaintiffs have made no showing that the Court has jurisdiction over plaintiffs' request for restitution, and because subject matter jurisdiction is a prerequisite for class certification, the Court is presently unable to consider class certification for that portion of the case. This ruling is subject to reconsideration, if needed, after the parties fully brief the issue of subject matter jurisdiction in their dispositive motions, responses, and replies.

A court may not certify a class action where it lacks jurisdiction over the claims of putative class members. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any case.") (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)); *Amchem Prods. Inc. v. Winsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act."); *see also* Fed R. Civ. Pro. 82 ("[R]ules shall not be construed to extend . . . the [subject matter] jurisdiction of the United States district courts."). More pointedly, the D.C. Circuit has expressly declared that "subject matter jurisdiction is a prerequisite to class certification." *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 420 (D.C. Cir. 2006); *see also Olden v. Lafarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004) ("The question of subject matter jurisdiction is a prerequisite to class certification . . . ."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002) ("The question of constitutional standing . . . is a prerequisite to Rule 23 class certification because it goes to the court's jurisdiction."); Stacy L. Davis et al., 6A Federal Procedure, Lawyers Edition § 12:11 (Dec. 2015) ("Fed. R. Civ. P. 23 cannot be invoked unless the court has subject matter jurisdiction. Therefore, in order that a class action may be brought in a federal court . . . it is . . . necessary that there is an independent statutory jurisdictional base for the class action . . . ." (footnotes omitted)).

Further, just as subject matter jurisdiction is a prerequisite for class certification, the government's waiver of sovereign immunity is a necessary condition for jurisdiction when suit is brought against the United States. Indeed, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1025 (D.C. Cir. 2006) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)); *see also United States v. Mitchell*, 445 U.S. 535, 538

(1980) ("It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'") (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Additionally, waiver must be explicit, as courts are directed to "strictly construe[] any waiver of sovereign immunity, 'in terms of its scope, in favor of the sovereign.'" *Webman*, 441 F.3d at 1025 (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)); *see also Lane*, 518 U.S. at 192 ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims.").

In this case, plaintiffs have yet to meet their burden of establishing that the Court has subject matter jurisdiction over the restitution portion of this case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("[T]he burden of establishing [jurisdiction in federal court] rests upon the party asserting jurisdiction."); *see also Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 20 (1st Cir. 2013) ("The parties asserting jurisdiction, here the plaintiffs, have the burden of demonstrating the existence of federal jurisdiction."); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."); Russell J. Davis et al., 8 Cyclopedia of Federal Procedure § 26:332, Subject Matter Jurisdiction (3d ed. Nov. 2015) ("The party asserting a federal court's jurisdiction bears the burden of proving that such jurisdiction exists."). Although defendant did not raise the sovereign immunity argument in its opposition to plaintiffs' motion to certify a class,[10] sovereign immunity bears on the Court's jurisdiction and must therefore be decided at the outset of the proceedings. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any case.") (quoting

---

[10] It should be again noted, however, that defendant has raised the defense in its answer to the amended complaint. *See* Answer to Am. Class Action Complaint 1.

*Ex parte McCardle*, 7 Wall. 506, 514 (1868)); *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Service, LLC*, 776 F.3d 1, 8 (D.C. Cir. 2015) (citing to *Steel Co.*'s quotations of the relevant language in *Ex parte McCartle*); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361-62 (D.C. Cir. 2012) (same).[11]

The first and primary statute that plaintiffs specifically invoke in their complaint is the Administrative Procedure Act (APA), which does not constitute a waiver of sovereign immunity for money damages and therefore fails to independently establish jurisdiction over the restitution piece of plaintiffs' claims. Plaintiffs proffer that "[c]harging a fee for the issuance or renewal of a PTIN constitutes unlawful agency action under the Administrative Procedure Act." Am. Compl. ¶ 42. The APA, however, contains only a "limited waiver of sovereign immunity." *Geronimo v. Obama*, 725 F. Supp. 182, 186 (D.D.C. 2010) (quoting *Teton Historic Aviation Found. v. US Dep't of Def.*, 686 F. Supp. 2d 75, 78 (D.D.C. 2010)). Indeed, the waiver of sovereign immunity applies only to "action[s] seeking relief other than money damages." 5 U.S.C. § 702; *see also Benoit v. US Dep't of Agric.*, 608 F.3d 17, 19 (D.C. Cir. 2010) (holding that suits for money damages are not within the limited waiver of sovereign immunity found in the APA).

Although the APA specifically does not waive sovereign immunity for money damages, it is important to note "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v.*

---

[11] The Court is aware that other district courts have stated ""[r]egardless of the merits of Defendants' argument, the Court cannot and will not reach the question of sovereign immunity in this motion for class certification." *Wilcox v. Petit*, 117 F.R.D. 314, 319 (D. Me. 1987); *see also Luyando v. Bowen*, 124 F.R.D. 52, 56 (S.D.N.Y. 1989) (quoting *Wilcox* and coming to the same conclusion). Under the Supreme Court and D.C. Circuit precedents of *Mitchell* and *Webman*, however, the Court feels bound come to the opposite conclusion and treat sovereign immunity as a threshold jurisdictional issue.

*Massachusetts*, 487 U.S. 879, 893-94 (1988). The Supreme Court has elaborated on the "money

damages" exception to the APA's waiver of sovereign immunity:

> Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for "the recovery of specific property *or monies,* ejectment from land, or injunction either directing or restraining the defendant officer's actions."

*Id.* at 93 (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949))

(emphasis in original).

In this case, plaintiffs seek "restitution or return of all PTIN fees collected by Treasury or

the IRS." Am. Compl. 15. This request, however, seems to overlook that "'restitution' in the

judicial context commonly consists of money damages," and does not necessarily represent an

equitable action for specific relief. *Id.* at 917 n.2 (Scalia, J., dissenting) (citing E. Farnsworth,

Contracts § 12.20, p. 911 (1982)); *see also Great-West Life & Annuity Ins. Co. v. Knudson,* 534

U.S. 204, 210 (2002) ("Almost invariably suits seeking (whether by judgment, injunction, or

declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money

damages,' as that phrase has traditionally been applied, since they seek no more than

compensation for loss resulting from the defendant's breach of legal duty" (citation omitted).);

*Bowen v. Massachusetts*, 487 U.S. 879, 917 n.2 (1988) (Scalia, J., dissenting) (discussing *United

States v. Acme Process Equipment Co.*, 87 S. Ct. 350 (1966), which described claims for

restitution as a suit "to recover damages for breach of contract"). Moreover, "even if a plaintiff

does not specifically ask for a direct cash payment, the plaintiff may still be seeking 'money

damages' if the relief sought is 'merely a means to the end of satisfying a claim for the recovery

of money.'" *Velchuamy v. FDIC*, 706 F.3d 810, 815-16 (7th Cir. 2013) (quoting *Dep't of the

Army v. Blue Fox, Inc.*, 119 S. Ct. 687, 692 (1999)).

In light of this authority, it appears that the Court may not have jurisdiction over the restitution piece of plaintiffs' case. In any event, plaintiffs have so far offered no arguments or authority to satisfy their burden of establishing that the Court does in fact have the proper jurisdiction. The Court will therefore deny the portion of plaintiffs' motion to certify a class as it concerns restitution; however, this ruling is subject to reconsideration. According to the scheduling order proposed by the parties on December 16, 2015 and entered by the Court on December 21, 2015, dispositive motions are due within 30 days of this date. Upon receipt of the briefs, if needed, the Court will reevaluate this jurisdictional issue. If the Court were to then make a finding that it does in fact have jurisdiction over the restitution aspect of plaintiffs' claim, plaintiffs' motion for class certification would once again become ripe and the Court would determine if class certification under FRCP 23 is appropriate for the restitution that plaintiffs seek.

To summarize, subject matter jurisdiction is a prerequisite for class certification. Additionally, waiver of sovereign immunity is a prerequisite for jurisdiction where, as here, the United States is the defendant. Because there has not been a showing that the United States has consented to the restitution portion of this lawsuit, as things presently stand, there cannot be a finding the Court has jurisdiction over that aspect of the plaintiffs' claims. As such, plaintiffs' motion for class certification as it concerns restitution is denied, subject to reconsideration, if necessary, after the parties more fully brief the issue of the court's jurisdiction.

### III. CONCLUSION

Upon consideration of the motion, plaintiffs' opposition, defendant's reply, the entire record herein, and the applicable law, the Court will GRANT IN PART and DENY IN PART plaintiffs' Motion [46] to for Class Certification. The Court finds that plaintiffs have satisfied the

requirements of FRCP 23 as it relates to plaintiffs' request for declaratory relief and will certify the proposed class under FRCP 23(b)(2) for that portion of the case.

Additionally, the Court will deny plaintiffs' motion for certification as it relates to their request for restitution. This ruling is subject to reconsideration, if needed, after the parties more fully brief issues relating to subject matter jurisdiction.

A separate order consistent with this Opinion shall issue on this date.

Royce C. Lamberth
United States District Judge

Date: 2/9/16

24