UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ADAM STEELE, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Case No. 14-1523 (RCL) |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) ) | |

## **MEMORANDUM OPINION**

Currently before the Court is plaintiffs' Motion for Reconsideration [56] of the Court's Order and Memorandum Opinion [54, 55] granting in part and denying in part plaintiffs' motion for class certification [46]. Upon consideration of plaintiffs' motion, defendant's response [59], plaintiffs' reply [60], defendant's notice of supplemental authority [61] and plaintiffs' response to that authority [62], along with the applicable law and the entire record herein, the Court will GRANT plaintiffs' motion for reconsideration. Accordingly, the Court finds that it has subject matter jurisdiction under the Administrative Procedure Act (APA) over plaintiffs' request for monetary relief, or restitution. Additionally, after finding it has the proper jurisdiction, the Court will GRANT plaintiffs' motion [46] for class certification in its entirety and certify plaintiffs' proposed class as it relates to the monetary relief portion of this case.

As stated, the Court will grant plaintiffs' motion to reconsider the Court's Order and accompanying Memorandum Opinion on class certification, dated February 9, 2016. In that Order, the Court certified the following class as it relates to plaintiffs' request for declaratory relief: "All

individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek." *See* Order 1, ECF No. 54. Further, the Court denied plaintiffs' motion for certification as it related to their request for restitution. More specifically, the Court ruled that plaintiffs had not yet demonstrated that this Court holds subject matter jurisdiction over plaintiffs' request for monetary relief because it was unclear whether or not the United States had waived its sovereign immunity over that aspect of the case. *See* Mem. Op. 18-23, ECF No. 55.

As the Court explained in its previous Order, questions of sovereign immunity bear jurisdictional significance, and therefore must be determined at the outset of a lawsuit. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any case.") (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)); Mem. Op. 19-20. Moreover, the APA contains only a limited waiver of sovereign immunity, *Geronimo v. Obama*, 725 F. Supp. 182, 186 (D.D.C. 2010) (quotation omitted), which applies exclusively to "action[s] seeking relief other than money damages." 5 U.S.C. § 702; *see also Benoit v. US Dep't of Agric.*, 608 F.3d 17, 19 (D.C. Cir. 2010). In its previous Order, the Court found that plaintiffs' request for restitution could potentially be construed as a request for money damages and therefore ruled that plaintiffs had failed to sufficiently show the Court had jurisdiction over that portion of the case. Accordingly, the Court denied plaintiffs' motion for class certification as it related to their request for restitution. Mem. Op. 22-23. The Court's Order and Memorandum Opinion, however, made explicit that its ruling was subject to reconsideration and invited the parties to submit additional briefing on whether plaintiffs' request for restitution is subject to the government's waiver of sovereign immunity.

Responding to that invitation, plaintiffs filed a motion for reconsideration [56] and argued that for the purposes of their request for restitution, the government has waived its sovereign immunity under both the APA[1] and the Little Tucker Act—though waiver would be sufficient under either one of the statutes. After considering this motion, defendant's response, plaintiffs' reply, and the applicable law, the Court finds that under the APA, the government has waived its sovereign immunity for the purposes of plaintiffs' request for restitution and that therefore, subject matter jurisdiction exists for that aspect of the case.[2] In coming to this conclusion, the Court principally relies on *America's Community Bankers v. FDIC*, which held that jurisdiction under the APA existed in a case where plaintiffs similarly alleged that the government had "improperly collected" certain fees and then brought suit against the government to "get their money back." 200 F.3d 822, 830 (D.C. Cir. 2000). As such, the Court will grant plaintiffs' motion for reconsideration, finding that it has jurisdiction under the APA over the entirety of this case.

Moreover, after ruling that the proper subject matter jurisdiction exists, the Court finds that plaintiffs have satisfied the class certification requirements of Federal Rule of Civil Procedure (FRCP) 23(b)(3) as it relates to their request for restitution. The Court will adopt a hybrid approach, certifying a 23(b)(2) class for plaintiffs' claims for declaratory relief and a 23(b)(3) class for their

---

[1] Although plaintiffs state their claim under both the APA and the Little Tucker Act, *see* Am. Compl. ¶ 5 (stating that the Court has subject matter jurisdiction under 5 U.S.C § 702, 28 U.S.C. § 1331, and 28 U.S.C. § 1346(a)), the APA is the "first and primary statute" plaintiffs specifically invoke. *See* Mem. Op. 21.

[2] The parties discuss at length whether the Court has jurisdiction under the Little Tucker Act. *See* Pls.' Mot. for Recons. 5-7, ECF No. 56; United States' Response to Pls.' Mot. for Recons. 9-13; Pls.' Reply in Supp. of Recons. 5-7, ECF No. 60. Notably, the United States does not even directly dispute jurisdiction under the Little Tucker Act, stating "this Court may have subject matter jurisdiction under the Little Tucker Act over plaintiffs' monetary claims based solely on [31 U.S.C. § 9701]." United States' Response to Pls.' Mot. for Recons. 13  Additionally, the government has submitted a supplemental notice of authority highlighting a recent case where the Court of Federal Claims was determined to have exclusive jurisdiction under the Tucker Act, as opposed to the Little Tucker Act. *See* ECF No. 61. Because the Court has determined jurisdiction exists under the APA—the statute in which plaintiffs primarily rely on to press their claims—the Court need not rule on whether or not, and to what extent, the Little Tucker Act confers subject matter jurisdiction.

claims for monetary relief. Building off of its previous Memorandum Opinion and Order, the Court will now certify the following proposed class under FRCP 23 for the entirety of this case: "All individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek."

## I. BACKGROUND

As explained in detail in the original Memorandum Opinion dated February 9, 2016,[3] this case deals with the Department of the Treasury (Treasury) and Internal Revenue Service's (IRS's) requirement that compensated tax return preparers both obtain and pay for a preparer tax identification number (PTIN). On September 30, 2010, a Treasury regulation became effective requiring that "all tax return preparers must have a preparer tax identification number or other prescribed identifying number that was applied for and received at the time and in the manner, including the payment of a user fee, as may be prescribed by the Internal Revenue Service." 26 C.F.R. § 1.6109-2(d). Consistent with this regulation, the IRS then began to charge $64.25 for the initial PTIN registration fee and $63 for each annual renewal—with $50 of each fee going to the IRS for processing the application and the remainder going to third-party vendors for administering the application process. Am. Compl. ¶¶ 13, 21. On October 30, 2015, the IRS then issued temporary regulation 26 C.F.R. § 300.13T, which lowered the PTIN application and renewal fees to $33 and eliminated any fee charged by third party vendors. In bringing this lawsuit, plaintiffs argue that the IRS is not authorized to require payment for a PTIN—i.e., the user fee—and even

---

[3] This Memorandum Opinion is meant to be read in conjunction with the Memorandum Opinion issued on February 9, 2016. Much of the legal analysis in that Opinion, especially the analysis surrounding 31 U.S.C. § 9701(b)'s "service or thing of value" standard, is relevant to this case's ongoing class certification issues, and is hereby incorporated by reference.

if the IRS is authorized to charge the fee, that fee is excessive[4] and therefore invalid at its current level.

In its February 9, 2016 Memorandum Opinion, the Court provided ample detail of the statutory framework underpinning the PTIN and its user fee, the recent efforts the IRS has taken to regulate compensated tax return preparers, and the legal theories plaintiffs have crafted in an effort to partially or totally invalidate the PTIN user fee. The Court need not rehash those details here. For present purposes, it is sufficient to note that plaintiffs brought two separate and alternate claims, each of which seeks both declaratory relief and restitution. While plaintiffs' first claim alleges that "the IRS lacks legal authority to charge a fee for the issuance or renewal of a PTIN," Am. Compl. ¶ 39, their second claim alternatively argues that even "if the IRS has legal authority to charge a fee for the issuance or renewal of a PTIN, the fees charges exceed the amount that can be charged under 31 U.S.C. § 9701." *Id.* at ¶ 46.[5]

In pressing these separate, alternative legal theories, plaintiffs seek both declaratory relief and restitution. First, plaintiffs request the Court grant "a judgment declaring that the IRS lacks legal authority to charge a fee for issuance or renewal of a PTIN," or alternatively, "a judgment declaring that the fees charged for the issuance and renewal of a PTIN are excessive." Am. Compl. 15. In addition to this declaratory relief, plaintiffs separately seek restitution for the PTIN fees that they claim have been unlawfully assessed to date. *Id.* Plaintiffs believe that if the IRS has exceeded

---

[4] For a discussion of the excessive fee standard, see section II.B.1 of the Court's February 9, 2016 Memorandum Opinion.

[5] Under 31 U.S.C. § 9701, Congress authorized federal agencies to charge a user fee in exchange for providing a "service or thing of value." The government argues that the IRS is authorized to charge a PTIN User Fee under this statutory provision because the agency is providing a "thing of value" to PTIN holders by granting them "the ability to prepare tax returns for compensation." United States Opp'n to Pls.' Mot. for Class Certification 1, ECF No. 50. For a discussion of 31 U.S.C. § 9701, see section II.B.1 of the Court's February 9, 2016 Memorandum Opinion.

5

its statutory authority by imposing the PTIN fee, then the agency should be forced to return all of the fees it has unlawfully charged since 2010 when the regulation was first put into place. In other words, plaintiffs do not solely want to halt the continued implementation a rule they believe to be unlawful—they also want their money back.

After bringing these claims, plaintiffs sought to certify the entire case as a class action under FRCP 23. More specifically, they moved the Court to certify the following class: "All individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek." In making this motion, plaintiffs suggested that the Court adopt a "hybrid approach," meaning that their request for a declaratory judgment would be certified under 23(b)(2) and their request for restitution would be certified under 23(b)(3) in order to grant class members certain protections including the right to opt out at the monetary relief phase. *See* Pls.' Reply in Supp. of Class Certification 6, ECF No. 53.

In responding to this motion, defendants also made certain distinctions between plaintiffs' request for declaratory relief and their request for restitution. First, defendants explained—and plaintiffs agreed—that for the requested declaratory relief, a class could only be certified under FRCP 23(b)(2). *See* United States' Opp'n to Pls.' Mot. for Class Certification 2, 17; Pls.' Reply in Supp. of Class Certification 6. Further, although IRS did not directly challenge plaintiffs on Rule 23(a)'s prerequisites,[6] the agency argued that certification was inappropriate under FRCP 23(b)(2) because it did not act on grounds "generally applicable to the class." *Id.* at 17. More specifically, the IRS argued that the proposed class loses its necessary cohesion under FRCP 23(b)(2) because "plaintiffs' claims impair the rights of unnamed CPAs, attorneys, and [enrolled IRS agents] to seek relief or alternative theories not available to unlicensed return preparers."

---

[6] For the details of defendant's arguments, see Mem. Op. 10, ECF No. 55.

United States' Opp'n to Pls.' Mot. for Class Certification 2. The Court, however, rejected that argument and found that because the "IRS imposes the same fee for each PTIN application and the IRS has stated the cost of processing PTIN applications does not vary, . . . the IRS has 'acted on grounds that apply generally to the class.'" Mem. Op. 16 (quoting Fed. R. Civ. P. 23(b)(2)). Accordingly, the Court certified the proposed class under FRCP 23(b)(2) as it relates to plaintiffs' request for declaratory relief.

After certifying the class as it related to declaratory relief, the Court turned to the class certification issues surrounding plaintiffs' request for restitution, and ultimately expressed overriding jurisdictional concerns. Although the government contended that certification was inappropriate under FRCP 23(b)(3) because "individual issues predominate over class issues," United States' Opp'n to Pls.' Mot. for Class Certification 2, the Court did not evaluate that argument. Instead, the Court denied plaintiffs' motion for certification as it related to monetary relief, finding that plaintiffs had not yet demonstrated the government had properly waived its sovereign immunity for that portion of the case. As discussed, plaintiffs brought their claims primarily under the APA, *see* Am. Compl. ¶ 42, and as the Court noted, the APA expressly does not waive sovereign immunity for actions seeking money damages. 5 U.S.C. § 702; *see also Benoit v. US Dep't of Agric.*, 608 F.3d 17, 19 (D.C. Cir. 2010). Although plaintiffs labeled their claim "restitution," the Court noted that "'restitution' in the judicial context commonly consists of money damages," and does not necessarily represent an equitable action for specific relief. *Bowen v. Massachusetts*, 487 U.S. 879, 917 n.2 (1988) (Scalia, J., dissenting) (citing E. Farnsworth, Contracts § 12.20, p. 911 (1982)). And importantly, the waiver of sovereign immunity is a prerequisite for subject matter jurisdiction. *See, e.g.*, *Webman v. Fed. Bureau of Prisons*, 441 F.3d

1022, 1025 (D.C. Cir. 2006) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

In other words, if plaintiffs' request for restitution was effectively a demand for "money damages," then the Court would lack jurisdiction over that portion of plaintiffs' claims. Because the Court cannot certify a class before making a finding that it has subject matter jurisdiction over the class members' underlying claim(s), *see, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any case."), the Court denied plaintiffs' class certification motion as to their request for restitution, subject to reconsideration.

After the Court partially denied plaintiffs' class certification motion, plaintiffs submitted a motion for reconsideration at the Court's invitation. In it, they focus extensively on *America's Community Bankers v. FDIC*, 200 F.3d 822 (D.C. Cir. 2000), to argue that the restitution of PTIN fees allegedly unlawfully collected since 2010 would not constitute "money damages" under the APA. According to their argument, because the APA waives sovereign immunity for "action[s] seeking relief other than money damages," and plaintiffs do not seek money damages—but rather "restitution," a form of equitable relief—the APA waives sovereign immunity for the entirety of the case.

## II. LEGAL ANALYSIS

The Court will grant plaintiffs' motion for reconsideration, finding that under *America's Community Bankers*, the Court has jurisdiction to consider plaintiffs' request for restitution. After determining that the proper jurisdiction exists, the Court will adopt a hybrid approach and certify the class under FRCP 23(b)(2) as to plaintiffs' claims for declaratory relief and under FRCP 23(b)(3) as to plaintiffs' claims for restitution.

### A. Jurisdiction

The Court finds that it has jurisdiction under the APA to hear the monetary relief portion of this case because such relief is best characterized as "restitution," as opposed to "money damages." The task before the Court is to determine the most accurate way to describe plaintiffs' demand that the IRS return to them the total amount of PTIN user fees the agency has allegedly unlawfully assessed since 2010. If such relief constitutes "money damages," then as stated, this Court lacks jurisdiction under the APA, as such relief would fall outside of the scope of the APA's waiver of sovereign immunity.[7] If on the other hand, plaintiffs' demand for money can be more accurately described as "restitution," or some other form of equitable relief, then the APA would waive the government's sovereign immunity and empower this Court to certify plaintiffs' proposed class and ultimately grant them their requested relief, if such action is otherwise warranted.

Operating under this legal framework, plaintiffs and defendant take opposing positions. Plaintiffs emphasize that "'money damages' refers to 'a sum of money used as compensatory relief—that is, 'to substitute for a suffered loss," whereas specific remedies, such as restitution, "are not substitute remedies at all" but "attempt to restore [a] plaintiff to that which it was entitled from the beginning." Pls.' Mot. for Recons. 3 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988)). Because they want the IRS to return to them only the "very thing to which [they were] entitled," they are not seeking any form of substitute compensation and their request can most accurately be described as restitution. *Id.* (citing *Bowen*, 487 U.S. at 895). To support this argument, plaintiffs rely heavily on *America's Community Bankers*, where the D.C. Circuit ruled

---

[7] As stated, the Court may still be empowered to order such relief under the jurisdiction conferred by the Little Tucker Act; however, the Court need not determine the existence or scope of such jurisdiction.

somewhat succinctly that "[w]here a plaintiff seeks an award of funds to which it claims entitlement under a statute, the plaintiff seeks specific relief, not damages." 200 F.3d at 829.

The defendant characterizes plaintiffs' requested relief in very different terms, claiming instead that plaintiffs essentially allege that they suffered economic harm when they were illegally forced to pay a PTIN fee and now seek money damages as compensation. Essentially, defendant argues that "plaintiffs allege that they have been injured by paying the PTIN User Fee. The requested remedy for that injury is repayment of the amount determined to be illegal." United States' Response to Pls.' Mot. for Recons. 2. Bearing in mind that "a suit 'seeking to recover a past due sum of money that does no more than compensate a plaintiff's loss is a suit for damages, not specific relief," defendants argue that plaintiffs' request for the return of all (or the excess amount) of PTIN fees is compensatory and therefore must be characterized as "money damages." *Id.* at 9 (citing *Bowen*, 487 U.S. at 918 (Scalia, J., dissenting)).

In evaluating these arguments, the Court agrees with plaintiffs and finds that *America's Community Bankers* is controlling and plaintiffs' request for the total or partial return of their previously paid PTIN fees is properly characterized as "restitution." *America's Community Bankers* involved the FDIC's invocation of sovereign immunity after plaintiffs sued the agency under the APA for allegedly "retain[ing] funds" that it had "improperly collected." 200 F.3d at 830. Plaintiffs brought suit to "get their money back," and the D.C. Circuit squarely held that this requested remedy could not be characterized as "money damages" and therefore fell under the APA's relatively broad waiver of sovereign immunity. *Id.* Indeed, because such a remedy would simply restore the plaintiffs to their original position, the relief was "equitable, . . . not compensatory." *Id.* at 831.

The underlying facts and statutory scheme of *America's Community Bankers* is somewhat complex. The case centered on assessments the FDIC made on its member financial institutions to maintain certain reserve-to-deposits ratios of insurance funds the agency controlled. *Id.* at 833. The opinion describes in detail the legal status and interplay between many different government-sponsored insurance funds, but for present purposes, it is sufficient to say that the FDIC was only authorized to make certain assessments "'when necessary, and only to the extent necessary' to maintain [] reserves at the designated reserve ratio." *Id.* at 825 (citing 12 U.S.C. § 1817(b)(2)A)(i)). After paying these fees, the member institutions brought a claim against the government under the APA, alleging that the agency charged them an amount in excess of its statutory authority. *Id.* at 830. Importantly, plaintiffs sought, among other things, to "get their money back." *Id.*

In response, the FDIC argued that plaintiffs' requested relief "constituted money damages beyond the scope of the APA's jurisdictional grant." *Id.* at 829. The Circuit Court rejected the government's argument and ruled as follows:

> [T]his case questions whether the government can retain funds which originally belonged to Bankers's members. . . . Bankers is not seeking compensation for economic losses suffered by the government's alleged wrongdoing; Bankers wants the FDIC to return that which rightfully belonged to Bankers's member institutions in the first place. Bankers alleges that the FDIC violated the terms of [the statutory scheme] by assessing more in the fourth quarter of 1996 than the statutory scheme permitted. If Bankers is correct in its statutory interpretation, then the FDIC improperly collected money from Bankers's members, and they are entitled under the statutory scheme to get their money back.

*Id.* at 830.

The case currently before the Court is nearly identical. Similar to *America's Community Bankers*, this case "questions whether the government can retain funds which originally belonged to [the plaintiffs]." *Id.* As plaintiffs point out, they allege that the IRS violated federal law by

11

"assessing more" in PTIN fees "than the statutory scheme permitted," *id.* at 830, which in plaintiffs' view is either no fee at all or a fee limited to the cost of providing a "service or thing of value" under 31 U.S.C. § 9701. *See* Pls.' Mot. for Recons. 4. As such, plaintiffs "are not seeking compensation for economic losses suffered by the government's alleged wrongdoing;" rather, they want the government to return that which "rightfully belonged to them in the first place." *America's Community Bankers*, 200 F.3d at 830. The Court therefore finds that, as in *America's Community Bankers*, plaintiffs' request for monetary relief constitutes restitution, not money damages, and accordingly falls under the APA's waiver of sovereign immunity.

Other courts in this circuit have come to the same conclusion. In *Holly Sugar Corp. v. Veneman*, for example, the court ruled that the plaintiffs were requesting specific relief, not "money damages" under the APA, when they sought to retrieve a portion of interest payments made to the USDA under a loan assistance program offered to sugar farmers. 355 F. Supp. 2d 181 (D.D.C. 2005), *rev'd on other grounds*, 437 F.3d 1210 (D.C. Cir. 2006). Essentially, the plaintiffs argued that the government had charged them a rate of interest one percent higher than was permitted by statute and sought "reimbursement for the amount of additional interest." *Id.* at 193. The court emphasized that the plaintiffs sought "only that to which they were entitled . . . and thus the relief requested was other than money damages." *Id.*; *see also Zellous v. Broadhead Assocs.*, 906 F.2d 94, 96 (3d Cir. 1990) (ruling that after HUD allegedly charged plaintiffs impermissibly excessive rent, plaintiffs' request for reimbursement from the agency was not a claim "for money damages and . . . the district court [could] award complete relief under the [sovereign immunity] waiver of § 702 of the Administrative Procedure Act").

Defendant attempts to distinguish the present matter from *America's Community Bankers* and this line of cases by arguing that the relevant precedent only governs situations where

plaintiffs seek "adjustments to ongoing relationships" and where the requested relief sought is "purely injunctive." United States' Response to Pls.' Mot. for Recons. 6. Neither of these arguments is persuasive. First, there is no requirement that plaintiffs must seek an "adjustment to an ongoing relationship" in order to have their requested relief categorized as "restitution." It is true that in *Bowen v. Massachusetts*, the Supreme Court stated that the plaintiffs requested relief was not an "award of damages," but rather "an adjustment—and, indeed, usually a relatively minor one—in the size of the federal grant to the State that is payable in huge quarterly installments." 487 U.S. 879, 893 (1988). The Court, however, never stated that a payment *must* be an "adjustment" in order to qualify as equitable relief. The Opinion simply described one instance where a payment of money was a form of specific relief, rather than money damages—it did not describe the only such instance. Indeed, *America's Community Bankers*, which is binding on this Court, specifically interpreted and explained the rule set forth in *Bowen* and omitted any discussion whatsoever of adjustments to ongoing relationships. The Circuit interpreted *Bowen*'s ruling, in its entirety, as follows:

> The pivotal analysis in distinguishing specific relief available under the APA from unavailable money damages comes from our opinion in *Md. Dep't of Human Res. v. Dep't of Health and Human Servs.,* 763 F.2d 1441 (D.C. Cir. 1985), which the Supreme Court adopted in *Bowen v. Massachusetts,* 487 U.S. 879 (1988). Not all forms of monetary relief are money damages. *See Md. Dep't of Human Resources,* 763 F.2d at 1447. Rather, money damages represent compensatory relief, an award given to a plaintiff as a substitute for that which has been lost; specific relief in contrast represents an attempt to restore to the plaintiff that to which it was entitled from the beginning. . . . Where a plaintiff seeks an award of funds to which it claims entitlement under a statute, the plaintiff seeks specific relief, not damages. *See, e.g., Bowen,* 487 U.S. at 901.

As is obvious, the Circuit applied the rule laid out in *Bowen* and made no mention of the supposed requirement that equitable relief takes the form of an "adjustment to an ongoing relationship." As

such, the Court will reject the government's first explanation for why *America's Community Bankers*'s reasoning and holding should not apply in this case.

Like the suggested requirement that plaintiffs seek an "adjustment to an ongoing relationship," defendant's second argument that the requested relief must be "purely injunctive" is also off base. In the Court's view, it is unclear how this requirement squares with the legal analysis and conclusions presented in the cases the parties primarily cite to. In these cases, as in the present case, the plaintiffs sought a refund or reimbursement of fees they argued were improperly collected. *See Bowen v. United States*, 487 U.S. 879, 910 (1988) ("[S]ince the orders are for specific relief (they undo the Secretary's refusal to reimburse the State) rather than for money damages (they do not provide relief that substitutes for that which ought to have been done) they are within the District Court's jurisdiction under § 702's waiver of sovereign immunity."); *America's Cmty. Bankers v. FDIC*, 200 F.3d 822, 829 (D.C. Cir. 2000) ("The district court held that . . . the refund Bankers seeks is unavailable under 5 U.S.C. § 702)); *Holly Sugar Corp. v. Veneman*, 355 F. Supp. 2d 181, 193 (D.D.C. 2005) ("Here, as in *Bowen* and *Zellous,* the plaintiffs merely seek 'reimbursement' for the amount of additional interest the CCC charged them in violation of the Act."). And importantly, in all of these cases, the Court characterized plaintiffs' request for a refund or reimbursement as specific relief, not as money damages. The present matter is no different, as plaintiffs simply seek that which they were "entitled [to] from the beginning." *America's Cmty. Bankers*, 200 F.3d at 829. For these reasons, the Court finds that § 702 of the APA waives sovereign immunity for plaintiffs' request for monetary relief and that it has jurisdiction to hear that portion of the case.

### B. Certification of the Portion of the Matter Relating to Plaintiffs' Request for Restitution

After determining that subject matter jurisdiction exists, the Court will grant plaintiffs' motion to certify the proposed class as it relates to their request for restitution. The Court finds that the class certification analysis relating to declaratory relief detailed in its February 9, 2016 Memorandum Opinion is fully applicable to plaintiffs' request for monetary relief. *See* Mem. Op. 14-18.

In arguing against certification for declaratory and monetary relief, the United States focuses on the differences between various subsets of class members—specifically attorneys, enrolled agents, CPAs, and unlicensed tax return preparers. Importantly, the proposed class is comprised of all these subgroups, each of which, as defendant points out, has differing "educational, testing, training, [and licensing] requirements." United States' Opp'n to Pls.' Mot. for Class Certification 18. Moreover, each group takes "different advantage of the benefit provided by the Service," that is, the ability to prepare tax returns for compensation. *Id.* With respect to declaratory relief, the IRS argued that these differences run afoul of FRCP 23(b)'s requirement that the class be "cohesive." *Id.* at 21. For restitution, the defendant similarly argued that, certification under FRCP 23(b)(3) is inappropriate because in light of the differences between the class's subgroups, "individual issues predominate over class-wide issues."[8] *Id.* at 13.

In its February 9, 2016 Memorandum Opinion, the Court rejected defendant's argument concerning declaratory relief and will now apply the same reasoning to reject the defendant's argument concerning monetary relief. As the Court has already ruled, defendant's contention that

---

[8] The government conceded that for the monetary relief portion of plaintiffs' first claim—that the IRS does not have the authority to issue any PTIN fee—a class can be certified under FRCP 23(b)(3), as class issues will predominate over individual issues. *See* United States' Opp'n to Pls.' Mot. for Class Certification 15. The United States, however, challenges certification under the monetary relief portion of plaintiffs' second claim—that the fee imposed was excessive.

members of the plaintiff class will receive varying benefits from the PTIN overlooks that "the measure of fees [imposed under § 9701, which the government uses to justify the PTIN fees,] is the cost of the government of providing the service, not the intrinsic value of the service to the recipients." *Seafarers Int'l Union of N. Am. v. US Coast Guard*, 81 F.3d 179, 185 (D.C. Cir. 1996). Because the IRS has stated time and again that the cost of issuing a PTIN is the same regardless of who receives the pin number (attorneys, CPAs, etc.), *see* Mem Op. 15, the question of whether the PTIN fee is authorized—or excessive—will be answered in the same way for every class member. Therefore, focusing on costs, class-wide issues predominate over the issues of individual class members, making class certification for plaintiffs' request for restitution appropriate under FRCP 23(b)(3). Consistent with this analysis, the Court will certify the following class as it relates to restitution: "All individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek." As such, this entire case—each of plaintiffs' two, alternative claims and their request for both declaratory and monetary relief—is now certified as a class action.

### III. CONCLUSION

Upon consideration of plaintiffs' motion for reconsideration, defendant's opposition, plaintiffs' reply, the entire record herein, and the applicable law, the Court will GRANT plaintiffs' motion for reconsideration. *America's Community Bankers v. FDIC*, presents binding precedent and requires a finding that under the APA, the government has waived its sovereign immunity for the portion of this case relating to plaintiffs' request for restitution. The Court therefore has the proper subject matter jurisdiction to proceed with every aspect of this case.

Moreover, the Court finds that certification under FRCP 23(b)(3) is appropriate for plaintiffs' request for restitution, as class-wide issues predominate over the issues of individual

class members. The Court will therefore adopt a hybrid approach, and certify the class under FRCP 23(b)(2) for plaintiffs' request for declaratory relief and under FRCP 23(b)(3) for their request for monetary relief.

As is detailed in the accompanying Order, Motley Rice is hereby appointed as class counsel. Moreover, within 30 days of this date, the parties shall file an agreed-upon proposed form of class notice. If they cannot agree on a proposed form, they shall file separate proposed forms, also within 30 days of this date. Class counsel shall pay all costs incurred to provide notice and shall ensure that individual notice is provided to all absent class members who can be identified through reasonable effort.

A separate Order consistent with this Memorandum Opinion shall issue on this date.

_____
Royce C. Lamberth
United States District Judge

Date: 8/8/16