APPEAL,TYPE–E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:14–cv–01523–RCL</u>
### *Internal Use Only*

STEELE, ET AL. v. UNITED STATES OF AMERICA
Assigned to: Judge Royce C. Lamberth
Demand: $150,000,000
 Case:  1:14–cv–02221–RCL
Cause: 05:0706 Judicial Review of Agency Actions

**<u>Plaintiff</u>**

Date Filed: 09/08/2014
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

| | | |
|---|---|---|
| **BRITTANY MONTROIS** <br> *Class of More Than 700,000 Similarly Situated Individuals and Businesses* | represented by | **Allen Buckley** <br> LAW OFFICES OF ALLEN BUCKLEY <br> 2802 Paces Ferry Road – Suite 100–C <br> Atlanta, GA 30339 <br> (770) 319–0110 <br> Email: ab@allenbuckleylaw.com <br> *LEAD ATTORNEY* <br> *PRO HAC VICE* <br> *ATTORNEY TO BE NOTICED* |
| | | **Christopher S. Rizek** <br> CAPLIN & DRYSDALE, CHARTERED <br> One Thomas Circle <br> Suite 1100 <br> Washington, DC 20005 <br> (202) 862–8852 <br> Fax: (202) 429–3301 <br> Email: csr@capdale.com <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |
| | | **Elizabeth S. Smith** <br> MOTLEY RICE, LLC <br> 401 9th Street, NW <br> Suite 1001 <br> Washington, DC 20004 <br> (202) 386–9627 <br> Fax: (843) 216–9350 <br> Email: esmith@motleyrice.com <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |
| | | **Nathan David Finch** <br> MOTLEY RICE LLC <br> 401 9TH St. NW <br> SUITE 1001 <br> Washington, DC 20004 |

(202) 386–9627
Fax: (202) 232–5513
Email: nfinch@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William H. Narwold**
1 Corporate Center
20 Church Street
17th Floor
Hartford, CT 06103
860–882–1676
Fax: 860–882–1682
Email: bnarwold@motleyrice.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deepak Gupta**
GUPTA WESSLER PLLC
1900 L Sreet, NW
Suite 312
Washington, DC 20036
(202) 888–1741
Email: deepak@guptawessler.com
*ATTORNEY TO BE NOTICED*

**Stuart J. Bassin**
THE BASSIN LAW FIRM
1629 K Street, NW
Suite 300
Washington, DC 20006
(202) 895–0969
Email: sjb@bassinlawfirm.com
*TERMINATED: 12/24/2014*

**Plaintiff**

ADAM STEELE                   represented by   **Christopher S. Rizek**
                                              (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Elizabeth S. Smith**
                                              (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Meghan S.B. Oliver**
                                              MOTLEY RICE, LLC
                                              28 Bridgeside Blvd.
                                              Mt. Pleasant, SC 29464
                                              (843) 216–9492

Fax: (843) 216–9430
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan David Finch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William H. Narwold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Allen Buckley**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Deepak Gupta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stuart J. Bassin**
(See above for address)
*TERMINATED: 12/24/2014*

**Plaintiff**

**JOSEPH HENCHMAN**                    represented by  **William H. Narwold**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITED STATES OF AMERICA**          represented by  **Christopher James Williamson**
U.S. Department of Justice
Tax Division
P.O. Box 227
Washington, DC 20044
202–307–2250
Fax: 202–514–6866
Email: christopher.j.williamson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vassiliki Eliza Economides**
U.S. DEPARTMENT OF JUSTICE

3

P.O. Box 227
Ben Franklin Station
Washington, DC 20044
(202) 307–6320
Fax: (202) 514–6866
Email: vassiliki.e.economides@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/08/2014 | 1 | | COMPLAINT *Adam Steele, Brittany Montrois, and a Class of More Than 700,000 Similarly Situated Individuals and Businesses* against UNITED STATES OF AMERICA, Adam Steele, Class of More Than 700,000 Similarly Situated Individuals and Businesses ( Filing fee $ 400 receipt number 0090–3830698) filed by Montrois Brittany.(Bassin, Stuart) (Entered: 09/08/2014) |
| 09/08/2014 | 2 | | REQUEST FOR SUMMONS TO ISSUE *and Civil Cover Sheet* by Class of More Than 700,000 Similarly Situated Individuals and Businesses, Montrois Brittany, Adam Steele re 1 Complaint, filed by Class of More Than 700,000 Similarly Situated Individuals and Businesses, Montrois Brittany, Adam Steele. Related document: 1 Complaint, filed by Montrois Brittany. (Attachments: # 1 Summons Summons to US Attorney, # 2 Summons Summons to IRS, # 3 Summons Summons to Atty Genl.)(Bassin, Stuart) (Entered: 09/08/2014) |
| 09/08/2014 | | | Case Assigned to Judge Tanya S. Chutkan. (kb) (Entered: 09/08/2014) |
| 09/08/2014 | 3 | | ERRATA by BRITTANY MONTROIS, ADAM STEELE 2 Request for Summons to Issue,, filed by BRITTANY MONTROIS, ADAM STEELE, 1 Complaint, filed by BRITTANY MONTROIS. (Attachments: # 1 Summons, # 2 Summons)(Bassin, Stuart) (Entered: 09/08/2014) |
| 09/08/2014 | 4 | | SUMMONS (2) Issued Electronically as U.S. Attorney and U.S. Attorney General. (Attachments: # 1 Consent Form, # 2 Notice of Consent, # 3 Summons)(kb) (Entered: 09/08/2014) |
| 09/08/2014 | 5 | | ERRATA *(corrected)* by BRITTANY MONTROIS, ADAM STEELE 2 Request for Summons to Issue,, filed by BRITTANY MONTROIS, ADAM STEELE, 1 Complaint, filed by BRITTANY MONTROIS. (Attachments: # 1 Summons, # 2 Summons)(Bassin, Stuart) (Entered: 09/08/2014) |
| 09/10/2014 | 6 | | MOTION for Order *Admitting Allen Buckley Pro Hac Vice* by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Affidavit Declaration of Allen Buckley)(Bassin, Stuart) (Entered: 09/10/2014) |
| 09/16/2014 | 7 | | MOTION for Order *Appointing Interim Class Counsel* by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Bassin, Stuart) (Entered: 09/16/2014) |
| 09/17/2014 | 8 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 09/15/2014. (Attachments: # 1 Exhibit Receipt)(Bassin, Stuart) (Entered: 09/17/2014) |
| 09/17/2014 | 9 | | |

| | | |
|---|---|---|
| | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 9/15/2014. Answer due for ALL FEDERAL DEFENDANTS by 11/14/2014. (Attachments: # 1 Exhibit Receipt)(Bassin, Stuart) (Entered: 09/17/2014) |
| 09/17/2014 | | MINUTE ORDER: Granting 6 Motion for Leave to Appear Pro Hac Vice. Attorney Allen Buckley is hereby admitted pro hac vice to appear in this matter on behalf of plaintiffs.Signed by Judge Tanya S. Chutkan on 9/1/14. (DJS) (Entered: 09/17/2014) |
| 10/02/2014 | 10 | MOTION to Certify Class by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Buckley, Allen) (Entered: 10/02/2014) |
| 10/02/2014 | 11 | LARGE ADDITIONAL ATTACHMENT(S) by BRITTANY MONTROIS, ADAM STEELE 10 MOTION to Certify Class filed by BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Declaration Steele, # 2 Declaration Montrois, # 3 Declaration Campbell, # 4 Exhibit cited statutes, # 5 Exhibit cited regulations, # 6 Exhibit notices of proposed rulemaking and final regulations)(Buckley, Allen) (Entered: 10/02/2014) |
| 10/02/2014 | 12 | LARGE ADDITIONAL ATTACHMENT(S) by BRITTANY MONTROIS, ADAM STEELE 10 MOTION to Certify Class filed by BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit Newberg 5th edition, # 2 Exhibit Newberg 5th ed supp)(Buckley, Allen) (Entered: 10/02/2014) |
| 10/03/2014 | 13 | LARGE ADDITIONAL ATTACHMENT(S) by BRITTANY MONTROIS, ADAM STEELE 10 MOTION to Certify Class filed by BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit Part 1 of 4, # 2 Exhibit Part 2 of 4, # 3 Exhibit Part 3 of 4, # 4 Exhibit Part 4 of 4)(Buckley, Allen) (Entered: 10/03/2014) |
| 11/10/2014 | 14 | ANSWER to Complaint by UNITED STATES OF AMERICA.(Williamson, Christopher) (Entered: 11/10/2014) |
| 12/15/2014 | 15 | MOTION to Withdraw as Attorney *filed by Stuart J Bassin* by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Bassin, Stuart) (Entered: 12/15/2014) |
| 12/19/2014 | 16 | NOTICE of Appearance by Nathan David Finch on behalf of ADAM STEELE (Finch, Nathan) (Entered: 12/19/2014) |
| 12/19/2014 | 17 | NOTICE of Appearance by Elizabeth S. Smith on behalf of ADAM STEELE (Smith, Elizabeth) (Entered: 12/19/2014) |
| 12/23/2014 | 18 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– William H. Narwold, :Firm– Motley Rice, LLC, :Address– 20 Church Street, 17th Floor, Hartford CT 06103. Phone No. – 860–882–1676. Filing fee $ 100, receipt number 0090–3944725. Fee Status: Fee Paid. by ADAM STEELE (Attachments: # 1 Declaration Declaration of William Narwold, # 2 Text of Proposed Order Order Granting Motion for Admission PHV of William Narwold)(Finch, Nathan) (Entered: 12/23/2014) |
| 12/24/2014 | | MINUTE ORDER: Granting 18 Motion for Leave to Appear Pro Hac Vice. Attorney William H. Narwold is hereby admitted pro hac vice to appear in this matter on behalf of Plaintiffs. Signed by Judge Tanya S. Chutkan on 12/24/14. |

| | | | |
|---|---|---|---|
| | | | (DJS) (Entered: 12/24/2014) |
| 12/24/2014 | | | MINUTE ORDER: Granting 15 Motion to Withdraw as Attorney. Attorney Stuart J. Bassin terminated. Signed by Judge Tanya S. Chutkan on 12/24/14. (DJS) (Entered: 12/24/2014) |
| 12/29/2014 | 19 | | MOTION for Scheduling Order by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Memorandum in Support Brief in Support of Motion, # 3 Exhibit A)(Buckley, Allen) (Entered: 12/29/2014) |
| 01/12/2015 | 20 | | Case randomly reassigned to Judge Royce C. Lamberth. Judge Tanya S. Chutkan no longer assigned to the case. (gt, ) (Entered: 01/12/2015) |
| 01/15/2015 | 21 | | Memorandum in opposition to re 19 MOTION for Scheduling Order filed by UNITED STATES OF AMERICA. (Williamson, Christopher) (Entered: 01/15/2015) |
| 01/15/2015 | 22 | | Unopposed MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Meghan S.B. Oliver, :Firm– Motley Rice LLC, :Address– 28 Bridgeside Blvd; Mt. Pleasant, South Carolina 29464. Phone No. – 843–216–9492. Fax No. – 843–216–9430 Filing fee $ 100, receipt number 0090–3964542. Fee Status: Fee Paid. by ADAM STEELE (Attachments: # 1 Declaration Declaration of Meghan S.B. Oliver, # 2 Text of Proposed Order Order granting Motion for Admission PHV of Meghan S.B. Oliver)(Smith, Elizabeth) (Entered: 01/15/2015) |
| 01/21/2015 | 23 | | MOTION for Extension of Time to File Response/Reply by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 01/21/2015) |
| 01/23/2015 | 24 | | ORDER Granting 23 Motion for Extension of Time to File Response/Reply re due by 2/5/2015 Signed by Judge Royce C. Lamberth on 1/23/15. (mpt, ) (Entered: 01/23/2015) |
| 01/26/2015 | | | Set/Reset Deadlines: Response/Reply due by 2/5/2015 (mpt) (Entered: 01/26/2015) |
| 01/29/2015 | 25 | | MOTION to Stay re 10 MOTION to Certify Class by UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Williamson, Christopher) (Entered: 01/29/2015) |
| 02/05/2015 | 26 | | NOTICE of Appearance by Christopher S. Rizek on behalf of All Plaintiffs (Rizek, Christopher) (Entered: 02/05/2015) |
| 02/05/2015 | 27 | | NOTICE of Appearance by Deepak Gupta on behalf of All Plaintiffs (Gupta, Deepak) (Entered: 02/05/2015) |
| 02/05/2015 | 28 | | MOTION to Consolidate Cases *and Appoint Motley Rice LLC as Interim Class Counsel* by BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Memorandum in Support, # 2 Declaration of Allen Buckley, # 3 Exhibit A – Tax Notes Article, # 4 Declaration of William H. Narwold, # 5 Exhibit A – Resume of William H. Narwold, # 6 Exhibit B – Law360 Article, # 7 Exhibit C – Motley Rice LLC Firm Resume, # 8 Exhibit D – Resume of Nathan D. Finch, # 9 Exhibit E – Resume of Joseph F. Rice, # 10 Declaration of Deepak Gupta, # 11 Exhibit A – Gupta Beck PLLC Firm Resume, # 12 Exhibit B – Resume of Brian Wolfman, # 13 Exhibit C – Resume of Jonathan Taylor, # 14 Exhibit D – |

| | | | |
|---|---|---|---|
| | | | Resume of Peter Conti–Brown, # <u>15</u> Declaration of Christopher S. Rizek, # <u>16</u> Exhibit A – Resume of Christopher S. Rizek, # <u>17</u> Text of Proposed Order)(Narwold, William) (Entered: 02/05/2015) |
| 02/17/2015 | <u>29</u> | | RESPONSE re <u>25</u> MOTION to Stay re <u>10</u> MOTION to Certify Class filed by BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 02/17/2015) |
| 02/19/2015 | <u>31</u> | | ORDER Granting <u>30</u> Motion for Extension of Time to File Response/Reply up to and including February 27, 2015; re <u>28</u> MOTION to Consolidate Cases *and Appoint Motley Rice LLC as Interim Class Counsel* ; Set/Reset Deadlines: Signed by Judge Royce C. Lamberth on 2/18/15. (mpt, ) (Entered: 02/27/2015) |
| 02/25/2015 | <u>30</u> | | Consent MOTION for Extension of Time to File Response/Reply as to <u>28</u> MOTION to Consolidate Cases *and Appoint Motley Rice LLC as Interim Class Counsel* by ADAM STEELE (Attachments: # <u>1</u> Text of Proposed Order)(Scherrer, Hilary) (Entered: 02/25/2015) |
| 03/09/2015 | <u>32</u> | | SUPPLEMENTAL MEMORANDUM to re <u>28</u> MOTION to Consolidate Cases *and Appoint Motley Rice LLC as Interim Class Counsel (Reply in Support)* filed by BRITTANY MONTROIS, ADAM STEELE. (Attachments: # <u>1</u> Declaration of Allen Buckley, # <u>2</u> Exhibit 1 – Handwritten notes of Allen Buckley)(Narwold, William) (Entered: 03/09/2015) |
| 03/09/2015 | <u>33</u> | | ERRATA *Exhibit A* by BRITTANY MONTROIS, ADAM STEELE <u>32</u> Supplemental Memorandum, filed by BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 03/09/2015) |
| 04/16/2015 | <u>34</u> | | ORDER Granting <u>25</u> Motion to Stay Briefing on Plaintiffs' Motion for Class Certification. ORDERED that briefing on plaintiffs' motion shall be stayed until such time as the Court has ruled on the pending motion for consolidation. Signed by Judge Royce C. Lamberth on 4/16/15. (mpt, ) (Entered: 04/17/2015) |
| 04/16/2015 | <u>35</u> | | ORDER Granting <u>22</u> Motion for Leave to Appear Pro Hac Vice for Meghan S.B. Oliver. Signed by Judge Royce C. Lamberth on 4/16/15. (mpt, ) (Entered: 04/17/2015) |
| 06/23/2015 | <u>36</u> | | RESPONSE *to Notice of Supplemental Authority filed in Dickson v. United States* filed by BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 06/23/2015) |
| 06/30/2015 | <u>37</u> | | MEMORANDUM AND OPINION, Signed by Judge Royce C. Lamberth on 6/30/2015. (hs) (Entered: 06/30/2015) |
| 06/30/2015 | <u>38</u> | | ORDER; granting <u>28</u> Plaintiffs' Motion to Consolidate Cases; finding as moot <u>7</u> Motion for Order Appointing Interim Class Counsel; denying <u>19</u> Motion for Scheduling Order, Signed by Judge Royce C. Lamberth on 6/30/2015. (hs) (Entered: 06/30/2015) |
| 07/15/2015 | <u>39</u> | | Joint MOTION for Scheduling Order *and Discovery Plan* by BRITTANY MONTROIS, ADAM STEELE (Attachments: # <u>1</u> Text of Proposed Order)(Narwold, William) (Entered: 07/15/2015) |
| 07/20/2015 | <u>40</u> | | ORDER; granting <u>39</u> Motion for Scheduling Order; Amended Complaint due by 8/7/2015, Joint Proposed Discovery, Class Certification and Dispositive Motion schedule due by 8/21/2015, Signed by Judge Royce C. Lamberth on 7/15/2015. |

| | | |
|---|---|---|
| | | (hs) (Entered: 07/20/2015) |
| 08/07/2015 | 41 | AMENDED COMPLAINT against UNITED STATES OF AMERICA filed by BRITTANY MONTROIS, ADAM STEELE, JOSEPH HENCHMAN.(Narwold, William) (Entered: 08/07/2015) |
| 08/21/2015 | 42 | Joint MOTION for Scheduling Order by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 08/21/2015) |
| 08/31/2015 | 43 | ORDER; granting 42 Motion for Scheduling Order; Fact Discovery due by 4/29/2016. Dispositive Motions due by 9/16/2016. Response to Dispositive Motions due by 11/4/2016. Reply to Dispositive Motions due by 12/2/2016. See Order for further details, Signed by Judge Royce C. Lamberth on 8/28/2015. (hs) (Entered: 08/31/2015) |
| 09/04/2015 | 44 | NOTICE of Appearance by Vassiliki Eliza Economides on behalf of UNITED STATES OF AMERICA (Economides, Vassiliki) (Entered: 09/04/2015) |
| 09/04/2015 | 45 | NOTICE *Of Compliance With Local Rule 7(n)* by UNITED STATES OF AMERICA (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Williamson, Christopher) (Entered: 09/04/2015) |
| 09/09/2015 | 46 | MOTION to Certify Class by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 09/09/2015) |
| 09/30/2015 | 47 | ORDER; denying 10 Plaintiffs' Motion for Class Certification, Signed by Judge Royce C. Lamberth on 9/29/2015. (hs) (Entered: 09/30/2015) |
| 10/06/2015 | 48 | ANSWER to 41 Amended Complaint by UNITED STATES OF AMERICA. Related document: 41 Amended Complaint filed by BRITTANY MONTROIS, ADAM STEELE, JOSEPH HENCHMAN.(Economides, Vassiliki) (Entered: 10/06/2015) |
| 11/13/2015 | 49 | Memorandum in opposition to re 46 MOTION to Certify Class filed by UNITED STATES OF AMERICA. (Attachments: # 1 Economides Declaration, # 2 Exhibits)(Williamson, Christopher) (Entered: 11/13/2015) |
| 11/13/2015 | 50 | Corrected Memorandum in opposition to re 46 MOTION to Certify Class *Filing Corrected Version of the United States' Opposition to Class Certification* by UNITED STATES OF AMERICA. (Attachments: # 1 Economides Decl., # 2 Exhibits)(Williamson, Christopher) Modified event title on 11/16/2015 (znmw). (Entered: 11/13/2015) |
| 12/16/2015 | 51 | Joint MOTION for Scheduling Order by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 12/16/2015) |
| 12/21/2015 | 52 | ORDER granting 51 Joint Motion to Modify Scheduling Order. Signed by Judge Royce C. Lamberth on December 21, 2015.(lcrcl3) (Entered: 12/21/2015) |
| 12/22/2015 | | Set/Reset Deadlines: Plaintiff's Reply due by 12/23/2015. (hs) (Entered: 12/22/2015) |
| 12/23/2015 | 53 | REPLY to opposition to motion re 46 MOTION to Certify Class filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. |

| | | | |
|---|---|---|---|
| | | | (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 12/23/2015) |
| 02/09/2016 | 54 | | ORDER granting in part and denying in part 46 Motion to Certify Class. Signed by Judge Royce C. Lamberth on February 9, 2016.(lcrcl3) (Entered: 02/09/2016) |
| 02/09/2016 | 55 | | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on February 9, 2016.(lcrcl3) (Entered: 02/09/2016) |
| 02/16/2016 | 56 | | MOTION for Reconsideration re 54 Order on Motion to Certify Class by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Narwold, William) (Entered: 02/16/2016) |
| 02/16/2016 | 57 | | MOTION for Scheduling Order by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Text of Proposed Order)(Narwold, William) (Entered: 02/16/2016) |
| 02/25/2016 | 58 | | ORDER granting 57 Motion to Modify Scheduling Order. Signed by Judge Royce C. Lamberth on February 25, 2016.(lcrcl3) (Entered: 02/25/2016) |
| 03/04/2016 | 59 | | RESPONSE re 56 MOTION for Reconsideration re 54 Order on Motion to Certify Class filed by UNITED STATES OF AMERICA. (Williamson, Christopher) (Entered: 03/04/2016) |
| 03/14/2016 | 60 | | REPLY to opposition to motion re 56 MOTION for Reconsideration re 54 Order on Motion to Certify Class filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 03/14/2016) |
| 03/15/2016 | 61 | | NOTICE OF SUPPLEMENTAL AUTHORITY by UNITED STATES OF AMERICA (Attachments: # 1 Desert Sunlight Opinion)(Williamson, Christopher) (Entered: 03/15/2016) |
| 03/22/2016 | 62 | | RESPONSE re 61 NOTICE OF SUPPLEMENTAL AUTHORITY filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 03/22/2016) |
| 08/08/2016 | 63 | | ORDER granting 56 Motion for Reconsideration. Signed by Judge Royce C. Lamberth on August 8, 2016.(lcrcl3) (Entered: 08/08/2016) |
| 08/08/2016 | 64 | | MEMORANDUM OPINION. Signed by Judge Royce C. Lamberth on August 8, 2016.(lcrcl3) (Entered: 08/08/2016) |
| 08/25/2016 | 65 | | Unopposed MOTION for Approval of Plan of Class Notice by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Exhibit Exhibit 1 – Email Notice, # 2 Exhibit Exhibit 2 – Postcard Notice, # 3 Exhibit Exhibit 3 – Website Notice, # 4 Text of Proposed Order Proposed Order)(Narwold, William) Modified on 8/25/2016 (td). (Entered: 08/25/2016) |
| 09/07/2016 | 66 | | MOTION for Partial Summary Judgment by UNITED STATES OF AMERICA (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Text of Proposed Order)(Williamson, Christopher) (Entered: 09/07/2016) |
| 09/07/2016 | 67 | | MOTION for Summary Judgment by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Statement of Facts, # 2 Text of Proposed Order, # 3 Exhibit 1 – Return Preparer Review, # 4 Exhibit 2 – Practice Before the IRS, # 5 Exhibit 3 – IRS Press Release, IR–1999–72, # 6 Exhibit 4 – Williams Statement, # 7 Exhibit 5 – TIGTA Report, # 8 Exhibit 6 – |

| | | |
|---|---|---|
| | | D.D.C. Campbell Decl., # 9 Exhibit 7 – RFA Responses, # 10 Exhibit 8 – Carney Article, # 11 Exhibit 9 – IRS Press Release, IR–2011–111, # 12 Exhibit 10 – Mot. to Suspend Inj., # 13 Exhibit 11 – Mot. for Stay, # 14 Exhibit 12 – Jt. Stipulation of Undisputed Facts, # 15 Exhibit 13 – PTIN Registrations Count, # 16 Exhibit 14 – Registration Fee User Cost Summary, # 17 Exhibit 15 – Accenture Contract, # 18 Exhibit 16 – D.C. Cir. Campbell Decl., # 19 Exhibit 17 – Total Numbers of PTIN Revoked by Suitability, # 20 Exhibit 18 – Appropriations Contingency Plan, # 21 Exhibit 19 – Press Release, IR–2014–75, # 22 Exhibit 20 – Annual Filing Season Program, # 23 Exhibit 21 – Interrog. Answers)(Narwold, William) (Entered: 09/07/2016) |
| 09/09/2016 | 68 | ORDER Approving Plan of Class Notice, GRANTING 65 Motion for Authorization of Plan of Class Notice (see Order for details). Signed by Judge Royce C. Lamberth on 9/08/2019. (ad) (Entered: 09/09/2016) |
| 10/07/2016 | 69 | Memorandum in opposition to re 67 MOTION for Summary Judgment filed by UNITED STATES OF AMERICA. (Attachments: # 1 Response to Plaintiffs' Statement of Facts)(Williamson, Christopher) (Entered: 10/07/2016) |
| 10/11/2016 | 70 | Memorandum in opposition to re 66 MOTION for Partial Summary Judgment filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Response to Defendant's Statement of Facts)(Narwold, William) (Entered: 10/11/2016) |
| 10/19/2016 | 71 | Unopposed MOTION for Scheduling Order *Clarification* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Exhibit A – Email Chain, # 2 Text of Proposed Order)(Narwold, William) (Entered: 10/19/2016) |
| 10/24/2016 | 72 | ORDER. The plaintiffs have requested from the Court 71 a Motion for Clarification of the Court's Modified Scheduling Order of February 25, 2016. Upon consideration of the foregoing, it is ORDERED that the Order Modifying Scheduling Order of February 25, 2016, be clarified as follows: Any reply briefs to dispositive motions on Count One shall be filed and served by 10/27/2016. Within Fifteen days of the Court's ruling on dispositive motions on Count One, the parties shall meet and confer and, based on the Court's ruling, shall propose a schedule for the balance of the case. IT IS SO ORDERED. Signed by Judge Royce C. Lamberth on 10/24/2016. (jth) (Entered: 10/25/2016) |
| 10/27/2016 | 73 | REPLY to opposition to motion re 66 MOTION for Partial Summary Judgment filed by UNITED STATES OF AMERICA. (Williamson, Christopher) (Entered: 10/27/2016) |
| 10/27/2016 | 74 | REPLY to opposition to motion re 67 MOTION for Summary Judgment filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 10/27/2016) |
| 01/17/2017 | 75 | Unopposed MOTION For Acceptance of Untimely Opt–Out Requests by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Narwold, William) (Entered: 01/17/2017) |
| 01/26/2017 | 76 | ORDER granting 75 Motion. It is hereby ORDERED that the Eleven individuals listed by their claims administration identification numbers in Exhibit A to Plaintiffs' Unopposed Motion for Acceptance of Untimely Opt–Out Requests |

| | | | |
|---|---|---|---|
| | | | are excluded from the Class. Signed by Judge Royce C. Lamberth on 1/25/17. (zlsj) (Entered: 01/26/2017) |
| 01/31/2017 | 77 | | STATUS REPORT *Regarding Notice to the Class* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1)(Narwold, William) (Entered: 01/31/2017) |
| 06/01/2017 | 78 | 15 | MEMORANDUM AND OPINION re United States' Motion 66 for Partial Summary Judgment and Plaintiff's Motion 67 for Summary Judgment. Signed by Judge Royce C. Lamberth on 6/1/17. (lsj) (Entered: 06/01/2017) |
| 06/01/2017 | 79 | 37 | ORDER granting in part and denying in part 66 Motion for Partial Summary Judgment and granting in part and denying in part 67 Motion for Summary Judgment. It is further ORDERED that counsel for the parties shall meet and confer regarding a schedule for subsequent proceedings in this case, and submit by 7/1/2017 a proposal for addressing any remaining issues in this case, including a plan for determining the amount of money owed to each class member and proposing a form of final judgment. See Order for full details. Signed by Judge Royce C. Lamberth on 6/1/17. (lsj) (Entered: 06/01/2017) |
| 06/30/2017 | 80 | | Joint STATUS REPORT by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Attachments: # 1 Exhibit 1 – Proposed Final Judgment, # 2 Exhibit 2 – Proposed Scheduling Order)(Narwold, William) (Entered: 06/30/2017) |
| 07/05/2017 | 81 | | NOTICE of Change of Address by Deepak Gupta (Gupta, Deepak) (Entered: 07/05/2017) |
| 07/10/2017 | 82 | 39 | FINAL JUDGMENT AND PERMANENT INJUNCTION. SEE ORDER FOR FULL DETAILS. Signed by Judge Royce C. Lamberth on 7/7/17. (lsj) (Entered: 07/10/2017) |
| 07/10/2017 | 83 | | SCHEDULING ORDER – SEE ORDER FOR FULL DETAILS. Signed by Judge Royce C. Lamberth on 7/7/17. (lsj) (Entered: 07/10/2017) |
| 07/24/2017 | 84 | | MOTION to Stay re 82 Permanent Injunction, Order by UNITED STATES OF AMERICA (Attachments: # 1 Memorandum in Support, # 2 Campbell Declaration, # 3 Zottola Declaration, # 4 Text of Proposed Order)(Williamson, Christopher) (Entered: 07/24/2017) |
| 08/07/2017 | 85 | | Memorandum in opposition to re 84 MOTION to Stay re 82 Permanent Injunction, Order filed by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE. (Narwold, William) (Entered: 08/07/2017) |
| 08/14/2017 | 86 | | REPLY to opposition to motion re 84 MOTION to Stay re 82 Permanent Injunction, Order filed by UNITED STATES OF AMERICA. (Williamson, Christopher) (Entered: 08/14/2017) |
| 08/16/2017 | 87 | | MOTION for Leave to File *a Sur–Reply* by JOSEPH HENCHMAN, BRITTANY MONTROIS, ADAM STEELE (Attachments: # 1 Plaintiffs' Sur–Reply in Opposition to Defendant's Motion for a Stay, # 2 Proposed Order)(Narwold, William) (Entered: 08/16/2017) |
| 08/23/2017 | 88 | | NOTICE of Change of Address by Nathan David Finch (Finch, Nathan) (Entered: 08/23/2017) |

| 08/24/2017 | 89 | | NOTICE of Change of Address by Elizabeth S. Smith (Smith, Elizabeth) (Entered: 08/24/2017) |
| 09/06/2017 | 90 | 13 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 79 Order on Motion for Partial Summary Judgment,,, Order on Motion for Summary Judgment,,, Set/Reset Deadlines,, 78 Memorandum & Opinion, 82 Permanent Injunction, Order by UNITED STATES OF AMERICA. Fee Status: No Fee Paid. Parties have been notified. (Williamson, Christopher) (Entered: 09/06/2017) |

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DISTRICT OF COLUMBIA

ADAM STEELE, et al.,                    )
                                        )
          Plaintiff,                    )        Case No. 1:14-cv-1523
                                        )
     v.                                 )
                                        )
UNITED STATES OF AMERICA,               )
                                        )
          Defendant.                    )
_____)

**NOTICE OF APPEAL**

Notice is hereby given that defendant, the United States of America, hereby

appeals to the United States Court of Appeals for the District of Columbia Circuit from

the final judgment and permanent injunction entered in this action on July 10, 2017

(Docket No. 82) and the opinion and order granting summary judgment in favor of

plaintiffs entered in this action on June 1, 2017 (Docket Nos. 78, 79).

Dated: September 6, 2017              Respectfully submitted,

                                     DAVID A. HUBBERT
                                     Acting Assistant Attorney General,
                                     Tax Division

                                     */s/ Christopher J. Williamson*
                                     CHRISTOPHER J. WILLIAMSON
                                     VASSILIKI E. ECONOMIDES
                                     JOSEPH E. HUNSADER
                                     United States Department of Justice
OF COUNSEL                           Trial Attorneys, Tax Division
                                     Ben Franklin Station, Post Office Box 227
CHANNING D. PHILLIPS                 Washington, D.C.  20044
United States Attorney               Tel/Fax:  (202) 307-2250/(202) 514-6866
                                     christopher.j.williamson@usdoj.gov

1

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing NOTICE OF APPEAL was filed with the

Court's ECF system on September 6, 2017, which system serves electronically all filed

documents on the same day of filing to all counsel of record including upon:

Allen Buckley
The Law Office of Allen Buckley LLC
2802 Paces Ferry Road
Suite 100-C
Atlanta, GA 30339

William H. Narwold
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103

Deepak Gupta
Jonathan E. Taylor
Peter Conti-Brown
GUPTA WESSLER PLLC
1735 20th Street, NW
Washington, DC 20009

Christopher S. Rizek
Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005

*/s/ Christopher J. Williamson*
CHRISTOPHER J. WILLIAMSON
Trial Attorney

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADAM STEELE, et al., | ) |
| | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **Case No: 14-cv-1523-RCL** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiffs bring this class action against the United States to challenge regulations promulgated by the Treasury Department and the Internal Revenue Service requiring tax return preparers to obtain and pay fees for preparer tax identification numbers (PTINs).  Both parties have moved for partial summary judgment on the first issue raised in plaintiffs' lawsuit: whether Treasury and the IRS have the authority to require that all tax return preparers obtain and pay for a PTIN.[1]  For the reasons stated below, the Court finds that although the IRS has the authority to require the use of PTINs, it does not have the authority to charge fees for issuing PTINs.  The Court will grant in part and deny in part both parties' summary judgment motions.

### II.   BACKGROUND

This case revolves around a group of 2010–2011 regulations promulgated by the Treasury Department and the IRS regarding tax return preparers.  As explained fully below, the regulations imposed certain requirements for becoming a tax return preparer, including obtaining a specific

---

[1] The Court makes no determination regarding plaintiffs' second claim: that the fees exacted were excessive.

1

PTIN and paying a user fee for obtaining such PTIN.   Plaintiffs argue that the government lacks legal authority to require PTINs and PTIN fees, and alternatively, that the fee imposed is excessive and impermissible.   They seek a declaratory judgment that Treasury and the IRS lack legal authority to charge these fees or that the fees charged are excessive, and for the return or refund of all fees previously collected or for the return and refund of the excessive fees.   In 2016, this Court certified the proposed class of "all individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek."   *See Steele v. United States*, 159 F. Supp. 3d 73, 88 (D.D.C. 2016); *Steele v. United States*, 200 F. Supp. 3d 217, 227 (D.D.C. 2016).

### A.      Statutory and Regulatory Framework

Each year, every American is required to submit a tax return to the IRS.   Given the complexity of the tax code, it is unsurprising that many people hire others—tax return preparers— to prepare their returns for them.   Some tax return preparers have credentials, such as CPAs and attorneys, but others are known as uncredentialed tax return preparers.   Before 2010, anyone could file a tax return on behalf of someone else, credentialed or not.   In 2010, however, the IRS, attempting to regulate both credentialed and uncredentialed tax return preparers, promulgated new regulations.   The regulations established a new "registered tax return preparer" designation, requiring individuals other than attorneys and CPAs to: "(1) [p]ass a one-time competency exam, (2) pass a suitability check, and (3) obtain a PTIN (and pay the amount provided in the PTIN User Fee regulations)."   Regulations Governing Practice Before the Internal Revenue Service, 76 Fed. Reg. 32286, 32287 (June 11, 2011); 26 C.F.R. § 301.7701-15 (defining "tax return preparer"); 31 C.F.R. § 10.4(c) (describing the requirements to become a registered tax return preparer); 31 C.F.R. § 10.3(f) (stating that registered tax return preparers may practice before the IRS); 31 C.F.R.

§ 10.5(b) (stating that fees may be charged for becoming a registered tax return preparer); 26 C.F.R. § 1.6109-2(d) ("Beginning after December 31, 2010, all tax return preparers must have a preparer tax identification number or other prescribed identifying number that was applied for and received at the time and in the manner, including the payment of a user fee, as may be prescribed by the Internal Revenue Service.").   The regulations also imposed renewal and continuing education requirements.  Regulations Governing Practice Before the Internal Revenue Service, 76 Fed. Reg. at 32287; 31 C.F.R. § 10.6.   As statutory authority for these regulations, the IRS relied on a provision of the U.S. Code which states that the Secretary of the Treasury may "(1) regulate the practice of representatives of persons before the Department of the Treasury; and (2) before admitting a representative to practice, require that the representative demonstrate—(A) good character; (B) good reputation; (C) necessary qualifications to enable the representative to provide to persons valuable service; and (D) competency to advise and assist persons in presenting their cases."  31 U.S.C. § 330(a).

In support of its conclusion that such regulations were necessary, the IRS pointed to the prevalence of the use of tax return preparers but the lack of consistent oversight, and specifically found that

> [t]he tax system is best served by tax return preparers who are ethical, provide good service, and are qualified. . . .  As such, the IRS recognizes the need to apply a uniform set of rules to offer taxpayers some assurance that their tax returns are prepared completely and accurately.  Increasing the completeness and accuracy of returns would necessarily lead to increased compliance with tax obligations by taxpayers.

Regulations Governing Practice Before the Internal Revenue Service, 76 Fed. Reg. at 32294. Thus, "[t]he primary benefit anticipated from these regulations is that they will improve the accuracy, completeness, and timeliness of tax returns prepared by tax return preparers."  *Id.*  The IRS later specifically identified two overarching objectives of the new regulations: "The first overarching objective is to provide some assurance to taxpayers that a tax return was prepared by

3

an individual who has passed a minimum competency examination to practice before the IRS as a tax return preparer, has undergone certain suitability checks, and is subject to enforceable rules of practice.  The second overarching objective is to further the interests of tax administration by improving the accuracy of tax returns and claims for refund and by increasing overall tax compliance."  Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. 60309, 60310 (Sept. 30, 2010).

A statutory provision—in effect prior to the new regulations—requires that "[a]ny return or claim for refund prepared by a tax return preparer shall bear such identifying number for securing proper identification of such preparer, his employer, or both, as may be prescribed."  26 U.S.C. § 6109(a)(4).  The statute explains that an individual's social security number "shall, except as shall otherwise be specified under regulations of the Secretary, be used as the identifying number."  *Id.* § 6109(d).  The regulations, however, required, for the first time, that "tax return preparers must obtain and exclusively use the [PTIN] in forms, instructions, or other guidance, rather than a social security number (SSN), as the identifying number to be included with the tax return preparer's signature on a tax return or claim for refund."  Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. at 60309; 26 C.F.R. § 1.6109-2(d).  As justification for the requirement that preparers must obtain and use a PTIN, the IRS repeatedly cited to the need to identify individuals involved in preparing a tax return for others so as to aid their ability to oversee such individuals "and to administer requirements intended to ensure that tax return preparers are competent, trained, and conform to rules of practice."  Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. at 60310, 60313.  The IRS further explained the need for the exclusive use of PTINs, as opposed to both PTINs and social security numbers, arguing that "[m]andating a single type of identifying number for all tax return preparers and assigning a

prescribed identifying number to registered tax return preparers is critical to effective oversight." *Id.* at 60313. Specifically, "[e]stablishing a single, prescribed identifying number for tax return preparers will enable the IRS to accurately identify tax return preparers, match preparers with the tax returns and claims for refund they prepare, and better administer the tax laws with respect to tax return preparers and their clients." *Id.* at 60314. The IRS also briefly mentioned that the regulations requiring the use of a PTINs would "help maintain the confidentiality of SSNs." *Id.* at 60309.

The regulations also imposed a user fee requirement for obtaining a PTIN. *See* User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 60316 (Sept. 30, 2010); 26 C.F.R. § 300.13. As authority for requiring these fees, the IRS relied on the Independent Offices Appropriations Act of 1952 ("IOAA"). *See* User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. at 60317. The IOAA provides that agencies "may prescribe regulations establishing the charge for a service or thing of value provided by the agency." 31 U.S.C. § 9701(b). The IRS stated that a PTIN is a "service or thing of value" because without a PTIN "a tax return preparer could not receive compensation for preparing all or substantially all of a federal tax return or claim for refund," and "[b]ecause only attorneys, certified public accountants, enrolled agents, and registered tax return preparers are eligible to obtain a PTIN, only a subset of the general public is entitled to a PTIN and the special benefit of receiving compensation for the preparation of a return that it confers." User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. at 60317.

**B.**     **Prior Caselaw Interpreting the Tax Return Preparer Regulations**

In 2014, the D.C. Circuit addressed the regulations regarding the exam and education requirements, asking "whether the IRS's statutory authority to 'regulate the practice of

5

representatives of persons before the Department of the Treasury' [under 31 U.S.C. § 330] encompasses authority to regulate tax-return preparers." *Loving v. I.R.S.*, 742 F.3d 1013, 1015 (D.C. Cir. 2014).  Considering the meaning of the terms "representatives" and "practice . . . before the Department of the Treasury," the history of Section 330, the broader statutory framework, the nature and scope of authority being claimed by the IRS, and the IRS's past approach to the statute, the Circuit found that the IRS's interpretation of Section 330 was unreasonable and failed under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  *Id.* at 1016–22.  The court concluded that "the IRS's statutory authority under Section 330 cannot be stretched so broadly as to encompass authority to regulate tax-return preparers," and invalidated the regulations requiring competency testing and continuing education.  *Id.* at 1015.  Thus, after *Loving*, the only part of the new regulatory scheme that remains is the PTIN requirement and the attendant PTIN fee requirement.

The only other cases regarding these regulations that have been litigated have taken place in the Northern District of Georgia (and subsequently the Eleventh Circuit), and all were decided prior to the D.C. Circuit's *Loving* opinion.  First, in *Brannen v. United States*, plaintiffs sought "to prevent charges of user fees under 31 U.S.C. § 9701 for the right to receive an identification number necessary to file tax returns on behalf of others for compensation and to recover amounts paid as such fees."  *Brannen v. United States*, No. 4:11-CV-0135-HLM, 2011 WL 8245026, at *1 (N.D. Ga. Aug. 26, 2011).  After concluding that the authority to charge a user fee for a PTIN stemmed from 31 U.S.C. § 9701, and finding that the complaint failed to contain allegations to state a claim that the amount of the fee was inappropriate under § 9701, the *Brannen* court rejected the argument that "the imposition of the PTIN fee is an unauthorized attempt on the part of the Secretary of the Treasury to license tax return preparers."  *Id.* at *5.  It found that "Congress

6

specifically authorized the Secretary of the Treasury to create regulations requiring tax return preparers to identify themselves, by means of identifying numbers, on tax returns and refund claims that they prepare" in 26 U.S.C. § 6109 and therefore the Secretary of the Treasury did not exceed his authority by issuing regulations requiring the use of PTINs. *Id.* It then found that the PTIN fee requirement was authorized by Section 9701 because PTINs provide a benefit to tax return preparers: "The provision of a PTIN confers a special benefit on tax return preparers, who otherwise would not be permitted to prepare tax returns and refund claims on behalf of others in exchange for compensation." *Id.* at *6.

The *Brannen* decision was affirmed on appeal. *See Brannen v. United States*, 682 F.3d 1316 (11th Cir. 2012). The Eleventh Circuit held that the PTIN user fees are permissible under Section 9701:

> [A] tax return preparer cannot prepare tax returns for others for compensation without having the required identifying number. And because § 6109(a)(4) expressly authorizes the Secretary to assign such numbers, a person cannot prepare tax returns for another for compensation unless that person obtains from the Secretary the required identifying number. For this reason, when the Secretary assigns the identifying number (the preparer tax identification number or "PTIN"), the Secretary is conferring a special benefit upon the recipient, i.e., the privilege of preparing tax returns for others for compensation.

*Id.* at 1319.

Approximately eighteen months after the *Brannen* decision, and after the *Loving* district court decision, the Northern District of Georgia considered "whether 26 U.S.C. § 6109(a)(4) permits the United States Treasury Department to issue regulations that assess user fees as well as annual renewal fees associated with PTIN assigned to those who prepare tax forms for compensation" and "whether the annual renewal fee assessed for renewing one's PTIN number is either arbitrary and capricious or excessive." *Buckley v. United States*, No. 1:13-CV-1701, 2013 WL 7121182, at *1 (N.D. Ga. Dec. 4, 2013). Agreeing with *Brannen*, the *Buckley* court found that the imposition of PTIN user fees was authorized and that the fee confers a special benefit on

7

tax return preparers.  *Id.* at *1–2.  The court then found *Loving*—which at the time was still a district court decision—inapplicable because it "reviewed the competency testing and continuing education requirements for return preparers," which were not at issue in *Buckley*.  *Id.* at *2.  It concluded that "the *Loving* case specifically held that Congress authorized the PTIN scheme via a different statutory authority than the testing and competency requirements for registered tax return preparers, which were at issue in the *Loving* case."  *Id.*  Following the D.C. Circuit's *Loving* decision, there have been no further developments in the caselaw specifically analyzing the authority to require PTINs and charge fees for them.

## III.   LEGAL STANDARDS

Plaintiffs first argue that the PTIN requirements—that tax return preparers obtain and pay fees for PTINS—are arbitrary and capricious under the Administrative Procedure Act.  They alternatively argue that even if the fee requirements are not arbitrary and capricious, they are unlawful under the IOAA because Congress did not grant the IRS licensing authority over tax return preparers, so the fees do not confer a "service or thing of value."  After summarizing the general legal standards for summary judgment, the Court will address the standards for review of an agency action and those applicable to the IOAA.

### A.   Summary Judgment

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To show that a dispute is "genuine" and defeat summary judgment, the nonmoving party must present evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Facts are material when they might affect the outcome of the suit.  *Id.*   The parties here have agreed that the first claim—whether the

government had the legal authority to charge PTIN fees—may be decided as a matter of law at the summary judgment stage.

### B.    Review of an Agency Action

The APA permits the judicial review of an agency action unless a statute precludes judicial review or an "agency action is committed to agency discretion by law." 5 U.S.C. § 701. Although some agency actions are therefore unreviewable, there is a strong presumption of judicial review for agency actions, and the exemption to judicial review is "very narrow." *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). The exemption applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Pres. Overton Park, Inc.*, 401 U.S. at 410. In other words, "a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Labs*, 387 U.S. at 141.

If a court may review an agency action, more than one standard of review exists. First, *Chevron* review—the standards promulgated in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)—is appropriate to determine "whether an agency has authority to act under a statute." *Arent v. Shalala*, 70 F.3d 610, 615 (D.C. Cir. 1995). *Chevron* review employs a two step analysis:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

9

*Chevron*, 467 U.S. at 842–43.   "The paradigmatic Chevron case concerns '[t]he power of an administrative agency to administer a congressionally created . . .  program.'"  *Arent*, 70 F.3d at 615 (quoting *Chevron*, 467 U.S. at 843).   As described by the D.C. Circuit, "a reviewing court's inquiry under *Chevron* is rooted in statutory analysis and is focused on discerning the boundaries of Congress' delegation of authority to the agency; and as long as the agency stays within that delegation, it is free to make policy choices in interpreting the statute, and such interpretations are entitled to deference."  *Id.*

Alternatively,  agency  actions  may  be  held  unlawful  because  they  are  arbitrary  and capricious.  *See* 5 U.S.C. § 706(2)(A).  When "a statute plainly authorizes an agency authority to act and '[t]he only issue . . . is whether the [agency]'s discharge of that authority was reasonable,' the  case  'falls  within  the  province  of  traditional  arbitrary  and  capricious  review.'"  *Sociedad Anonima Vina Santa Rita v. U.S. Dep't of Treasury*, 193 F. Supp. 2d 6, 15 (D.D.C. 2001) (quoting *Arent*, 70 F.3d at 616).   The  standards  for  arbitrary  and  capricious  review  were  set  out  in  the Supreme Court's *State Farm* decision:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency.   Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."  In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."   Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  The reviewing court should not attempt itself to make up for such deficiencies: "We may not supply a reasoned basis for the agency's action that the agency itself has not given."  We will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citations omitted).   Keeping with the rule that agencies must explain their decisions,

courts "do not defer to the agency's conclusory or unsupported suppositions." *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004). Courts must "set aside agency regulations which, though well within the agencies' scope of authority, are not supported by the reasons that the agencies adduce." *Allentown Mack Sales & Serv., Inc. v. N.L.R.B.*, 522 U.S. 359, 374 (1998).

Although agencies may change existing policies, to survive arbitrary and capricious review they must "provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). Although it "'need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate,' . . . the agency must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Id.* at 2125–26. Unexplained inconsistencies in agency position are arbitrary and capricious and therefore unlawful. *Id.* at 2126.

*Chevron* review and arbitrary and capricious review under *State Farm* "overlap at the margins." *Arent*, 70 F.3d at 615, n.6 ("[W]hether an agency action is 'manifestly contrary to the statute' is important both under *Chevron* and under *State Farm*."). For example, "a finding that an agency has acted arbitrarily or capriciously in discharging its statutory duties could be phrased as a conclusion that the agency's interpretation of the controlling statute is unreasonable." *Sociedad Anonima Vina Santa Rita*, 193 F. Supp. 2d at 16. In such cases, a decision that an agency action is arbitrary and capricious is "functionally equivalent" to a determination that the action is unreasonable under *Chevron*. *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996).

11

### C.      "Service or Thing of Value" Under the IOAA

The IOAA permits agencies to charge user fees for "a service or thing of value provided by the agency."  31 U.S.C. § 9701(b).  The Supreme Court has read the language of the Act narrowly in order to distinguish between fees and taxes, the latter of which are the province of Congress.  *See Nat'l Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 340–41 (1974).  Fees are "incident to a voluntary act" and connote a benefit.  *Id.*  Agencies may impose fees for bestowing special benefits on individuals not shared by the general public.  *Id.*; *Fed. Power Comm'n v. New England Power Co.*, 415 U.S. 345, 350–51 (1974); *Engine Mfrs. Ass'n v. E.P.A.*, 20 F.3d 1177, 1180 (D.C. Cir. 1994).  There must be "a sufficient nexus between the agency service for which the fee is charged and the individuals who are assessed."  *Seafarers Int'l Union of N. Am. v. U.S. Coast Guard*, 81 F.3d 179, 183 (D.C. Cir. 1996).  Agencies must "make clear the basis for a fee it assesses under the IOAA."  *Nat'l Cable Television Ass'n, Inc. v. F.C.C.*, 554 F.2d 1094, 1100 (D.C. Cir. 1976)

## IV.    ANALYSIS

The Court first finds that the agency action here is reviewable.  The statute enacted by Congress specifies that tax return preparers shall use their social security numbers to identify themselves on prepared returns unless the Secretary of the Treasury specifies otherwise.  *See* 26 U.S.C. § 6109.  Nowhere does the government identify the clear and convincing evidence showing that Congress sought to specifically commit discretion to the agency to determine whether a different number should be used so as to completely preclude judicial review.   *Cf. Abbott Labs*, 387 U.S. at 141.  Therefore the Court will review the agency action here and will determine whether the agency had the authority to require the use of a PTIN and to charge PTIN user fees.

### A.   The Agency is Authorized to Require the Exclusive Use of PTINs

Although the parties disagree about the proper standard under which to judge the IRS's action, the Court first finds that the IRS was authorized to issue regulations requiring the exclusive use of PTINs under both *Chevron* and *State Farm*.  First, plaintiffs' arguments fail step one of *Chevron*.  *Chevron* states that "if Congress has directly spoken to the precise question at issue . . . that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842.  The statute specifically says that the Secretary has the authority to specify the required identifying number to be used on prepared tax returns.  26 U.S.C. § 6109(d) ("The social security account number issued to an individual for purposes of section 205(c)(2)(A) of the Social Security Act shall, *except as shall otherwise be specified under regulations of the Secretary*, be used as the identifying number for such individual for purposes of this title." (emphasis added)).  The Court must give effect to the unambiguous intent of Congress that the Secretary may require the use of such a number.

In addition, the decision to require the use of PTINs was not arbitrary or capricious.  The agency offered several justifications for the regulation requiring the exclusive use of PTINs.  First, the IRS explained the need to identify tax return preparers in order to maintain oversight, and stated that the use of a single identifying number was critical to such effective oversight.  *See Furnishing Identifying Number of Tax Return Preparer*, 75 Fed. Reg. at 60310, 60313.  The IRS stated that the use of a single number would "enable the IRS to accurately identify tax return preparers, match preparers with the tax returns and claims for refund they prepare, and better administer the tax laws with respect to tax return preparers and their clients."  *Id.* at 60314.  The IRS has articulated satisfactory explanations for its actions.  *See State Farm*, 463 U.S. at 43.  There is a rational connection between the regulations—requiring the use of PTINs—and the stated

rationales—effective administration and oversight.  *See id.*  And, there is no indication that the IRS entirely failed to consider an important aspect of the problem, or that its rationales ran counter to the evidence before it, or that its reasoning is completely implausible.  *See id.*  In addition, this was not an unexplained change in policy.  *See Encino Motorcars*, 136 S. Ct. at 2126.  The aforementioned reasons for the change in policy were identified by the IRS.

Other courts to consider this issue also have found that the PTIN requirement is authorized by law.  *See Brannen*, 2011 WL 8245026, at *5 ("Congress specifically authorized the Secretary of the Treasury to create regulations requiring tax return preparers to identify themselves, by means of identifying numbers, on tax returns and refund claims that they prepare."); *Brannen*, 682 F.3d at 1319 ("§ 6109(a)(4) expressly authorizes the Secretary to assign such numbers"); *Buckley*, 2013 WL 7121182, at *1–2.[2]

For these reasons, the Court concludes that the IRS was authorized to issue the regulations requiring tax return preparers to obtain PTINs.

## B.    The IRS May Not Impose User Fees for PTINs

Having found that the IRS has the authority to require the exclusive use of PTINs, the Court now turns to the question of whether the IRS is authorized to charge user fees for PTINs.  Plaintiffs argue that after the D.C. Circuit struck down the eligibility criteria for becoming a registered tax return preparer in *Loving*, it removed the IRS's stated rationale for requiring PTIN fees—to regulate tax return preparers.  Given that the IRS now no longer has any valid justification for the fees, plaintiffs argue that they are arbitrary and capricious, and therefore unlawful under the APA.  Alternatively, plaintiffs argue that because Congress did not grant the IRS licensing authority—as found by *Loving*—tax return preparers receive no special benefit in exchange for the fees,

---

[2] As explained in the next section, however, this Court disagrees with these decisions to the extent that they conclude that the IRS may charge fees for PTINs under the IOAA.

rendering them unlawful under the IOAA.  In other words, plaintiffs argue that the IRS originally created a licensing scheme that would limit tax return preparers to those certain people who could meet eligibility criteria.  But, because *Loving* found that Congress did not authorize a license requirement for tax return preparers, there are now no restrictions on who may obtain a PTIN and therefore it is no longer true that only a specific set of people may receive PTINs and the "special benefit" of being able to prepare tax returns for compensation.  The only beneficiary of the PTIN system is therefore the IRS.

The government argues that the PTIN and user fee regulations are separate from the regulations imposing eligibility requirements on registered tax return preparers.  It argues that the PTIN requirements are not arbitrary and capricious because they make it easier to identify tax return preparers and the returns they prepare, which is a critical step in tax administration, and because PTINs protect social security numbers from disclosure.  In support of its position that it may charge fees for PTINs, the IRS states that PTINs are a service or thing of value because the ability to prepare tax returns for compensation is a special benefit provided only to those people who obtain PTINs, who are distinct from the general public.  Individuals without PTINs cannot prepare tax returns for compensation.   In addition, the IRS argues that PTINs protect the confidentiality of tax return preparers' social security numbers, and that protection itself is a service or thing of value.

The Court finds that PTINs do not pass muster as a "service or thing of value" under the government's rationale.  First, the argument that the registered tax return preparer regulations regarding testing and eligibility requirements and the PTIN regulations are completely separate and distinct is a stretch at best.  While it is true that they were issued separately and at different times, they are clearly interrelated.   The RTRP regulations specifically mention the PTIN

requirements and state that PTINs are part of the eligibility requirements for becoming a registered tax return preparer. *See* Regulations Governing Practice Before the Internal Revenue Service, 76 Fed. Reg. at 32287–89; 26 C.F.R. § 1.6109-2(d) ("[T]o obtain a [PTIN] or other prescribed identifying number, a tax return preparer must be an attorney, certified public accountant, enrolled agent, or registered tax return preparer authorized to practice before the Internal Revenue Service under 31 U.S.C. 330 and the regulations thereunder."). Furthermore, the overarching objectives named in the PTIN regulations indicate a connection to the RTRP regulations. They were 1) "to provide some assurance to taxpayers that a tax return was prepared by an individual who has passed a minimum competency examination to practice before the IRS as a tax return preparer, has undergone certain suitability checks, and is subject to enforceable rules of practice;" and 2) "to further the interests of tax administration by improving the accuracy of tax returns and claims for refund and by increasing overall tax compliance." Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. at 60310. The first objective clearly relates to the RTRP regulations regarding eligibility requirements for tax return preparers. The second objective is less explicit, but it does not stretch common sense to conclude that the accuracy of tax returns would be improved by requiring tax return preparers to meet certain education requirements.

Having concluded the inter-connectedness of the regulations, the government's argument begins to break down. The *Loving* court concluded that the IRS does not have the authority to regulate tax return preparers. *Loving*, 742 F.3d at 1015. It cannot impose a licensing regime with eligibility requirements on such people as it tried to do in the regulations at issue. Although the IRS may require the use of PTINs, it may not charge fees for PTINs because this would be equivalent to imposing a regulatory licensing scheme and the IRS does not have such regulatory authority. Granting the ability to prepare tax return for others for compensation—the IRS's

16

proposed special benefit—is functionally equivalent to granting the ability to practice before the IRS.  The D.C. Circuit has already held, however, that the IRS does not have the authority to regulate the practice of tax return preparers.  *See id.*  In coming to its conclusion, the Circuit considered the statutory language that the Secretary may "regulate the practice of representatives of persons before the Department of the Treasury."  *Id.* at 1017–18 (quoting 31 U.S.C. § 330(a)(1)).  The court found that the IRS improperly expanded the definition of "practice . . . before the Department of Treasury" to include "preparing and signing tax returns" because to "practice before" an agency "ordinarily refers to practice during an investigation, adversarial hearing, or other adjudicative proceeding."  *Id.* at 1018.  The *Loving* court concluded that "[t]hat is quite different from the process of filing a tax return" in which "the tax-return preparer is not invited to present any arguments or advocacy in support of the taxpayer's position . . . [and] the IRS conducts its own ex parte, non-adversarial assessment of the taxpayer's liability."  *Id.*  The ability to prepare tax returns is the "practice" identified by the IRS in *Loving*, but the court found that such an activity does not qualify as practicing before the IRS.   Therefore, it appears to this Court that the IRS is attempting to grant a benefit that it is not allowed to grant, and charge fees for granting such a benefit.

Over forty years ago, the Supreme Court interpreted the predecessor to the current form of the IOAA, which stated that that an agency could charge fees for "any work, service . . . benefit, . . . license, . . . or similar thing of value" provided by the agency.  *Nat'l Cable Television Ass'n, Inc.*, 415 U.S. at 337.  In listing examples of activities for which an agency could charge a fee, the Supreme Court noted "a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station," *i.e.*, permits and occupational licenses.  *Id.* at 340.  Subsequently, the D.C. Circuit cases finding that a fee was permissible under the IOAA

generally concern valid regulatory schemes, as opposed to the situation here where the regulatory scheme was struck down. In *Elec. Indus. Ass'n, Consumer Elecs. Grp. v. F.C.C.*, common carriers and equipment manufacturers *regulated by the FCC* challenged the validity of fees for "(1) common carrier application, filing, and grant fees; (2) common carrier tariff filing fees; and (3) equipment type approval, type acceptance and certification fees." 554 F.2d 1109, 1111 (D.C. Cir. 1976). The court found that fees could be assessed for tariff filings and equipment testing and approval because such services created the "independent private benefit[s]" of "provid[ing] a means for the carrier to obtain its revenues and to regulate subscriber use of its facilities" and "assist[ing] the manufacturer in marketing a quality product and giv[ing] him credibility in the market place." *Id.* at 1015–16. The other fees were "justified by the statutory requirement of a permit for construction of new or extended lines or the discontinuance of service by a common carrier, and by the requirement of an operating license and station construction permit." *Id.* at 1016.

In *Engine Mfrs. Ass'n v. E.P.A.*, the Engine Manufacturers Association ("EMA") challenged an EPA rule assessing fees for the EPA's "Motor Vehicle and Engine Compliance Program under which it test[ed] vehicles and engines for compliance with the emissions standards of the Clean Air." 20 F.3d at 1178. Each year, vehicle manufacturers were required to obtain certificates of compliance to sell their equipment through EPA's compliance program which included a comprehensive testing regime. *Id.* at 1179. The testing had three stages: 1) manufacturer testing; 2) selective enforcement audits by EPA; and 3) in-use testing. *Id.* The EMA did not dispute that the compliance certificate conferred a special benefit, but argued that selective enforcement audits and in-use compliance testing were means of enforcing emissions standards and the benefits of such testing accrued exclusively to the public. *Id.* at 1180. The court found

18

that "[s]elective enforcement audits and in-use compliance testing are integral parts of the compliance regime . . . [and] passing each successive compliance test is necessary in order to keep its product certified for sale and to avoid the cost of a recall." *Id.* The court therefore concluded that "the manufacturer obtains a benefit from the entire Compliance Program, not just from the annual certification." *Id.*

Finally, in *Seafarers Int'l Union of N. Am. v. U.S. Coast Guard*, the court considered fees charged for issuing "merchant mariner licenses, certificates of registry, or merchant mariner documentation . . . to qualified individuals seeking to work aboard a United States merchant marine vessel," which were documents that "serve[d] as occupational licenses." 81 F.3d at 181. The court, finding that "a person who is lawfully required to obtain an occupational license may be charged a fee to reimburse the agency for the cost of processing the license," concluded that an "agency may exact a fee for administering any procedures reasonably necessary to ensure that [job-related eligibility criteria necessary to obtain a license] have been met." *Id.* at 185. The court therefore concluded that because Congress laid out specific eligibility criteria for such licenses which "permit[ted] the Coast Guard to take reasonable steps to ensure that the particular requirements have been met," the Coast Guard could charge fees "to recover the expense of whatever reasonable procedure is employed by the Coast Guard to comply with the statute." *Id.* at 185–86.

The Court acknowledges that courts in the Eleventh Circuit have found that the PTIN fees are permissible under the IOAA. *See Brannen*, 682 F.3d at 1319; *Brannen*, 2011 WL 8245026, at *5–6; *Buckley*, 2013 WL 7121182, at *2. But, the *Brannen* decisions were made prior to D.C. Circuit's *Loving* decision, *i.e.*, prior to the finding that the IRS lacks the authority to regulate tax return preparers and the striking down of the regulations attempting to do so. In addition, the Court

19

disagrees with the *Buckley* court's finding that *Loving* (at the time the district court opinion) is entirely inapplicable because although the PTIN scheme was authorized by a different statutory authority, it is, as explained above, interrelated with the RTRP scheme.

If tax return preparers were regulated entities required to obtain licenses, this case would be very different and the cases cited above may support the government's argument that it is authorized to charge fees. However, *Loving* makes clear that the IRS may not regulate in this area or require that tax return preparers obtain an occupational license. The Court is unaware of similar cases in which an agency has been allowed to charge fees under the IOAA for issuing some sort of identifier when that agency is not allowed to regulate those to whom the identifier is issued, and the government has not pointed to any.

Additionally, the Court notes that after *Loving*, anyone can obtain a PTIN. They need not meet any type of eligibility criteria. Thus, it is no longer the case that only a subset of the general public may obtain a PTIN and prepare tax returns for others for compensation. Hypothetically, every member of the public could obtain a PTIN, which means that every member of the public would also get the supposed "benefit" of being able to prepare tax returns for others for compensation. There is therefore no special benefit for certain individuals not available to the general public. It seems that if a benefit exists, it inures to the IRS, who, through the use of PTINs, may better identify and keep track of tax return preparers and the returns that they have prepared.

The government argues that the fact that anyone may obtain a PTIN is irrelevant, comparing it to the fact that anyone may enter a national park if they buy a ticket. This is unpersuasive. The Secretary of the Interior is authorized by statute to "establish, modify, charge, and collect recreation fees at Federal recreational lands and waters." 16 U.S.C. § 6802(a). As plaintiffs note, that statute would be wholly unnecessary if the agency were allowed to charge fees

under the IOAA.[3]  Here, the Secretary of the Treasury is not specifically authorized to charge user fees for PTINs, so the national park analogy fails.

Finally, the Court addresses the IRS's second argument that PTINs are things of value because they protect the confidentiality of social security numbers.   The confidentiality justification is mentioned only briefly in the regulations requiring the use of PTINs: "The final regulations will also benefit taxpayers and tax return preparers and help maintain the confidentiality of SSNs."  Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. at 60309.  It is not discussed in the regulation specifically addressing user fees.  *See generally* User Fees Relating to Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 60316. Despite the fact that tax return preparers were allowed for many years to use their SSNs, and that under the statute SSNs are presumptively to be used as the required identifying number, and that the taxpayer's SSN appears on their tax returns regardless of whether they used a tax return preparer, the regulations fail to even state that SSNs were being inadvertently disclosed or that their confidentiality was at risk.  It is not at all clear that requiring PTINs was necessary for this reason.  There is no stated evidence in the administrative record that permitted the IRS to make such a determination.  *See Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14, 20 (D.D.C. 2014) ("[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.").  The Court will not defer to these conclusory and unsupported justifications, *see McDonnell*, 375 F.3d at 1187, and finds that the IRS may not charge fees for PTINs for this reason.

---

[3] The Court makes no decision regarding whether fees for national park entry are permissible solely under the IOAA.

21

For all of the reasons stated above, the Court concludes that PTINs are not a "service or thing of value" provided by the IRS.  The IRS may therefore not charge fees for issuing PTINs and the regulations requiring payment of fees for PTINs are unlawful.

## V.    CONCLUSION

In sum, the Court finds that although the IRS may require the use of PTINs, it may not charge fees for issuing PTINs.  The Court will grant in part and deny in part both parties' motions for summary judgment.  Plaintiffs' motion shall be denied insofar as it argues that the IRS may not require the use of PTINs, but will granted with respect to the argument that the IRS may not charge fees under the IOAA for PTINs.  The government's motion shall be granted with respect to the issue of whether it may require the use of PTINs, but shall be denied with respect to the issue of whether it may charge fees for PTINs under the IOAA.

A separate Order accompanies this Memorandum Opinion.

Date: May __, 2017

Royce C. Lamberth
United States District Judge

22

36

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADAM STEELE, et al.,** )<br>)<br>)<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**UNITED STATES OF AMERICA,** )<br>)<br>)<br>**Defendant.** )<br>) | Case No: 14-cv-1523-RCL |

## <u>ORDER</u>

In accordance with the accompanying Memorandum Opinion, plaintiffs' motion for

partial summary judgment [67] is hereby **GRANTED** in part and **DENIED** in part. Plaintiffs'

motion is **DENIED** insofar as it argues that the IRS may not require the use of Personal Tax

Identification Numbers (PTINs), but is **GRANTED** with respect to the argument that the IRS

may not charge fees under the IOAA for PTINs. Defendant's motion for summary judgment

[66] is **GRANTED** in part and **DENIED** in part. It is **GRANTED** with respect to the issue of

whether it may require the use of PTINs, but is **DENIED** with respect to the issue of whether it

may charge fees for PTINs under the IOAA.

It is further **ORDERED** that all fees that the defendant has charged to class members to

issue and renew a PTIN under 26 C.F.R. § 300.13 are hereby declared unlawful, and the

defendant is enjoined from charging those fees in the future.

It is further **ORDERED** that the defendant shall provide each class member with a full

refund of all PTIN fees paid.

It is further **ORDERED** that counsel for the parties shall meet and confer regarding a schedule for subsequent proceedings in this case, and submit within 30 days of this order a proposal for addressing any remaining issues in this case, including a plan for determining the amount of money owed to each class member and proposing a form of final judgment.

It is **SO ORDERED**.

Date: May __, 2017

Royce C. Lamberth
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Adam Steele, Brittany Montrois, and )
Joseph Henchman, on behalf of )
themselves and all others similarly )
situated, )
      *Plaintiffs*, )     Civil Action No.: 1:14-cv-01523-RCL
     )
     )
v. )
     )
United States of America, )
    *Defendant*. )
_____ )

## [~~PROPOSED~~] FINAL JUDGMENT AND PERMANENT INJUNCTION

The plaintiffs Adam Steele, Brittany Montrois, and Joseph Henchman, on behalf of

themselves and all others similarly situated, filed this class action on September 8, 2014, against

the defendant, United States of America.  The Court finds, orders, and adjudges as follows:

WHEREAS the plaintiffs filed their class action complaint on September 8, 2014;

WHEREAS the plaintiffs filed their amended class action complaint on August 7, 2015,

alleging two causes of action:  one challenging the IRS's preparer tax identification number

("PTIN") fee as an unlawful agency action (Count One) and one alternatively challenging the

PTIN fee as excessive (Count Two);

WHEREAS the PTIN fee is comprised of an amount payable to the Internal Revenue

Service and an amount payable to a third-party vendor, which processes initial and renewal PTIN

applications;

WHEREAS the plaintiffs filed their motion for class certification on September 9, 2015.

On February 9, 2016, the Court granted their motion in part and denied it in part (ECF Nos. 54 &

55), and the plaintiffs moved for reconsideration of the Court's order on February 16, 2016;

WHEREAS, on August 8, 2016, this Court granted the plaintiffs' motion for reconsideration and certified the following class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3): "All individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek" (ECF Nos. 63 & 64);

WHEREAS, beginning on October 7, 2016, the plaintiffs, in accordance with Federal Rule of Civil Procedure 23(c)(2), provided notice of this action and an opportunity for exclusion from the action.  One thousand seventy five (1,075) individuals and entities excluded themselves from the class in this action;

WHEREAS, on September 7, 2016, the plaintiffs filed a motion for summary judgment, and the United States filed a motion for partial summary judgment; and

WHEREAS, on June 1, 2017, in a Memorandum Opinion and accompanying Order ("Memorandum Opinion and Order") (ECF Nos. 78 & 79), the Court granted both motions in part and denied them in part.

In accordance with the Memorandum Opinion and Order, the following is hereby:

ORDERED that this Court has jurisdiction over the subject matter of this action;

ORDERED that the Internal Revenue Service may require the use of PTINs as the exclusive identifying number under 26 U.S.C. § 6109(a)(4);

ORDERED that final judgment on Count One is entered in favor of the plaintiffs and the class members and against the United States;

ORDERED that the following declaratory relief is granted to the plaintiffs and class members:  all fees that the defendant has charged to class members to issue or renew a PTIN

2

under 26 C.F.R. § 300.13, including those paid to the third-party vendor, are hereby declared unlawful;

ORDERED that the defendant is permanently enjoined from charging PTIN fees;

ORDERED that the defendant provide each class member with a full refund of all PTIN fees paid from September 1, 2010 to present.  The United States shall make payment of such refunds to the claims administrator selected by the plaintiffs' counsel promptly after the expiration of the period for appeal or, in the event of an appeal, promptly after the final determination of all appeals or the final judgment of this Court on remand, whichever is later. The claims administrator shall process the individual refunds, less the pro rata share of any attorneys' fees and costs approved by the Court, to class members within 60 days of the final determination of the amount of any attorneys' fees and costs that may be awarded to the plaintiffs' counsel;

ORDERED that, pursuant to Federal Rule of Civil Procedure 23(c)(2), the plaintiffs provide notice and an opportunity for exclusion to any class members who have paid initial PTIN fees after August 20, 2016, and did not receive notice of pendency of this action and did not have an opportunity to exclude themselves before December 7, 2016.  A separate order shall be entered regarding procedures related to the plaintiffs' plan of notice.  Such orders shall in no way disturb or affect this final judgment and shall be considered separate from this final judgment;

ORDERED that all individuals and entities listed by ClaimID in Exhibit C to the Declaration of Kathleen Wyatt Regarding Notice Procedures (ECF No. 77-1) are hereby excluded from the class, are not bound by this final judgment with respect to refund relief

3

ordered above, and may not make any claim to the claims administrator in this case with respect to or receive any refund benefit on account of the judgment in this case;

ORDERED that, in light of the relief described above, Count Two is dismissed as moot, without prejudice to the plaintiffs' right to revive that claim if this final judgment is reversed on appeal;

ORDERED that, pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.2, an application by the plaintiffs for attorneys' fees, related nontaxable expenses, or costs shall be filed no later than 30 days after the expiration of the period for appeal or, in the event of an appeal, shall be filed within 30 days of the final determination of all appeals or the final judgment of this Court on remand, whichever is later.  A separate order shall be entered regarding class counsel's application for attorneys' fees and reimbursement of expenses as allowed by the Court.  Such orders shall in no way disturb or affect this final judgment and shall be considered separate from this final judgment;

ORDERED that, pursuant to Federal Rule of Civil Procedure 23(h)(1), notice to the class of any hearing on an attorneys' fees and costs application shall be disseminated no later than 30 days after the Court's approval of the plan and form of notice.  A separate order shall be entered regarding notice and briefing procedures relating to attorneys' fees and costs.  Such orders shall in no way disturb or affect this final judgment and shall be considered separate from this final judgment;

ORDERED that there is no just reason for delay in the entry of this final judgment and immediate entry by the Clerk of the Court is directed.  For the purposes of Federal Rule of Appellate Procedure 4(a), this is a final, appealable order; and

4

ORDERED that jurisdiction is hereby retained over the parties and the class members for all matters relating to this action, including the administration, interpretation, effectuation, or enforcement of this final judgment.

**IT IS SO ORDERED.**

Dated:   7/7/17

_____
The Honorable Royce C. Lamberth
Senior United States District Judge

5