
FILED
DEC 18 2017
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Adam Steele, et al.,** ) | |
| ) | |
| ) | |
| v. ) | Case No. 1:14-cv-1523 (RCL) |
| ) | |
| **United States of America,** ) | |
| ) | |
| Defendant. ) | |

### Memorandum Opinion

Before the Court is the government's motion for a stay of this Court's order enjoining the Internal Revenue Service ("IRS") from charging fees to issue a preparer tax identification number ("PTIN"). Upon consideration of the pleadings, the record, and the relevant law, the Court will **DENY** the motion for a stay.

I.  **BACKGROUND**

As explained in detail in this Court's prior memorandum opinion, ECF No. 78, this case concerns 2010-2011 regulations promulgated by the Treasury Department and the IRS regarding tax return preparers. Plaintiffs challenged the government's legal authority to require PTINs and PTIN fees. On June 1, 2017, this Court issued its opinion and order on the parties' cross-motions for summary judgement. ECF Nos. 78-79. The Court found that although the IRS had the legal authority to require PTINs, it may not charge fees for issuing PTINs. The Court explained that the IRS's PTIN regulations were interrelated to the regulations concerning exam and education requirements for tax preparers that were struck down in *Loving v. I.R.S.*, 742 F.32d 1013 (D.C. Cir. 2014). Charging fees for PTINs is the equivalent of imposing a regulatory licensing scheme—an authority that the *Loving* court established the IRS does not have. *Loving*, 742 F.3d

at 1015. Moreover, the Court found that obtaining a PTIN number is no longer a "service or thing of value"—the standard required to impose a fee under the Independent Offices Appropriations Act of 1952 ("IOAA")—because anyone can now obtain a PTIN thanks to *Loving*. On July 10, 2017, the Court entered its final judgment in this matter, permanently enjoining the IRS from charging PTIN fees, among other orders. ECF No. 82.

On July 24, 2017, pursuant to Federal Rule of Civil Procedure 62, the government moved for a stay of the Court's permanent injunction during the pendency of an appeal. On September 6, 2017, the government field its notice of appeal to the D.C. Circuit.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 62(c), "[w]hile an appeal is pending from [a] ... final judgment that grants ... an injunction, the court may suspend [or] modify [the] ... injunction on ... terms that secure the opposing party's rights." The D.C. Circuit has made clear that a "court's decision to stay its final judgment pending appeal is an extraordinary remedy that constitutes an 'intrusion into the ordinary process of ... judicial review.'" *Friends of Capital Crescent Trail v. Federal Transit Administration*, 2017 WL 2781446 (D.D.C. 2017) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009).

In determining whether to grant a stay pending an appeal, the Court must consider the following four factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Cuomo v. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).

The D.C. Circuit traditionally evaluated these four factors using a "sliding-scale" approach—meaning that a "strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). Although the Supreme Court in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2007), suggested that the four factors should be treated independently, the D.C. Circuit has yet to hold that the sliding-scale approach should no longer be used. *Sherley*, 644 F.3d at 392-93.

The government notes that in the context of a stay proceeding it can establish likelihood of success on the merits—the first factor in the test—by raising "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911-12 (D.C. Cir. 2008) (internal quotations omitted). In other words, if the other three factors weigh heavily in favor of a stay, a lesser showing on the first factor is sufficient to meet the government's burden. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). The Court need not conclude whether a sliding-scale test of this sort survives *Winter*, as the government fails to meet its burden even under this lower standard.

### III. ANALYSIS

*A. Likelihood of Success on the Merits*

The government argues that this case raises serious questions going to the merits for three reasons:

> (1) this Court's decision conflicts with decisions from the Eleventh Circuit and Northern District of Georgia; (2) the PTIN and RTRP [—the registered tax return preparer—] regulations are sufficiently independent from each other to justify both the PTIN requirement and user fee; and (3) the statute and regulations support a broader reading of the IOAA than the Court adopted here.

3

ECF No. 86 at 6-7.  According to the government, the fact that the "D.C. Circuit must resolve these difficult and serious questions" means that it has "satisfied the likelihood-of-success requirement."  *Id.* at 7.  But the Court disagrees that those three issues present "serious, substantial, difficult and doubtful" questions for the Circuit to sort out.

The Court addressed all three issues extensively in its previous memorandum opinion. As to the first issue, the Court wrote:

> The Court acknowledges that courts in the Eleventh Circuit have found that the PTIN fees are permissible under the IOAA. *See Brannen*, 682 F.3d at 1319; *Brannen*, 2011 WL 8245026, at *5–6; Buckley, 2013 WL 7121182, at *2. But, the *Brannen* decisions were made prior to D.C. Circuit's Loving decision, i.e., prior to the finding that the IRS lacks the authority to regulate tax return preparers and the striking down of the regulations attempting to do so. In addition, the Court disagrees with the *Buckley* court's finding that [the *Loving* district court decision] is entirely inapplicable because although the PTIN scheme was authorized by a different statutory authority, it is, as explained above, interrelated with the RTRP scheme.

ECF No. 78 at 19-20.  Put another way—neither the *Brannen* nor *Buckley* courts had the benefit of the D.C. Circuit's opinion in *Loving*.  To the extent that the courts in the Eleventh Circuit believe that *Loving* would be inapplicable because it addresses a different set of regulations— the exam and education related regulations—the Court thinks it is clear that approach is wrong given the reasons articulated in its prior memorandum opinion.

This leads into the second "difficult issue" that the government presents—whether the PTIN and RTRP regulations struck down in *Loving* are "sufficiently independent from each other."  ECF No. 86 at 6.  Again, the Court does not believe this is a particularly difficult question for the D.C. Circuit to address.  As stated in the prior memorandum opinion, while the regulations "were issued separately and at different times, they are clearly interrelated."  ECF No. 78 at 15.  The "RTRP regulations specifically mention the PTIN requirements" and "the overarching objectives named in the PTIN regulations indicate a connection to the RTRP

regulations." *Id.* at 15-16. The government has not presented any additional arguments that change the Court's perspective that the two sets of regulations are "clearly interrelated."

Finally, the Court remains steadfast in its view that the PTIN fees are not justified under the IOAA. Unlike in other cases where courts found fees permissible, here the underlying regulatory scheme was invalidated in *Loving*. *Id.* at 17-19. The Court agrees with the plaintiffs that the IRS cannot use an invalidated regulatory scheme to bootstrap in a fee. ECF No. 85 at 12.

In sum, the Court is not persuaded that the government's rehashed arguments present "serious, substantial, difficult and doubtful" issues. The Court has not been presented with any new information that has come to light since it ruled on this matter and remains convinced that the case was correctly decided. Although the Court can deny the stay request on these grounds alone, the Court will analyze the remaining factors as well.

### B. Likelihood of Irreparable Harm

The government alleges that it will suffer "two distinct irreparable harms: (1) the loss of all PTIN user fees during the pendency of the appeal; and (2) the need to cut other taxpayer services and programs to cover the uncollected amounts. (See Doc. 84-1 at 13-18.)" ECF No. 86 at 8. The government estimates that absent a stay it will lose out in collecting $37.6 million in fees. ECF No. 84 at 15. And that if it is "ultimately successful on appeal, the United States may not have any legal or practical method to recover" the uncollected fees. ECF No. 9.

The Court is not persuaded by these arguments. The D.C. Circuit has established a "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. Engalnd*, 454 F.3d 290, 297 (D.C. Cir. 2006). The injury "must be both certain and great; it must be actual and not theoretical." *Id.* (*citing Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985) (per curiam)). Plaintiffs must demonstrate that the injury is "of such *imminence* that there is a clear and present

5

need for equitable relief to prevent irreparable harm." *Id.* (internal quotations removed). Moreover, the injury "must be beyond remediation" and "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *Id.* (internal quotations removed).

First off, the Court is not convinced that the government will be unable to recoup uncollected fees should they ultimately prevail. While it might not be easy, the government is unable to say with absolute certainty that a restitution claim would not be viable. Additionally, it is not clear to the Court why if the government, by its own admission, can refund PTIN holders, ECF No. 84-1 at 18, it cannot also retroactively charge PTIN holders who were not required to pay a fee during the pendency of the appeal. Given these outstanding questions, the government has not established that the harm is "certain," "not theoretical," and "beyond remediation." *Chaplaincy*, 454 F.3d at 297.

Even if the Court was to accept that the government would be unable to recover the $37.6 million in uncollected fees, the harm would still not meet the "high standard for irreparable injury." *Chaplaincy*, 454 F.3d at 297. "It is also well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wisconsin Gas*, 758 F.2d at 674. The loss must "threaten[] the very existence of the movant's business." *Id.*; *see also City of Moundridge v. Exxon Mobil Corp.*, 429 F.Supp.2d 117, 129 (D.D.C. 2006) (finding no irreparable harm where cities did "not establish that the loss of revenue threatens the existence of the public utilities plaintiffs run, or the municipalities themselves"). Here, the government acknowledges that a loss of $37.6 million would constitute a mere 0.3% of the IRS's yearly budget. ECF 82-3 at ¶ 9. Put simply, 0.3% is a rounding error when considering the IRS's overall budget. And courts have consistently found that greater magnitudes of economic harm fall short of the bar for irreparable

harm. *See e.g. ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 48 (D.D.C. 2014) (finding that a $10 million expected loss, or 10% of revenues, was "not of sufficient magnitude"); *TGS Tech., Inc. v. U.S. Dep't of Air Force*, 1992 WL 19058, at *4 (D.D.C.1992) (holding that plaintiff did not establish irreparable injury when loss amounted to "only" twenty percent of business).

Finally, the Court finds the government's second argument for irreparable harm—that it will have to transfer funds from other programs and services to pay for the PTIN program—similarly unavailing. First off, it is not clear to the Court why the harm is "certain." The government can decide to discontinue the issuance of PTINs entirely during the pendency of the appeal, which would dramatically reduce the cost to the government. And as the plaintiffs point out, since this litigation has been pending for years, the government could have structured its contract with the third-party administering the PTIN program "to protect its financial interests." *Friends of Capital Crescent* Trail v. Federal Transit Administration, 2017 WL 2781446, at *5 (D.D.C. 2017). And "a stay pending appeal is not intended to inoculate a party against the risks of litigation, nor is it the Court's role to grant emergency relief to protect a party from the consequences of its own fully-informed decisions." *Id*. (citations omitted). Furthermore, the logical extension of the government's argument is that any diversion of government resources is irreparable—a conclusion that upends the idea that establishing irreparable harm is a high bar.

### C. Harms to the Plaintiffs and the Public Interest

Next, the Court turns to the remaining two factors—whether the plaintiffs will be harmed by a stay and whether the stay is in the public interest. The government argues that the plaintiffs will not face substantial harm from a stay because "they would be entitled to a refund if … an appeal is unsuccessful." ECF No.84-1 at 18. While the Court does believe that there is some harm to having to pay a fee upfront and wait for a refund, that harm is not considerable. On the

7

final factor, the government further contends that a stay is *per se* in the public interest if the government demonstrates that it will suffer irreparable injury. *Id.* at 19. Since the Court does not believe that the government has established a likelihood of irreparable injury, the government has failed to carry its burden on this factor.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that the government has failed to establish three of the four factors required for a stay pending appeal. Therefore, the government motion for a stay, ECF No. 84-1, is **DENIED**. A separate Order consistent with this Memorandum Opinion shall issue this date.

SIGNED this 18th day of December, 2017.

_____
Royce C. Lamberth
United States District Judge