# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Adam Steele, Brittany Montrois, and Joseph Henchman, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| *Plaintiffs*, | ) | Civil Action No.: 1:14-cv-01523-RCL |
| | ) | |
| v. | ) | |
| | ) | |
| United States of America, | ) | |
| *Defendant*. | ) | |
| | ) | |

## JOINT MOTION FOR MODIFICATION OF THE SCHEDULING ORDER

The parties jointly move the Court for an order modifying the current Scheduling Order to initially extend the close of fact discovery from November 29, 2019 to February 28, 2020 and to suspend the remainder of the schedule.  (*See* Dkt. Nos. 99 & 100.)  This extension of time is necessary due to unexpected complications during the discovery process that will prevent the parties from completing fact discovery within the current schedule.  These complications include the volume, complexity, and sensitivity of information subject to discovery.

The parties seek an initial three-month extension to permit additional time to complete focused discovery and narrow the scope of any remaining fact discovery.  To aid this process, the United States will produce information describing the scope of activities performed in connection with the preparer tax identification number user fee ("PTIN" and "PTIN User Fee").  Using this targeted discovery, the parties can discuss what, if any, information would be most useful for further discovery.  Before the close of the three-month period, the parties will submit a subsequent extension request once

they have determined the amount of time necessary to complete any agreed-upon, narrowed fact discovery.[1]  In support of this motion, the parties aver as follows.

## Background

This class action challenges the PTIN User Fee.  The parties agreed to litigate the case in two phases.  The first phase would address whether the IRS was authorized to charge a PTIN User Fee.  If a user fee was permissible, the second phase would address whether the amount of the fee was excessive.  Because the first phase primarily presented a matter of law, it did not require extensive factual discovery in order for the parties to prepare their respective summary judgment motions.  Further, the parties agreed at that time to forgo discovery regarding whether the amount of the fee was excessive until the first phase was completed.

On June 1, 2017, the Court granted Plaintiffs' motion for summary judgment in part, holding that the IRS may require the use of PTINs but may not charge a user fee for obtaining or renewing a PTIN.  (*See* Dkt. No. 79.)  The government appealed that decision.  (*See* Dkt. No. 90.)  On March 1, 2019, the United States Court of Appeals for the District of Columbia Circuit vacated the judgment, holding that the IRS could charge a PTIN User Fee.  *See Montrois v. United States*, 916 F.3d 1056, 1058 (D.C. Cir. 2019).  The D.C. Circuit remanded the action "for further proceedings, including an assessment of whether the amount of the PTIN fee unreasonably exceeds the costs to the IRS to issue and maintain PTINs."  *Id.*

---

[1] In the event the parties cannot agree on how to limit discovery, the parties' subsequent extension request will provide sufficient time for the United States to complete its review of all collected data for potentially responsive information.  The parties are working diligently to avoid that outcome.

On April 22, 2019, after the D.C. Circuit issued its mandate, the parties submitted

a joint proposed pre-trial schedule covering the second phase of the case.  On May 3,

2019, the Court entered the parties' proposed schedule.  (*See* Dkt. Nos. 99 & 100.)

## ARGUMENT

The current discovery deadline of November 29, 2019 was based upon the

parties' then best estimate of how long it would take to complete fact discovery.  Since

that time, the parties have worked diligently on the discovery process but have

encountered significant complications that prevent completion of discovery within the

originally estimated timeframe.  *First*, it has taken far longer than expected for the

parties to obtain the agreement of certain subpoenaed third-parties to a protective order

that would protect those third-parties' confidential business information.  *Second*, the

parties substantially underestimated the amount of time required to process, review,

and produce responsive, but non-privileged, information that the United States has

collected.  For each of these reasons, good cause supports an extension of the fact

discovery deadline.

### 1.      Applicable Standard.

A pre-trial scheduling order may be modified for "good cause and with the

judge's consent."  Fed. R. Civ. P. 16(b)(4); LCvR 16.4(a) ("The Court may modify the

scheduling order at any time upon a showing of good cause.").  The primary factor in

determining whether good cause exists is the diligence of the party seeking the

modification of the pretrial schedule.  *United States v. Kellogg Brown & Root Servs.*, 285

F.R.D. 133, 136 (D.D.C. 2012).  Other relevant factors for extending discovery include

whether the request is opposed, whether any non-moving party would be prejudiced, and whether trial is imminent. *2910 Georgia Avenue LLC v. District of Columbia,* 312 F.R.D. 205, 208 (D.D.C. 2015); *Childers v. Slater,* 197 F.R.D. 185, 188 (D.D.C. 2000).  Where the parties jointly move for a discovery extension, the parties' ongoing good faith efforts to resolve discovery disputes weighs in favor of modifying the schedule. *E.g., Peterson v. Archstone,* No. 08-1326, 2009 WL 10692573 at *2 (D.D.C. Sept. 9, 2009).

> **2.     The negotiation of the proposed protective order substantially delayed a significant portion of discovery.**

It has taken far longer than expected for the parties to negotiate with and obtain agreement from certain third-party vendors on a proposed protective order that would protect their confidential business information.  In May 2019, the parties and vendors began negotiations on the proposed protective order.  As described in the parties' recent joint motion for entry of a protective order, those negotiations were substantial, extensive, and time-consuming.  (*See* Dkt. No. 102, ¶¶ 8-12.)  Despite the parties' best efforts, including jointly holding numerous discussions with the third-parties, progress in reaching a final agreed protective order was extremely slow.  (*Id.,* ¶¶ 9-12.)  And despite the extensive negotiations that spanned several months, the parties were ultimately unable to obtain agreement from all of the third-parties whose business information is relevant to this suit.  (*Id.,* ¶ 13.)

The delay in obtaining the third-parties' agreement to a protective order has significantly interfered with the progress of fact discovery.  A substantial portion of the United States' information responsive to Plaintiffs' discovery requests includes third-

party vendor information, because many of the costs at issue in this case relate to work performed by various vendors.  For example, Accenture is the PTIN vendor.  Under its contracts with the United States, it collects the PTIN User Fee from tax preparers and remits the IRS' portion of the fee to the United States.  Accenture built the PTIN database and performs additional tasks for the Return Preparer Office ("RPO") as described in those contracts.  Information related to Accenture, its contracts with the United States, and its work on the PTIN system may be protected under Federal Rule of Civil Procedure 26(c).  In the absence of a protective order, the United States cannot produce this relevant information.  The parties therefore agreed to delay the United States' production of such documents until a protective order had been entered.

The absence of a protective order has also precluded Plaintiffs' ability to obtain document discovery directly from the third-parties themselves.  Plaintiffs have served document subpoenas upon certain relevant vendors (*i.e.*, Accenture, Booz Allen Hamilton and Prometric) as well as upon H&R Block and the Government Accountability Office ("GAO").  But some of the third-parties, including Accenture have refused to comply with Plaintiffs' document discovery until a mutually agreeable protective order covering, *inter alia,* "trade secret, or confidential research, development, or commercial information," Fed. R. Civ. P. 26(c)(1)(G), has been entered.

In addition, even once a protective order is entered, other issues will delay the production of documents from third-parties.  *First*, before any information related to a government contract can be produced, it must be reviewed by the United States to ensure that no improper information is disclosed in contravention of the underlying

contract.  In this case, the third-parties must send the documents they intend to produce

to the IRS, which will then review the information before it can be produced to

plaintiffs.  *Second*, Plaintiffs have moved to compel Accenture's compliance with the

subpoena.  The parties understand that Accenture does not intend to produce any

information until the resolution of that motion.  Given Accenture's role in the PTIN

system, the parties anticipate that Accenture will have a substantial volume of

responsive documents.  Additional time for fact discovery is therefore necessary to

permit completion of third-party discovery.

> ### 3.   The parties did not expect the volume of responsive information within the United States' possession, custody, or control.

After the D.C. Circuit's remand, the parties began discussing the amount of time

necessary to take discovery regarding whether the amount of the PTIN User Fee is

excessive.  Plaintiffs issued multiple requests for production to the United States on that

issue and asked the United States to supplement its responses to certain prior requests

related to the amount of the fee.  Given the amount of information counsel for the

United States expected to be responsive to these discovery requests, the parties agreed

to the current November 29, 2019 discovery deadline.  Unfortunately, counsel for the

United States drastically underestimated the volume of potentially responsive

information as well as the time necessary to review the information in light of

significant issues related to privilege, 26 U.S.C. § 6103, and vendor information.

The IRS Information Technology Division ("IRS IT") began to decrypt and

analyze Electronically Stored Information ("ESI") that had been collected from relevant

custodians.  To date, IRS has gathered over 2,079,000 documents and expects to gather many thousands of additional documents.  As soon as the United States became aware of the unexpected volume of documents collected and the challenges faced to process and review the information, it alerted Plaintiffs.

In light of these complications, the parties jointly began working on ways to narrow the volume of information requiring review in this case.  The parties attempted to agree on a list of search terms but could not determine an appropriate list given the various issues in the case.  Instead, the United States has utilized the assisted review, categorization function within the Relativity e-discovery software to reduce the volume of information needing review.  Categorization is a general term to describe a technology-assisted review process, which can, for example, identify documents containing similar information.  The United States also used de-duplication functions to remove duplicates from a data set.  Through these methods, the United States has been able to reduce the total volume of potentially responsive material from over two million documents to approximately 470,000.[2]  Additional analysis, feedback from custodians, and further discussions with Plaintiffs will help to further reduce that set.

The United States is in the process of reviewing this reduced set of documents for information responsive to Plaintiffs' requests.  If required to review all of the information collected, the United States anticipates, based on its current review rates, that it would take at least until November 2020 to complete the review.  In addition to

---

[2] This amount does not include third-party documents.

the time necessary to review the collected information, sufficient time is necessary to address various disclosure and privilege issues.  As discussed above, a large portion of relevant material may contain confidential vendor information.  The United States also will have to review and redact responsive documents for any attorney-client communication, attorney work product, or deliberative process privileged material. Because this case concerns government policies and deliberations, there is a substantial amount of information that may be subject to the deliberative process privilege.  To the extent waiver of privilege is required, obtaining the necessary approvals for such waivers from the appropriate IRS officials is a time consuming process.

The United States also must comply with the provisions of 26 U.S.C. § 6103, which dictates that returns and return information, including information concerning return preparers,  maintained by the United States shall be confidential and may only be disclosed where authorized.  The unauthorized disclosure of "return information" in violation of section 6103 can subject IRS and DOJ employees to civil and criminal penalties.  26 U.S.C. §§ 7213, 7431.  While section 6103(h)(4) allows disclosure of returns and return information directly related to resolving an issue in a proceeding, given the nature of IRS work, some custodians' ESI includes section 6103 information unrelated to the PTIN user fee.  This unrelated information must be excised from the data set to avoid any unauthorized disclosure by the IRS or DOJ.  Before the IRS can provide a document to the DOJ, it must review the document to ensure that such disclosure is not prohibited by section 6103.  Of the documents reviewed to date, over 40% of potentially

responsive documents have been initially flagged as privileged or including section
6103 "return information."

Finally, in addition to the time necessary to review and produce documentary
evidence, the parties need sufficient time to take the necessary depositions in this case.
The parties anticipate that numerous depositions, possibly more than 20, will be
required in this case.  While some of these depositions may be taken prior to the end of
document production, the parties believe many of the depositions can only occur after
all documents have been produced.

    **4.**    **The initial extension will allow the parties sufficient time to narrow the scope of fact discovery.**

Based on the foregoing issues, the parties recognized that fact discovery could
not be completed by November 29, 2019.  Both parties also wanted to find ways to
avoid extending fact discovery in this case until November 2020.  The parties engaged
in substantial good faith negotiations in order to narrow both the fact discovery burden
as well as the amount of additional time to complete fact discovery.  Although these
discussions are ongoing, the parties have not yet been able to agree on either of those
issues.  The parties hope that during the brief proposed extension they will be able to
exchange sufficient information to narrow the scope of discovery further and will be
able to complete most of that narrowed discovery.

The parties therefore propose an initial three-month extension of time followed
by a subsequent extension request for any remaining, focused fact discovery.  On a
rolling basis and no later than January 17, 2020, the United States will produce: (1) cost

data for all years at issue; (2) unredacted versions of all relevant contracts with vendors who provided services to RPO; (3) general policy and procedure information related to the PTIN; and (4) a voluminous sample group of documents representing a cross-section of the various activities that comprise the PTIN user fee.  Production of information related to the first two categories cannot be made until after the protective order is entered, because both categories contain potentially confidential vendor information.  After Plaintiffs have reviewed those documents, the parties will confer on targeted discovery regarding those activities for which Plaintiffs' believe additional information is necessary.  By the end of this initial extension, the parties will then jointly propose a subsequent extension of fact discovery to complete any remaining discovery.

The parties believe this two-step extension process is appropriate in this case because it will allow for a more accurate understanding of how much time is necessary to complete fact discovery.  It will focus the parties' resources and shorten the amount of time necessary to complete fact discovery.  It will also help the parties determine how much time is necessary to complete third-party discovery.

The parties also request that the remainder of the schedule be indefinitely suspended at this time.  The parties will propose the remainder of the schedule when the subsequent discovery request is submitted.

## Conclusion

The parties respectfully request that the Court grant this joint motion to modify the schedule in this action as set forth above.  Both Plaintiffs and Defendant have been diligent in this matter, no party opposes or will be prejudiced by extending the close of

10

fact discovery, and trial is not imminent.  The parties are available for a telephonic or in-person status conference at the Court's convenience to address any questions the Court may have or to discuss this proposal in more detail.


Dated:  October 31, 2019


Respectfully submitted,


*/s/ William H. Narwold*
MOTLEY RICE LLC
William H. Narwold
bnarwold@motleyrice.com
D.C. Bar No. 502352
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1676
Facsimile: (860) 882-1682

Nathan D. Finch
nfinch@motleyrice.com
Elizabeth Smith
esmith@motleyrice.com
3333 K Street NW, Suite 450
Washington, DC 20007
Telephone: (202) 232-5504
Facsimile: (202) 232-5513

LAW OFFICE OF ALLEN BUCKLEY LLC
Allen Buckley
ab@allenbuckleylaw.com
2802 Paces Ferry Road, Suite 100-C
Atlanta, GA  30339
Telephone: (404) 610-1936
Facsimile: (770) 319-0110

*Attorneys for Plaintiffs Adam Steele, Brittany*
*Montrois, Joseph Henchman, and the Class*

*/s/ Christopher J. Williamson*
U.S. DEPARTMENT OF JUSTICE, TAX DIVISION
Christopher J. Williamson
Christopher.J.Williamson@usdoj.gov
Joseph E. Hunsader
Joseph.E.Hunsader@usdoj.gov
Trial Attorneys
Post Office Box 227
Ben Franklin Station
Washington, DC  20044
Telephone:  (202) 307-2250
Facsimile:  (202) 514-6866

*Attorneys for Defendant United States of*
*America*

GUPTA WESSLER PLLC
Deepak Gupta, Esq.
deepak@guptawessler.com
Jonathan E. Taylor
jon@guptawessler.com
1735 20th Street, NW
Washington, DC  20009
Telephone:  (202) 888-1741
Facsimile:  (202) 888-7792

CAPLIN & DRYSDALE, CHARTERED
Christopher S. Rizek, Esq.
crizek@capdale.com
One Thomas Circle, NW, Suite 1100
Washington, DC  20005
Telephone:  (202) 862-8852
Facsimile:  (202) 429-3301

## CERTIFICATE OF SERVICE

On October 31, 2019, I, Christopher J. Williamson, declare that I filed the

foregoing Joint Motion for Modification of the Scheduling Order with the Clerk of

Court using the Official Court Electronic Document Filing System, which served copies

on all interested parties registered for electronic filing,

Dated:  October 31, 2019          */s/ Christopher J. Williamson*
                                   CHRISTOPHER J. WILLIAMSON