# EXHIBIT BQ

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DISTRICT OF COLUMBIA

| | |
|---|---|
| ADAM STEELE, <br> BRITTANY MONTROIS, <br> JOSEPH HENCHMAN, on behalf of <br> themselves and all others <br> similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) Case No. 1:14-cv-1523 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## UNITED STATES' RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Federal Rule of Civil Procedure 36, the United States of America hereby responds Plaintiffs' First Set of Requests for Admission as follows:

1.  The United States objects to the extent that any of the "Definitions," "Instructions," or interrogatories exceed the scope of proper discovery and the obligations of the United States to respond under the Federal Rules of Civil Procedure.

2.  The United States objects to the instruction that it "provide responsive information in [its] possession, custody or control, or in the possession, custody or control of any of [its] affiliates, agents, representatives, employees, accountants or attorneys" as overbroad, unduly burdensome, and beyond the discovery obligations under the Federal Rules of Civil Procedure. The United States will answer based on reasonably available information in the custody of the Internal Revenue Service or the Department of the Treasury.

1

3. The United States objects to the definition of "Electronically-Stored Information" or "ESI" as exceeding that permitted under the Federal Rules of Civil Procedure, including under Rule 26(b)(2)(B).

4. The United States objects to the definition of "employee" as overbroad and unduly burdensome. The United States construes "employee" as meaning "one who is employed by another for wages or salary and in a position below the executive level."

5. The United States objects to the definition of "PTIN Fee" as "the user fee set by the IRS and charged for the initial issuance or renewal of a PTIN" to the extent that definition can be read to mean that only the incremental transactional costs of the actual issuance and renewal of a particular PTIN are included in the PTIN user fee. The "PTIN Fee" is a user fee charged under 31 U.S.C. § 9701(a) to individuals who prepare tax returns for compensation to recover a portion of the costs incurred by the Government in providing a "service or thing of value," namely permitting individuals to prepare tax returns for compensation. Section 9701(a) requires that "each service or thing of value provided by an agency . . . is to be self-sustaining to the extent possible." The costs incurred in providing that "service or thing of value" encompass more than just the incremental costs of the actual initial issuance or renewal of a PTIN. Accordingly, for purposes of its responses to these document requests, the United States will assume that the term "PTIN Fee" includes the entire portion of costs sought to be recovered in providing a "service or thing of value" under section 9701(a).

6. The United States objects to the definition of "You" and "your" as referring to the entire federal government and "all other persons acting . . . on your behalf" as overbroad and unduly burdensome. The United States construes these terms as referring to the Department of the Treasury including the Internal Revenue Service.

7. The United States objects to instruction requiring the creation of a highly detailed privilege log as not reasonably calculated to lead to the discovery of admissible evidence and overbroad and unduly burdensome.

8. The United States objects to each request to the extent it calls for document(s) protected from production under the deliberative process, attorney-client, work product, or any other applicable privilege.

## REQUESTS FOR ADMISSION

**Request for Admission No. 1**: Prior to the issuance of proposed regulations on July 23, 2010, specifying a $50 fee for issuance and renewal of a Preparer Tax Identification Number ("PTIN") under 26 U.S.C. § 6109(a)(4), a cost analysis had not been done that determined the total costs anticipated to be incurred by Treasury (and/or any other federal agency) solely to issue PTINs.

**Response**: The United States objects to this request for admission on the grounds that it can be read to limit the costs associated with the PTIN user fee to the incremental cost of the actual issuance or renewal of a particular PTIN. The PTIN user fee seeks to recover a portion of the costs incurred by the Department of Treasury and Internal Revenue Service in providing a "service or thing of value" under 31 U.S.C. § 9701(a) to return preparers, namely the ability to prepare tax returns for compensation. Those costs include more than just the incremental costs of the actual issuance or renewal of PTINs. Subject to the foregoing objection, the United States answers as follows. The United States denies this request for admission. A cost analysis was performed beginning on March 1, 2010. The model determined the costs to the Treasury based on the types of activities required to be performed and estimates of the amount of time it would take to perform activities to support the PTIN registration and renewal requirements for up to 1.2

3

million tax return preparers. See IRS Office of Program Evaluation and Risk Analysis, Paid Preparer Review for National Public Liaison (Sept. 2007) (estimating the number of PTIN holders to be between 900,000 and 1.2 million).

**Request for Admission No. 2**: Prior to the issuance of proposed regulations on July 23, 2010, specifying a $50 fee for issuance and renewal of a Preparer Tax Identification Number ("PTIN") under 26 U.S.C. § 6109(a)(4), a cost analysis had not been done that determined the total costs anticipated to be incurred by Treasury (and/or any other federal agency) solely to renew PTINs.

**Response**: The United States objects to this request for admission on the grounds that it can be read to limit the costs associated with the PTIN user fee to the incremental cost of the actual issuance or renewal of a particular PTIN. The PTIN user fee seeks to recover a portion of the costs incurred by the Department of Treasury and Internal Revenue Service in providing a "service or thing of value" under 31 U.S.C. § 9701(a) to return preparers, namely the ability to prepare tax returns for compensation. Those costs include more than just the incremental costs of the actual issuance or renewal of PTINs. Subject to the foregoing objection, the United States answers as follows. The United States denies the request for admission for the same reasons articulated in the response to RFA 1.

**Request for Admission No. 3**: Prior to the issuance of proposed regulations on July 23, 2010, specifying a $50 fee for issuance and renewal of a Preparer Tax Identification Number ("PTIN") under 26 U.S.C. § 6109(a)(4), an analysis had not been done that determined the costs

per tax return preparer anticipated to be incurred by Treasury (and/or any other federal agency) solely to issue PTINs.

**Response**: The United States objects to this request for admission on the grounds that it can be read to limit the costs associated with the PTIN user fee to the incremental cost of the actual issuance or renewal of a particular PTIN. The PTIN user fee seeks to recover a portion of the costs incurred by the Department of Treasury and Internal Revenue Service in providing a "service or thing of value" under 31 U.S.C. § 9701(a) to return preparers, namely the ability to prepare tax returns for compensation. Those costs include more than just the incremental costs of the actual issuance or renewal of PTINs. Subject to the foregoing objection, the United States answers as follows. The United States denies the request for admission for the same reasons articulated in the response to RFA 1.

**Request for Admission No. 4**: Prior to the issuance of proposed regulations on July 23, 2010, specifying a $50 fee for issuance and renewal of a Preparer Tax Identification Number ("PTIN") under 26 U.S.C. § 6109(a)(4), an analysis had not been done that determined the costs per tax return preparer anticipated to be incurred by Treasury (and/or any other federal agency) solely to renew PTINs.

**Response**: The United States objects to this request for admission on the grounds that it can be read to limit the costs associated with the PTIN user fee to the incremental cost of the actual issuance or renewal of a particular PTIN. The PTIN user fee seeks to recover a portion of the costs incurred by the Department of Treasury and Internal Revenue Service in providing a "service or thing of value" under 31 U.S.C. § 9701(a) to return preparers, namely the ability to prepare tax returns for compensation. Those costs include more than just the incremental costs

of the actual issuance or renewal of PTINs. Subject to the foregoing objection, the United States answers as follows. The United States denies the request for admission for the same reasons articulated in the response to RFA 1.

**Request for Admission No. 5**: The $50 per tax return preparer PTIN fees set forth in the PTIN proposed regulations issued on July 23, 2010, were determined by one or more employees of Treasury or a branch thereof (including the Internal Revenue Service).

**Response**: Admitted.

**Request for Admission No. 6**: The $50 per PTIN fee to issue a PTIN, set forth in the final rule issued on September 30, 2010, exceeds the costs incurred to issue a PTIN.

**Response**: The United States objects to this request for admission on the grounds that it can be read to limit the costs associated with the PTIN user fee to the incremental cost of the actual issuance or renewal of a particular PTIN. The PTIN user fee seeks to recover a portion of the costs incurred by the Department of Treasury and Internal Revenue Service in providing a "service or thing of value" under 31 U.S.C. § 9701(a) to return preparers, namely the ability to prepare tax returns for compensation. Those costs include more than just the incremental costs of the actual issuance or renewal of PTINs. Subject to the foregoing objection, the United States answers as follows. The United States admits the request for admission to the extent that the amount of the PTIN user fee was reduced for the various reasons stated in the preamble to a temporary regulation published on October 30, 2015; otherwise, denied.

6

**Request for Admission No. 7**: The $50 per PTIN fee to renew a PTIN, set forth in the final rule issued on September 30, 2010, exceeds the costs incurred to renew a PTIN.

**Response**: The United States objects to this request for admission on the grounds that it can be read to limit the costs associated with the PTIN user fee to the incremental cost of the actual issuance or renewal of a particular PTIN. The PTIN user fee seeks to recover a portion of the costs incurred by the Department of Treasury and Internal Revenue Service in providing a "service or thing of value" under 31 U.S.C. § 9701(a) to return preparers, namely the ability to prepare tax returns for compensation. Those costs include more than just the incremental costs of the actual issuance or renewal of PTINs. Subject to the foregoing objection, the United States answers as follows. The United States admits the request for admission to the extent that the amount of the PTIN user fee was reduced for the various reasons stated in the preamble to a temporary regulation published on October 30, 2015; otherwise, denied.

**Request for Admission No. 8**: Mark Ernst was a leader or co-leader of the return preparer review project conducted in 2009 that led to Publication 4832.

**Response**: The United States admits to the involvement of Mark Ernst in the Return Preparer Review, but objects to the terms "leader" and "co-leader" and denies they are definitive of his role.

**Request for Admission No. 9**: Defendant hired Mark Ernst in 2009.

**Response**: Admitted.

7

**Request for Admission No. 10**: Mark Ernst was the Chief Executive Officer of H&R Block, Inc., or an affiliate thereof, for part or all of 2007.

**Response**: Admitted.

**Request for Admission No. 11**: The original contract between the IRS and Accenture National Security Services, LLC ("Accenture"), as amended, designated as TIRNO-10C-00022, called for PTIN renewal registration to occur once every three (3) years.

**Response**: Admitted.

**Request for Admission No. 12**: TIRNO-10C-00022 was never amended, modified, or revised to provide for annual PTIN renewal registration.

**Response**: Denied. The revised statement of work of September 3, 2010 contained a modification of the contract.

**Request for Admission No. 13**: Accenture has fulfilled its obligations under TIRNO-10C-00022.

**Response**: Admitted.

**Request for Admission No. 14**: TIRNO-10C-00022 required Accenture to do all things necessary to issue PTINs to tax return preparers.

**Response**: Denied. The activities identified by the United States in its Answer to Interrogatory No. 4 are also necessary to issue PTINs to tax return preparers.

8

**Requests for Admission No. 15**: TIRNO-10C-00022 called for Accenture to report all PTINs issued to the IRS.

**Response**: Admitted.


**Request for Admission No. 16**: Some of the fees collected in exchange for the issuance or renewal of PTINs have been used to pay expenses of the IRS not related to the issuance or renewal of PTINs.

**Response**: The United States objects to this request for admission on the grounds that it can be read to limit the costs associated with the PTIN user fee to the incremental cost of the actual issuance or renewal of a particular PTIN. The PTIN user fee seeks to recover a portion of the costs incurred by the Department of Treasury and Internal Revenue Service in providing a "service or thing of value" under 31 U.S.C. § 9701(a) to return preparers, namely the ability to prepare tax returns for compensation. Those costs include more than just the incremental costs of the actual issuance or renewal of PTINs. Subject to the foregoing objection, the United States answers as follows. The United States denies this request for admission.


**Request for Admission No. 17**: Some of the fees collected in exchange for the issuance or renewal of PTINs have been used to fund the Annual Filing Season Program outlined in Revenue Procedure 2014-42.

**Response**: The United States admits that the PTIN user fee has been used to fund labor costs of some employees who handle the Annual Filing Season Program as part of their duties; otherwise, denied.

9

**Request for Admission No. 18**: Neither TIRNO-10C-00022 nor any other contract requires Accenture to allocate time spent or costs incurred between matters that relate exclusively to RTRPs and matters relating to all tax return preparers or matters relating to tax return preparers other than RTRPs.

**Response**: Admitted.

**Request for Admission No. 19**: Neither TIRNO-10C-00022 nor any other contract requires Accenture to allocate time spent or costs incurred between matters that relate exclusively to issuance or renewal of PTINs and other matters.

**Response**: Admitted.

**Request for Admission No. 20**: Accenture has not allocated time spent or costs incurred between matters that relate exclusively to RTRPs and matters relating to all tax return preparers or matters relating to tax return preparers other than RTRPs.

**Response**: The United States cannot admit or deny the request for admission because it lacks sufficient knowledge or information.

**Request for Admission No. 21**: Accenture has not allocated time spent or costs incurred between matters that relate exclusively to issuance or renewal of PTINs and other matters.

**Response**: The United States cannot admit or deny the request for admission because it lacks sufficient knowledge or information.

**Request for Admission No. 22**: Accenture has not allocated time spent or costs incurred between matters that relate exclusively to PTIN issuance and matters relating to PTIN renewal.

**Response**: The United States cannot admit or deny the request for admission because it lacks sufficient knowledge or information.

**Request for Admission No. 23**: Treasury has not allocated time spent or costs incurred between matters that relate exclusively to RTRPs and matters relating to all tax return preparers or matters relating to tax return preparers other than RTRPs.

**Response**: Denied. Time spent by Chief Counsel employees working on each regulation project related to the Return Preparer Initiative was tracked separately. Additionally, certain contract-related expenses were allocated separately.

**Request for Admission No. 24**: Treasury has not allocated time spent or costs incurred between matters that relate exclusively to issuance or renewal of PTINs and other matters.

**Response**: Denied.

**Request for Admission No. 25**: Under final regulations designed to implement the Return Preparer Initiative, PTIN fees, which have been charged to all tax return preparers in the same amounts (i.e., $64.25 for issuance and $63 for renewal), were supposed to cover compliance checks and suitability checks to which only RTRPs were supposed to be subjected (under one set of such regulations).

**Response**: Denied.

**Request for Admission No. 26**: TIRNO-10C-00022 required Accenture to do many things other than issue and renew PTINs, including support development of a marketing outreach plan, provide a call center, maintain a system that would permit tax return preparers to change their account information (including phone number, mailing address and email address), tally continuing education (CE) hours with respect to RTRPs and compare them to requirements, maintain a database of IRS-authorized CE providers, and support tax compliance checks.

**Response**: The United States admits that TIRNO-10C-00022 required Accenture to perform various activities, including those listed except that CE hours were to be automatically tallied; otherwise denied because the activities listed are necessary parts of issuing and renewing a PTIN.

**Request for Admission No. 27**: Under the Return Preparer Initiative, an Enrolled Agent who does not prepare tax returns for compensation is required to have a PTIN and renew it each year.

**Response**: The United States admits that an applicant for enrollment as an enrolled agent upon examination must possess a PTIN.

**Request for Admission No. 28**: In accordance with final regulations issued in 2009, a tax return preparer need not include his identifying number (as specified in 26 U.S.C. § 6109(a)(4)) on the copy of the tax return supplied to the taxpayer.

**Response**: The United States admits that a tax return preparer need not include his identifying number on the copy of the return supplied to the taxpayer if the return preparer is filing the return with the IRS on behalf of the taxpayer; otherwise, denied.

Dated: November 6, 2015

CAROLINE D. CIRAOLO
Acting Assistant Attorney General

*/s/ Joseph E. Hunsader*

JOSEPH E. HUNSADER
CHRISTOPHER J. WILLIAMSON
VASSILIKI E. ECONOMIDES
Trial Attorneys
U.S. Department of Justice, Tax Division
Post Office Box 227
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-6320
Facsimile: (202) 514-6866

OF COUNSEL:
CHANNING D. PHILLIPS
United States Attorney

13

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing UNITED STATES' ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES was served on November 6, 2015 by email to the following:

Allen Buckley
The Law Office of Allen Buckley LLC
2802 Paces Ferry Road
Suite 100-C
Atlanta, GA 30339

William H. Narwold
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103

Nathan D. Finch
Elizabeth Smith
MOTLEY RICE LLC
3333 K Street NW, Suite 450
Washington, DC 20007

Deepak Gupta
Jonathan E. Taylor
Peter Conti-Brown
GUPTA WESSLER PLLC
1735 20th Street, NW
Washington, DC 20009

Christopher S. Rizek
Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005

/s/ *Vassiliki E. Economides*
Vassiliki E. Economides
Trial Attorney U.S. Dept. of Justice

14