# EXHIBIT CO



Deposition of:

# Diann M. Wensing

*June 16, 2021*

In the Matter of:

# Steele v. United States of America

Veritext Legal Solutions
800.743.DEPO (3376) | Calendar-carolinas@veritext.com |
www.veritext.com

Case 1:14-cv-01523-RCL   Document 186-20   Filed 05/12/22   Page 3 of 9
Diann M. Wensing                                      June 16, 2021
Steele v. United States of America

Page 11

1              Yes.
2         Q.   What were your responsibilities as far
3    as the return preparer implementation?
4         A.   For the Implementation Team, I was
5    responsible for the design.  And I say responsible
6    for, I -- I was the first drafter of the design of
7    compliance suitability and Complaint Referrals.
8         Q.   What do you mean by first drafter?
9         A.   Well, I don't have the authority to
10   approve anything.  I can only propose what I think
11   should -- should happen -- but I am not a -- I
12   wasn't a director, I don't have the authority to
13   approve anything.
14        Q.   Did you come up with that first draft
15   of the Organization for Compliance Suitability and
16   Complaint Referrals when you were still with SBSE?
17        A.   It would have -- yes, it would have
18   been the Implementation Team.
19        Q.   After you -- excuse me, after you
20   joined RPO as the head of Compliance & Enforcement,
21   at some point in time your title changed and the
22   name of that organization changed from Compliance &
23   Enforcement just to Compliance, correct?
24        A.   Yes.
25        Q.   When was that?

```
 1            A.   I'm not sure.
 2            Q.   Why was the "and enforcement" dropped
 3    from the name?
 4            A.   We have no enforcement, or RPO had no
 5    enforcement authority under Title 26.
 6            Q.   Who had the enforcement authority under
 7    Title 26?
 8            A.   Any organization or BOD that is a Title
 9    26 organization; SBSE, W&I, any of the others that
10    are formed under Title 26.
11            Q.   You say formed under Title 26.  What
12    was RPO formed under?
13            A.   Title 31.
14            Q.   What's Title 31?
15            A.   Oh, I have no idea.  I couldn't tell
16    you.
17                 MS. OLIVER:  Ebony, can you go ahead
18    and mark Tab 1, please?
19                 MS. BOBBITT:  Okay.
20                 MS. OLIVER:  Actually, you know what,
21    sorry, hang on.
22                 We put -- we put the draft in your
23    binders, because we didn't get the final until
24    after the binders had been created, and I need to
25    mark the final instead of the draft.  So if you can
```

Case 1:14-cv-01523-RCL   Document 186-20   Filed 05/12/22   Page 5 of 9
Diann M. Wensing                                           June 16, 2021
Steele v. United States of America

Page 13

1      just give me a minute.
2                Charlotte, can you tell me what we're
3      starting with?
4                MS. LOPER:  I think Exhibit 23.
5                MS. OLIVER:  Okay.  Sorry for the
6      delay, folks.
7                MS. LOPER:  Meghan, Tab 1 in Exhibit
8      Share was the final version.
9                MS. OLIVER:  Oh, it was?
10               MS. LOPER:  Yeah.  Ebony corrected it,
11     that's all.
12               MS. OLIVER:  Okay.  Well, then, Ebony,
13     why don't you go ahead and mark Tab 1 if it's the
14     final.
15               MS. BOBBITT:  Okay.
16               MS. OLIVER:  More on top of it than I
17     am, no surprise there.  But it will be Tab 1 in
18     your binder, unless the final changed dramatically.
19               MS. BOBBITT:  It's been marked.
20               (EXHIBIT 23, (Tab 1) Steele Testimony
21     Authorization dated 6/14/2021- Diann Wensing, was
22     marked for identification.)
23     BY MS. OLIVER:
24          Q.   Okay.  Ms. Wensing, can you take a look
25     at -- do you have Exhibit Share up?

Case 1:14-cv-01523-RCL   Document 186-20   Filed 05/12/22   Page 6 of 9
Diann M. Wensing                                          June 16, 2021
Steele v. United States of America

Page 58

1      Q.   The next bullet is Liska Foss,
2  Referrals?
3      A.   Yes.
4      Q.   Did Referrals became Complaint
5  Referrals within RPO?
6      A.   Yes.
7      Q.   The next sort of main bullet, the --
8  the solid black bullet is Bob Johnson, Professional
9  Designation and Ethics?
10     A.   Yes.
11     Q.   Was that a function performed by RPO?
12     A.   That would move to Suitability, yes.
13     Q.   That included professional designation
14  checks?
15     A.   At this point I'm not sure they were
16  there yet.  I don't know.
17     Q.   What do you understand the reference to
18  ethics to mean?
19     A.   I would -- I don't know what they're
20  talking about there.
21     Q.   The next main bullet is Carlos Zepeda,
22  Title 26.
23          Do you see that?
24     A.   Yes.
25     Q.   Do you know where within the IRS

1    Carlos Zepeda worked?
2         A.   He was either SBSE or LB&I.
3         Q.   What does LB&I stand for?
4         A.   Large Business -- LB&I -- Large
5    Business and -- International?  Yeah, I think it's
6    international.
7         Q.   The third bullet under Carlos Zepeda
8    says, Promote return compliance through a mix of
9    education and enforcement activities.
10             What do you understand that to mean?
11        A.   I believe it was our first -- our first
12   round of thinking what we wanted the compliance
13   group to look like and those were items, these were
14   all items that these people brought up that they
15   thought should be going to the Return Preparer
16   Office, so I am -- I'm just assuming that that's
17   what he meant.
18        Q.   Did you know at this point in time that
19   RPO did not have Title 26 enforcement authority?
20        A.   No.
21        Q.   When did you learn that RPO did not
22   have Title 26 enforcement authority?
23        A.   When we started planning actions to
24   take, meaning penalty authority, that's when we
25   figured out that we didn't -- that -- or at least I

Case 1:14-cv-01523-RCL   Document 186-20   Filed 05/12/22   Page 8 of 9
Diann M. Wensing                                           June 16, 2021
Steele v. United States of America

Page 60

1    was the third individual who was in charge of
2    compliance on the implementation.  So when I came
3    in, I was under the assumption we were under Title
4    26, and I found out we were under Title 31, which
5    does not allow us to assess penalties.
6         Q.   When did you learn that?
7         A.   Shortly after.  Probably when we
8    started develop -- developing the activities of
9    what Compliance & Enforcement was going to do, it
10   was clear we did not have penalty authority.
11        Q.   Was that before or after this meeting
12   in January of 2011?
13        A.   Probably after.  I couldn't say for
14   certain, but I -- I believe it was after.
15        Q.   How did you learn that RPO did not have
16   enforcement authority under Title 26?
17        A.   When -- when -- when I was told that in
18   order to have penalty authority we needed to get --
19   do delegation orders to obtain Title 26 authority,
20   so --
21        Q.   Did you have --
22             Sorry, I didn't mean to -- didn't mean
23   to interrupt.
24        A.   No problem, I'm done.
25        Q.   Did RPO ever try to get delegation

1    orders to obtain Title 26 authority?
2         A.   Yes, we did.
3         Q.   When was that?
4         A.   I would say in 2012, 2011 or 2012 right
5    at -- at the beginning.  Dave Williams was still
6    the director.
7         Q.   How does that process work, this
8    delegation order process?
9         A.   The delegation orders, Compliance wrote
10   the delegation requests for the delegation orders,
11   and then they go to the director and then they go
12   to the Commissioner of Services and Enforcement for
13   approval.
14        Q.   And they're either -- those delegation
15   requests are then either approved or denied by the
16   Commissioner of Services and Enforcement?
17        A.   Yes.
18        Q.   And the delegation requests made by
19   Compliance & Enforcement were denied?
20        A.   I don't know where they -- where it
21   stopped.  I don't know if -- I can't say for
22   certain the commissioner ever even saw them.  I
23   sent them to the director, and we were told we
24   would not be getting delegation authority.
25        Q.   You sent them to the Director of RPO?