# EXHIBIT CU



United States Government Accountability Office

## Testimony before the Committee on Finance, U.S. Senate

**For Release on Delivery**
**Expected at 10:00 a.m. EDT**
**Tuesday, April 8, 2014**

DRAFT

# PAID TAX RETURN PREPARERS

# In a Limited Study, Preparers Made Significant Errors

## Statement of James R. McTigue, Director of Strategic Issues

Notice:
This draft is
restricted to official
use only.

This draft report is being provided to obtain advance review and comment. It has not been fully reviewed within GAO and is subject to revision.

Recipients of this draft must not, under any circumstances, show or release its contents for other than official review and comment. It must be safeguarded to prevent improper disclosure. This draft and all copies remain the property of, and must be returned on demand to, the Government Accountability Office.

**GAO-14-479T**

**DRAFT**

USA-0025921

DRAFT

This is a work of the U.S. government and is not subject to copyright protection in the
United States. The published product may be reproduced and distributed in its entirety
without further permission from GAO. However, because this work may contain
copyrighted images or other material, permission from the copyright holder may be
necessary if you wish to reproduce this material separately.

**DRAFT**

USA-0025922



# GAO Highlights

Highlights of GAO-14-467T, a testimony before the Committee on Finance, U.S. Senate

**April 2014**

# PAID TAX RETURN PREPARERS

## In a Limited Study, Preparers Made Significant Errors

## Why GAO Did This Study

For tax year 2011, 56 percent of about 145 million individual tax returns were completed by a paid preparer. The IRS has long recognized that preparers' actions have an enormous effect on its ability to administer tax laws effectively and collect the revenue that funds the government. Likewise, many taxpayers rely on preparers to provide them with accurate, complete, and fully compliant tax returns.

GAO was asked to review the oversight and service quality of paid preparers. This testimony examines: (1) how preparers are regulated by IRS and (2) the characteristics of tax returns completed by preparers based on products GAO issued from April 2006 through August 2008 and work conducted from November 2013 to April 2014. GAO reviewed laws, regulations and other guidance and interviewed IRS officials. GAO analyzed IRS Statistics of Income data from tax year 2011, the most recent data available, and the NRP database, which broadly tracks compliance. To gain insight on the quality of service provided, GAO conducted 19 undercover site visits to commercial preparers in a metropolitan area. Criteria to select the metropolitan area included whether the state regulates paid preparers and levies an income tax.

## What GAO Recommends

If Congress agrees that significant preparer errors exist, it should consider legislation granting IRS the authority to regulate paid tax preparers.

View GAO-14-467T. For more information, contact James R. McTigue, Jr. at (202) 512-9110 or mctiguej@gao.gov.

## What GAO Found

The Internal Revenue Service's (IRS) authority to regulate paid preparers is limited to certain preparers, such as attorneys and certified public accountants. Unenrolled preparers—who are not regulated by IRS—accounted for 55 percent of all preparers as of March 2014. In 2010, IRS initiated steps to regulate unenrolled preparers; however, the courts ruled that IRS lacked the authority.

GAO found significant preparer errors during undercover site visits to 19 randomly selected preparers—a sample which cannot be generalized. Refund errors in the site visits varied from giving the taxpayer $52 less to $3,718 more than the correct refund amount. Only two of 19 preparers calculated the correct refund amount.

**Refund Amounts Over or Under the Correct Amount**



Source: GAO analysis.

The quality and accuracy of tax preparation varied. Seventeen of 19 preparers completed the correct type of tax return. However, common errors included:

- not reporting non-W2 income, such as cash tips, in 12 of 19 site visits;
- claiming an ineligible child for the Earned Income Tax Credit (EITC) in 3 of 10 site visits where applicable;
- not asking the required eligibility questions for the American Opportunity Tax Credit; and
- not providing an accurate preparer tax identification number.

GAO found that preparers made similar errors in its analysis of IRS's National Research Program (NRP) database. GAO analysis of NRP data from tax years 2006 through 2009 showed that both individuals and preparers make errors on tax returns. Errors are estimated based on a sample of returns, which IRS audits to identify misreporting on the returns. Tax returns prepared by preparers had a higher percent of errors—60 percent—than returns done by the taxpayer—50 percent. Errors refer to changes either to the tax due or refund amount. These results are consistent with the findings in GAO's undercover visits.

USA-0025923

**DRAFT**

**PAID TAX RETURN PREPARERS:  In a Limited Study, Preparers Made Significant Errors**

Mr. Wyden, Ranking Member Hatch and Members of the Committee:

I am pleased to be here today to discuss the quality of services provided by paid preparers. Paid preparers play an integral role in our voluntary tax system.  Millions of taxpayers rely on paid preparers to provide them with accurate, complete, and fully compliant tax returns. The IRS has long recognized that paid preparers' actions have an enormous impact on its ability to administer tax laws effectively and collect the revenue that funds the government, including minimizing the estimated \$385 billion net tax gap.[1]  In tax year 2011—the most recent data available—paid preparers completed approximately 56 percent of all individual tax returns filed. A large segment of the preparer industry is not subject to testing or education requirements.

In 2006, we reported to this Committee on the results of an investigation where we identified mistakes in 19 out of 19 of our visits to paid preparers working in commercial preparer offices.[2] Some of the mistakes were significant, either exposing taxpayers to serious IRS enforcement action or resulting in unwarranted refunds of up to \$2,000.  At the request of this Committee, we once again went undercover in February of this year and once again found significant errors that I will highlight today.

My statement today is based on reports issued from April 2006 through August 2008 and work recently completed at the request of the Committee.[3] Our objectives were to (1) examine how paid preparers are regulated by IRS and applicable states (i.e., states that regulate paid preparers) and (2) evaluate characteristics of tax returns completed by paid preparers.

In preparing this statement, we did the following work from November 2013 to April 2014:

- We reviewed laws, regulations, and other guidance and interviewed IRS officials.

- We analyzed IRS's Statistics of Income (SOI) individual taxpayer database for tax year 2011, when the most recent data were available, to determine income levels of taxpayers that used paid preparers and characteristics of the tax returns that these taxpayers filed.

- We had tax returns prepared for us at 19 randomly selected locations of several commercial preparers throughout a major metropolitan area. We chose the major metropolitan area based on criteria such as (1) location in a state that does not regulate paid preparers, (2) presence of multiple commercial preparers, and (3) location in a state that does not levy an income tax. Our investigators posed as taxpayers and asked paid preparers to prepare, but allow us to file, our federal tax returns under one of two scenarios, as described later in this testimony. The two tax scenarios incorporated a

---

[1]The net tax gap is the difference between taxes owed and taxes paid after accounting for IRS enforcement actions. The amount listed above is for tax year 2006, the most recent IRS tax gap estimate.

[2]See GAO, *Paid Tax Return Preparers: In a Limited Study, Chain Preparers Made Serious Errors,* GAO-06-563T (Washington, D.C.: Apr.4, 2006).

[3]See GAO, *Tax Preparers: Oregon's Regulatory Regime May Lead to Improved Federal Tax Return Accuracy and Provides a Possible Model for National Regulation,* GAO-08-781 (Washington, D.C.: Aug. 15, 2008).

GAO-14-479T

USA-0025924

**DRAFT**

range of commonly used IRS forms and lines on the Form 1040. Because our 19 site visits are limited in size, results cannot be used to generalize our findings to the retail tax preparation industry. We visited commercial paid preparers with ten or more locations. We did not visit any law firms, CPA firms, or single-office tax return preparation businesses.

- We developed correct tax returns for each scenario with input from tax experts. Specifically, we consulted with the Joint Committee on Taxation to ensure the responses prepared for each scenario were accurate and consistent with the tax code.[4]  For each of the 19 visits, we then compared the tax returns produced by the paid preparers with those we prepared. To minimize any potential for paid preparers to have legitimately different results from our returns, we provided guidance to our investigators for answering the preparers' questions consistently with the facts we used in preparing our mock returns.

- We analyzed IRS's National Research Program (NRP) database, which broadly tracks compliance, for tax year 2006 to tax year 2009 (the most recent years available) to compare the estimated compliance found on returns completed by paid preparers and those that were not.[5]

We conducted all of our work in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives.

Our investigative work was conducted from January to February 2014 in accordance with standards prescribed by the Council of the Inspectors General on Integrity and Efficiency. During our investigation, we conducted 19 undercover site visits.

We provided IRS with a statement of fact for technical review…

---

[4]The Joint Committee on Taxation is a nonpartisan committee of the U.S. Congress.  Its professional staff consists of economists, attorneys, and accountants, who assist Members of the majority and minority parties in both houses of Congress.  The Committee is a respected source of expertise on tax legislation.

[5]IRS uses NRP data to analyze taxpayer compliance and to develop workload selection formulas.

GAO-14-479T

USA-0025925

**DRAFT**

**IRS's Authority to Regulate Paid Preparers Is Limited, Although Use of Preparers is High**

A paid preparer is simply anyone who is paid to prepare, assist in preparing, or review a taxpayer's tax return. In this statement, we refer to two categories of paid preparers—tax practitioners and unenrolled preparers. CPAs, attorneys, and enrolled agents are tax practitioners.[6] Tax practitioners differ from unenrolled preparers in that they can practice before IRS, which includes the right to represent a taxpayer before the IRS, prepare and file documents with IRS for the taxpayer, and correspond and communicate with IRS. We use the term unenrolled preparer to describe the remainder of the paid preparer population. In most states, anyone can be an unenrolled preparer regardless of education, experience or other standards.

Tax practitioners are subject to standards of practice under the Department of Treasury Circular No. 230.[7] Enrolled agents are required to pass a three part examination and complete annual continuing education, while attorneys and CPAs are licensed by states but are still subject to Circular 230 standards of practice if they practice before IRS. Unenrolled preparers are not subject to these requirements.

In April 2006, we made a recommendation to IRS to conduct research on the extent to which paid preparers meet their responsibility to file accurate and complete tax returns.[8] To address this recommendation, IRS conducted a study of the quality of paid preparers and issued a report recommending increased oversight of paid preparers.[9] Recommendations included (1) mandatory registration, (2) competency testing and continuing education, and (3) holding all paid preparers—including unenrolled preparers—to Circular 230 standards of practice. IRS implemented each recommendation through regulations issued in September 2010 and June 2011. The June 2011 regulations amended Circular 230 and established a new class of practitioners called "registered tax return preparers." IRS intended for these new requirements to support tax professionals, increase confidence in the tax system, and increase taxpayer compliance.

Prior to the deadline for unenrolled preparers to pass a competency exam or complete continuing education credits, a complaint was filed in the U.S. District Court for the District of Columbia (District Court) challenging IRS's authority to regulate preparers under Circular 230.[10] In January 2013, the District Court concluded that IRS lacked the statutory authority to regulate all paid preparers, and ruled that IRS could not continue implementing its new testing and CPE requirements. IRS appealed the order, but it was affirmed in February 2014 by the U.S. Court of Appeals for the District of Columbia Circuit (Court of Appeals). Figure 1 provides a summary timeline of IRS's implementation of paid preparer requirements and legal proceedings.[11] The President's Fiscal Year 2015 budget, released in March 2014, included a proposal to explicitly provide the Secretary of the Treasury and IRS with the authority to regulate all paid preparers.

---

[6]Tax practitioners also include Enrolled Retirement Plan Agents and Enrolled Actuaries.

[7]Circular No. 230, *Regulations Governing Practice before the Internal Revenue Service.*

[8] GAO-06-563T.

[9]IRS, Return Preparer Review, IRS Publication 4832 (December 2009).

[10]According to IRS officials, approximately 84,148 competency exams were taken prior to the District Court's decision.

[11]*Loving v. IRS*, 917 F. Supp. 2d 67 (D.D.C. 2013), *aff'd* 742 F.3d 1013 (D.C. Cir. 2014).

GAO-14-479T

USA-0025926

**DRAFT**

**Figure 1: Timeline of IRS Paid Preparer Regulations**



Source: GAO review of laws and regulations.

Notes:[a]Certain paid preparers became registered tax return preparers under an IRS program that IRS is no longer able to enforce due to a District Court injunction. We refer to this group as unenrolled preparers.

Although the District Court determined that IRS does not have the authority to regulate unenrolled preparers, the decision did not affect the requirement that all paid preparers obtain a Preparer Tax Identification Number (PTIN) and renew their PTIN annually.[12] As of March 16, 2014 approximately 676,000 paid preparers have registered or renewed their PTINs.[13] As shown in figure 2, the two largest categories of PTIN registrations and renewals are unenrolled preparers—55 percent—and CPAs—31 percent.

---

[12]Unlike the majority of the paid preparer regulations, IRS has the statutory authority to require that tax return preparers obtain a PTIN under 26 U.S.C. § 6109.

[13]This number represents most of the paid preparers who are expected to register this year and is consistent with the number of registrations in 2012 and 2013.

GAO-14-479T

USA-0025927

**DRAFT**

**Figure 2: Number of PTINs by Type of Paid Preparer for Processing Year 2014**



Source: IRS, Tax Professional PTIN System (TPPS). Data as of March 16, 2014.
Notes: Paid preparers may have more than one credential.
[a]Other category includes Enrolled Retirement Plan Agents, Certifying Acceptance Agents, and Enrolled Actuaries.

## Four States Regulate Paid Preparers, but Requirements Varies

Currently, Oregon, Maryland, California, and New York regulate paid preparers. Both Oregon and California began to regulate paid preparers in the 1970s, while Maryland and New York's programs were implemented more recently.  Further, the programs themselves involve different types of requirements for paid preparers as illustrated in table 1.

**Table 1: Comparison of State-Level Paid Preparer Requirements**

| Requirements | Oregon | Maryland | California | New York |
|---|---|---|---|---|
| Registration | Yes | Yes | Yes | Yes |
| Qualifying education | Yes | Yes | Yes | No |
| Continuing education | Yes | Yes | Yes | No |
| Testing | Yes | Yes[b] | No | No |
| Date of implementation | 1973 | 2008 | 1974 | 2009 |

Source: GAO review of state laws.
Note: [a]Qualifying education requirements in Maryland do not require prior tax education. [b]Paid preparers in Maryland do not have to pass a qualifying test until after December 31, 2014.

In August 2008—prior to Maryland and New York implementing paid preparer requirements— we reported on state-level paid preparer requirements in California and Oregon.[14] Specifically, we reported that both California and Oregon have requirements that paid preparers must meet before preparing returns; of the two states, Oregon has more stringent requirements.

---

[14]See GAO-08-781.

USA-0025928

**DRAFT**

According to our analysis of IRS tax year 2001 NRP data, Oregon returns were more likely to be accurate while California returns were less likely to be accurate compared to the rest of the country after controlling for other factors likely to affect accuracy. Specifically, in August 2008, we found that the odds that a return filed by an Oregon paid preparer was accurate were 72 percent higher than the odds for a comparable return filed by a paid preparer in the rest of the country.[15]

<u>Use of Paid Preparers Varied by Complexity of Tax Return, but Often Resulted in Larger Refunds</u>

According to IRS's SOI data, an estimated 81.2 million or 56 percent of approximately 145 million individual tax returns filed for tax year 2011 were completed by a paid preparer. Estimated use of paid preparers was fairly evenly distributed across income levels, and as table 2 shows, taxpayers with more complex returns used preparers the most. For example, preparers were more commonly used by taxpayers who filed the Form 1040 as opposed to the 1040EZ or 1040A and those claiming itemized deductions or the Earned Income Tax Credit (EITC).

**Table 2: Individual Taxpayers' Estimated Use of Paid Preparers, by Various Groupings, Tax Year 2011**

| Taxpayer grouping and subgrouping | Estimate (percent) |
|---|---|
| **Adjusted gross income levels** | |
| $0–20,000 | 54 |
| 20,001–40,000 | 54 |
| 40,001–60,000 | 56 |
| 60,001–80,000 | 59 |
| 80,001–100,000 | 58 |
| Over 100,000 | 63 |
| All adjusted gross income levels | 56 |
| **Type of return** | |
| Form 1040EZ | 34 |
| Form 1040A | 43 |
| Form 1040 | 63 |
| **Filing status** | |
| Single | 50 |
| Head of household | 61 |
| Married filing jointly | 62 |
| **Type of deductions** | |
| Standard | 53 |
| Itemized | 63 |
| **Earned Income Tax Credit** | |
| Not claimed | 55 |
| Claimed | 59 |

Source: GAO analysis of SOI data for tax year 2011.

---

[15]These results are consistent with, but do not prove, that Oregon's regulations lead to some increased tax return accuracy.

GAO-14-479T

USA-0025929

**DRAFT**

Across all income levels taxpayers who used paid preparers had a higher median refund than those who prepared their own returns at statistically significant levels, as shown in table 3.[16] Specifically, individual taxpayers who used a paid preparer had an estimated median tax refund across all adjusted gross income levels that was 36 percent greater than taxpayers who prepared their own return.

**Table 3: Estimated Median Refunds on Returns Filed by Individual Taxpayers Using Paid Preparers and Those Preparing Their Own Returns, Tax Year 2011**

| Income level | Preparing own return | Using a paid preparer |
|---|---|---|
| $0-20,000 | $1,499 | $2,125 |
| 20,001-40,000 | 857 | 1,114 |
| 40,001-60,000 | 1,606 | 2,184 |
| 60,001-80,000 | 1,949 | 2,213 |
| 80,001-100,000 | 2,208 | 2,700 |
| Over 100,000 | 2,499 | 2,971 |
| All adjusted gross income levels | 3,143 | 4,277 |

Source: GAO analysis of IRS SOI data for tax year 2011.

Notes: All estimates derived from samples used in this report have 95 percent confidence intervals that are within +/- 10 percentage points of the estimate itself, unless otherwise specified. All other estimates in this report have 95 percent confidence intervals that are within +/- 10 percent of the estimate itself, unless otherwise specified.

**Limited Investigation and IRS Data Reveal Significant Errors in Returns Prepared by Paid Preparers**

Taxpayers rely on paid preparers to provide them with accurate, complete, and fully compliant tax returns; however, tax returns prepared for us in the course of our investigation often varied widely from what we determined the returns should and should not include, sometimes with significant consequences. Many of the problems we identified would put preparers, taxpayers, or both at risk of IRS enforcement actions. The National Research Program's review of tax returns from 2006 to 2009 also found many errors on returns prepared by paid preparers, and some of those errors were more common on paid prepared returns than on self-prepared returns.

Nineteen Site Visits Revealed Significant Paid Preparer Errors

Nearly all of the returns prepared for our undercover investigators were incorrect to some degree, and several of the preparers gave us incorrect tax advice, particularly when it came to reporting non-W-2 income and the EITC. Only 2 of 19 tax returns showed the correct refund amount. While some errors had fairly small tax consequences, others had very large consequences resulting in the overstatement of refunds from $654 to $3,718.

---

[16] All percentage estimates derived from samples used in this report have 95 percent confidence intervals that are within +/- 10 percentage points of the estimate itself, unless otherwise specified. All other estimates in this report have 95 percent confidence intervals that are within +/- 10 percent of the estimate itself, unless otherwise specified.

GAO-14-479T

USA-0025930

**DRAFT**

Our undercover investigators visited 19 randomly selected tax preparer offices—a non-generalizeable sample—to have taxes prepared. We developed two taxpayer scenarios based on common tax issues that we refer to as our "Waitress Scenario" and our "Mechanic Scenario." Key characteristics of each scenario are summarized in table 4.

**Table 4: Key Characteristics of Taxpayer Scenarios**

| Waitress Scenario | Mechanic Scenario |
|---|---|
| • Single mother whose occupation is a waitress with cash and noncash tips.<br>• One child who lived with her during 2013 and one child who did not—both under 15 years of age.<br>• Deductions include student loan interest.<br>• Eligible to claim the Earned Income Tax Credit (EITC).<br>• This scenario was used in 10 site visits. | • Married couple filing jointly; husband is a mechanic and his wife is a homemaker.<br>• Three children live at home aged 7, 15 and 20.<br>• Itemized deductions include mortgage interest, state sales tax, and charitable gifts.<br>• Both husband and wife have non-W2 business income, including mileage reimbursement.<br>• This scenario used in 9 site visits. |

Source: GAO analysis.

Errors in Tax Preparation Resulted in Inaccurate Refund Amounts

Refund amounts derived by the 19 preparers who prepared tax returns based on our two scenarios varied greatly. For our waitress scenario, the correct refund amount was $3,804, however, refund amounts on returns prepared for our undercover investigator ranged from $3,752 to $7,522. Similarly, the correct refund amount for the mechanic scenario was $2,351, however, refunds ranged from $2,351 to $5,632.  Paid preparer errors generated during our 19 non-generalizeable visits resulted in refund amounts that varied from giving the taxpayer $52 less to $3,718 more than the correct amount. Of the 19 paid preparers we visited, 2 determined the correct refund amount: one correct tax return was prepared for the waitress scenario and one for the mechanic scenario. An additional 4 paid preparers calculated tax returns within $52 of the correct refund amount. On the remaining 13 tax returns—7 for the waitress scenario and 6 for the mechanic scenario—preparers overestimated the total refund by $100 or more. Figure 4 shows the amount of the refund over and under the correct refund amount.

USA-0025931

**DRAFT**

**Figure 4: Refund Amounts Over or Under Correct Amount**



Notes: ᵃWe determined that the tax return with an estimated refund amount of $1 over the correct amount was calculated correctly. The difference is attributable to a rounding error.

In some instances, paid preparers made similar errors across multiple site visits. For example, on the waitress return paid preparers made two of the same errors: (1) not claiming the unreported cash tips; and (2) claiming both children as eligible to receive the EITC. These errors resulted in clusters of overstated refunds. In four site visits, paid preparers not claiming unreported cash tips resulted in a refund amount overstated by $654. In three site visits, paid preparers made both errors, which resulted in a refund amount overstated by $3,718. In the mechanic scenario, paid preparers that did not include side income resulted in tax refunds that ranged from $2,677 to $3,281 above the correct refund amount.

Quality and Accuracy of Tax Preparation Varied Based on the Scenario and Specific Form or Line Number

A majority of the 19 paid preparers we visited made errors on common tax return issues; on some lines of the tax return most paid preparers were correct. Some of the most significant errors involved paid preparers (1) not reporting non-W2 income, such as unreported cash tips, in 12 of 19 site visits; (2) claiming an ineligible child for the Earned Income Tax Credit (EITC) in 3 of 10 site visits; and (3) not asking the required eligibility questions for the American Opportunity Tax Credit. Such errors could lead taxpayers to underpay their taxes and may expose them to IRS enforcement actions. In contrast, in some instances the majority of preparers took the right course of action. For example, 17 of 19 paid preparers completed the correct type of tax return and 18 of 19 preparers correctly determined whether to itemize or claim the standard deduction. Our results are summarized in figure 5.

9                                                                    GAO-14-479T

USA-0025932

**DRAFT**

**Figure 5: Summary of Paid Preparer Site Visit Results**



| Form or Line Number | Results |
| --- | --- |
| Type of tax return | |
| Ordinary dividends Qualified dividends, and Capital gains (Lines 9a-b, and Line 13) | |
| Total income (Line 22) | |
| Itemized or standard deduction (Line 40) | |
| Credit for child and dependent care expenses—Form 2441 (Line 48) | |
| Student loan interest deduction (Line 33) | |
| State and local general sales tax (Schedule A—Line  5b) | |
| Unreported Social Security and Medicare tax—Form 4137 (Line 57) | |
| Earned Income Credit (Line 64a) | |
| American Opportunity Tax Credit—Form 8863 (Line 66) | |
| Refund amount (Line 74a) | |

Waitress scenario
Completed correctly
Completed incorrectly
Not completed

Mechanic scenario
Completed correctly
Completed incorrectly
Not completed

Source: GAO analysis.

**Type of tax return.** Paid preparers completed the correct type of tax return—the Form 1040—for 17 of 19 site visits. Two paid preparers incorrectly completed the Form 1040A for the waitress scenario. The Form 1040A should not have been used because the waitress received tip income that was not reported to her employer.[17]

**Dividend and capital gains income.** Preparers recorded the income correctly in 8 out of 9 returns. The mechanic received qualified and ordinary dividends, and capital gains from a mutual fund that were reinvested into the fund. This income was documented on a third party reporting form; the Form 1099-DIV. According to IRS guidance, a Form 1099-DIV must be filed for any person who receives dividends of $10 or more, including for funds that are reinvested.

---

[17]According to IRS guidance, Form 1040 and Form 4137 must be used if tip income not reported to the employer is $20 or more in any month.

GAO-14-479T

USA-0025933

**DRAFT**

---

**Mechanic Scenario, Site Visit #1**

One paid preparer who did not accurately record the investment income said that it was not necessary to include the income that was reinvested in a mutual fund.

---

**Total income.** Of the 10 waitress returns prepared for us, 3 included the unreported cash tip income. However, only one of the three returns included the correct amount of tip income. Total income for the waitress scenario should include income documented on the Form W-2, as well as the amount of unreported cash tip income offered by our investigator to the paid preparer during the site visit. The two returns that did not include the correct amount of tip income included lesser amounts.

---

**Waitress Scenario, Site Visit #5**

In response to the investigator mentioning her unreported cash tip income, one paid preparer told her that tips not included on the Form W-2 do not need to be reported.

---

Total income for the mechanic return should include non-Form W-2 business income—resulting from mechanic work and babysitting conducted outside of a formal employment arrangement—and income from ordinary dividends and capital gains. Of the 9 mechanic returns prepared for us, 4 returns included both the business income and the investment income. However, only 3 returns included the correct amounts of business and investment income.[18]

Incorrectly reporting income often resulted in cascading errors on other lines of the tax return. Tax returns that did not include side income had errors in credits that are calculated based on income. For example, if a paid preparer did not report side income in the mechanic scenario, the resulting total income would make the mechanic eligible for the EITC when he otherwise would not be eligible. Similarly, because two paid preparers incorrectly chose not to include unreported tip income for the waitress, they selected the wrong type of tax return, the Form 1040A.

---

**Mechanic Scenario, Site Visit #3 and #9**

Two paid preparers demonstrated what the refund amount would be if the side income were reported compared to if it were not reported. Both preparers did not record the side income.

---

**Itemized or standard deduction.** All but one of the 19 returns correctly recorded the most advantageous deduction for the two scenarios. According to IRS guidance, taxpayers should itemize deductions when the amount of their deductible expenses is greater than the standard deduction amount.  For the waitress scenario, the most advantageous deduction would be the standard deduction for head of household, and for the mechanic scenario, the itemized deductions were more advantageous. One paid preparer chose to use the standard deduction for the mechanic, even though it was

---

[18]The mechanic tax return should have included a Schedule C-EZ, Net Profit from Business, or a Schedule C, Profit or Loss from Business. The income also required a Schedule SE for self-employment taxes.

GAO-14-479T

USA-0025934

**DRAFT**

approximately $3,000 less than the total amount of the itemized deductions we included in the scenario.

**Child-care expenses.** All 19 paid preparers did not record child-care expenses because neither the waitress nor mechanic was eligible to receive the credit. While none of the paid preparers recorded the credit, the reasons the preparers cited were often incorrect. According to IRS guidance, a taxpayer must attempt to collect the Social Security number of his or her child-care provider, but if unsuccessful, can report that fact to IRS and still claim the credit.  For the waitress scenario, the reason that she was ineligible to claim the child-care expenses was that she did not attempt to get her child-care provider's Social Security number. Upon learning that she did not have the Social Security number of the provider, several of the paid preparers did not enter her child care expenses on her return.

IRS guidance states that qualified child-care expenses only include amounts paid while the taxpayer worked or looked for work. The mechanic and his wife were not eligible for the credit because the child-care expenses were incurred for running errands, and not so that either parent could work. Again, many tax preparers said that the reason the credit could not be claimed was because the mechanic did not have the child-care provider's Social Security number, not because he was otherwise ineligible.

**Student loan interest.** Eight of 10 paid preparers correctly included the deduction for student loan interest. The waitress's Form 1098-E shows the interest the lender received from the taxpayer on qualified student loans. A taxpayer receives a 1098-E if student loan interest of $600 or more is paid during the year.

**Sales tax deduction.** Seven out of 9 preparers correctly recorded sales tax as a deduction on the mechanic's tax return, however not all chose the most advantageous amount. According to IRS guidance, taxpayers who itemize deductions can choose whether to deduct local income taxes or sales taxes. Because the mechanic lived in a state that did not have income tax, sales tax should have been deducted. Of the 7 paid preparers that deducted sales taxes, only 2 recorded the amount that was most advantageous to the taxpayer. IRS provides an online calculator to help taxpayers estimate the amount of sales taxes they likely paid in a year.  To determine this estimate, taxpayers input basic information such as ZIP code and annual income in the calculator.  Five preparers chose amounts that were lower than the amount the calculator estimated.

**Social Security and Medicare tax on unreported tips.** Two of 10 paid preparers completed the Form 4137 and reported the amount of taxes owed on the tip income. Because the waitress received unreported cash tips, the amount of taxes owed on the unreported cash tip income should be calculated using the Form 4137.[19] However, one of the preparers included a lesser amount of tip income when performing the calculation, resulting in a smaller amount of taxes owed. Another preparer reported the tip income by incorrectly completing a Schedule C, Profit or Loss from Business, and a Schedule SE for self-employment taxes.

**Earned Income Tax Credit.** The EITC on line 64a was another area where paid preparers made mistakes that resulted in a significant overstatement of the refund. Of

---

[19]Form 4137, Social Security and Medicare Tax on Unreported Tip Income.

GAO-14-479T

USA-0025935

**DRAFT**

the 10 returns prepared for the waitress, 3 reported two children on the Schedule EIC, instead of the one child who lived with the taxpayer in 2013 and was eligible for the EITC.[20]

---

**Waitress Scenario, Site Visit #4**

One paid preparer questioned the investigator on the amount of time her older child lived with her. The investigator responded that the older child stayed with her on weekends. The paid preparer discussed the investigator's response with the office manager and then stated that she can claim the child for the EITC if no one else does, which was not correct.

---

**American Opportunity Tax Credit.** All 9 paid preparers correctly chose the American Opportunity Tax Credit for the mechanic scenario.  The mechanic had a 20-year-old son attending a community college and paid for both his tuition and books. According to IRS guidance, to be eligible for this credit, a student must meet certain requirements including full-time enrollment at least half the year and no felony drug offense convictions. Although we instructed the investigator to respond to paid preparer inquiries such that his son met these requirements, some paid preparers did not ask the required questions to determine eligibility.

Improper Conduct May Subject Preparers to Internal Revenue Code Penalties

All paid preparers are subject to certain requirements in the Internal Revenue Code (IRC) and may be subject to penalties for non-compliance. For example, the IRC imposes monetary penalties on paid preparers who understate a taxpayer's tax liability due to willful or reckless conduct.  As shown in figure 6, in 12 out of 19 cases, paid preparers did not record additional side income not reported on W-2's and may be subject to this penalty. The IRC also requires that paid preparers sign the tax return and furnish an identifying number. In 3 of 19 cases, preparers did not meet this requirement. In addition, 3 preparers used a PTIN that did not belong to them and one used a fake PTIN.

Additionally, 3 out of 10 preparers in our study may be subject to a penalty for not meeting due diligence requirements when determining if both of the waitress's children qualified for the EITC. When considering the EITC, paid preparers must meet four due diligence requirements. Generally, if paid preparers file EITC claims, they must (1) ask all the questions to get the information required on Form 8867, Paid Preparers' Earned Income Credit Checklist; (2) compute the amount of the credit using the EITC worksheet from the Form 1040 instructions or a similar document; (3) ask additional questions when the information the client gives the preparer seems incorrect, inconsistent, or incomplete; and (4) keep a copy of Form 8867, the EITC worksheets, and other records used to compute the credit.

---

[20]IRS estimated that for fiscal year 2013 the level of improper overclaims for the EITC range from $13.3 to $15.6 billion of approximately $60.3 billion in total program payments. The projection of estimated overclaims for fiscal year 2013 is based on tax year 2009 reporting compliance study. See Department of Treasury Fiscal Year 2013 Agency Financial Report.

GAO-14-479T

USA-0025936

**DRAFT**

**Figure 6: Selected Internal Revenue Code Penalties**



Source: GAO analysis and Internal Revenue Code.

Because the returns we had prepared were not real returns and were not filed, penalties would not apply. However, we plan to refer the matters we encountered to IRS so that any appropriate follow-up actions can be taken.

<u>Fees Charged for Tax Preparation Varied Widely Across Paid Preparer Site Visits</u>

The fees charged for tax preparation services varied widely across the 19 visits, sometimes between offices affiliated with the same chain. Often, paid preparers either did not provide an estimate of the fees upfront or the estimate was less than the actual fees charged. In several instances, our investigators were able to negotiate a lower fee. Figure 6 shows the fees charged by each of the 19 paid preparers we visited for each scenario. For the waitress scenario, the final fees charged for tax preparation ranged from $160 to $408. For the mechanic scenario, the final fees charged for tax preparation ranged from $300 to $587. For the two correct tax returns that were prepared, the final fee charged was $260 for the waitress scenario and $311 for the mechanic scenario. Some paid preparers provided receipts that listed total charges that were higher than the "discounted" amount ultimately charged. For example, one preparer estimated the cost of services to be $794, but then charged the taxpayer $300.

Paid preparers provided various reasons as to the amount of the tax preparation fee, including, (1) the EITC form is the most expensive form to file, (2) the pricing and fees are at their peak from mid-January through February and then go down, and (3) there is a price difference depending if the tax return is completed in the morning or the evening.

GAO-14-479T

USA-0025937

**DRAFT**

**Figure 6: Fees Charged for Tax Preparation Services**



Source: GAO analysis.

IRS Data Suggest Errors on Paid Preparer Returns That Were Similar to Those Generated During Our Site Visits

As in our limited investigation, GAO estimates from NRP data suggest that tax returns prepared by paid preparers contained a significant number of errors.[21] As shown in table 5, returns prepared by a paid preparer showed a higher estimated error rate—60 percent—than returns prepared by the taxpayer—50 percent. Errors in this context changed either the tax due or the amount to be refunded. As noted before, it is important to remember that paid preparers are
used more often on more complicated returns than on simpler ones, although we were unable to gauge the full extent to which this might be true. Furthermore, errors on a return prepared by a paid preparer do not necessarily mean the errors were the preparer's fault; the taxpayer may be to blame. Preparers depend upon the information provided by the taxpayer.

**Table 5: Estimated Percentage of Individual Returns with Errors**

| Preparer type | Estimate (percent) |
|---|---|
| Prepared by a paid preparer | 60 |
| Prepared by the taxpayer | 50 |
| All returns | 55 |

Source: GAO analysis of IRS NRP data tax years 2006 through 2009.

Different rates of errors on paid prepared returns and self-prepared returns translated into different amounts that taxpayers misreport their liability. Specifically, the estimated median

[21]IRS National Research Program (NRP) data for tax years 2006 through 2009. All percentage estimates derived from samples used in this report have 95 percent confidence intervals that are within +/- 10 percentage points of the estimate itself, unless otherwise specified. All other estimates in this report have 95 percent confidence intervals that are within +/- 10 percent of the estimate itself, unless otherwise specified.

GAO-14-479T

USA-0025938

**DRAFT**

Misreported amount owed (liability?) was higher for paid prepared returns. For instance, as shown in table 6, it is estimated that taxpayers using a paid preparer misreport an estimated median of $354 in tax liability , compared with $169 for taxpayers preparing their own return.

**Table 6: Estimated Median Additional Taxes Owed on Individual Returns**

| Preparer type | Estimate | Lower bound | Upper bound |
|---|---|---|---|
| Prepared by a paid preparer | $354 | $337 | $377 |
| Prepared by the taxpayer | 169 | 155 | 184 |
| All returns | 263 | 245 | 281 |

Source: GAO analysis of IRS NRP data for tax years 2006 through 2009.

NRP estimates show that both individuals and paid preparers make errors on specific forms and lines of Form 1040 some of which we experienced in our undercover visits. Table 7 shows that in many instances, returns completed by a paid preparer are estimated to have  a greater percentage of errors compared to self-prepared returns. For example, of returns prepared by a paid preparer, 51 percent have an error on the EITC line compared to 44 percent of self-prepared tax returns. In total, for five line items we analyzed, the difference in the percent of errors on returns prepared by a paid preparer was statistically greater than the percent of errors on self-prepared returns. These line items include (1) the itemized or standard deduction; (2) business income; (3) total income; (4) the earned income tax credit; and (5) the refund amount. Differences between the percent of returns with errors on the student loan interest deduction line, the unreported Social Security and Medicare tax on tips line, and the education credit line were not statistically significant when comparing returns done by a paid preparer to those that were self-prepared.[22]

**Table 7: Estimated Percentages of Individual Returns Containing Specific Line Items with Errors**

| Form 1040 Line Item | Self-prepared returns (percent) | Returns done by a paid preparer (percent) |
|---|---|---|
| Itemized or standard deduction | 28 | 38 |
| Business income (or loss) from Schedule C or C-EZ | 73 | 77 |
| Total income | 36 | 44 |
| Student loan interest deduction | 30 | 34 |
| Unreported Social Security and Medicare tax on tips | 51 | 52 |
| Earned income tax credit | 44 | 51 |
| Education credit | 43 | 45 |
| Refund amount | 50 | 60 |

Source: GAO analysis of IRS NRP data for tax years 2006 through 2009.
Notes: All percentage estimates derived from samples used in this report have 95 percent confidence intervals that are within +/- 10 percentage points of the estimate itself, unless otherwise specified. All other estimates in this report have 95 percent confidence intervals that are within +/- 10 percent of the estimate itself, unless otherwise specified.

---

[22]All percentage estimates derived from samples used in this report have 95 percent confidence intervals that are within +/- 10 percentage points of the estimate itself, unless otherwise specified. All other estimates in this report have 95 percent confidence intervals that are within +/- 10 percent of the estimate itself, unless otherwise specified.

USA-0025939

**DRAFT**

**Conclusions**

Over half of all taxpayers rely on the expertise of a paid preparer to provide advice and help them meet their tax obligations. IRS regards paid preparers as a critical link between taxpayers and the government.  Consequently, paid preparers are in a position to have a significant impact on the federal government's ability to collect revenue and minimize the estimated $385 billion tax gap.  As of March 2014, 55 percent of paid tax preparers are unenrolled preparers, not regulated by IRS.  Undoubtedly, many paid preparers do their best to provide their clients with tax returns that are both fully compliant with the tax law and cause them to neither overpay nor under pay their federal income taxes.  However, IRS data, which more broadly track compliance, show preparers made serious errors, similar to the findings from our site visits. The higher level of accuracy of Oregon's tax returns compared to the rest of the country suggests that a robust regulatory regime involving paid preparer registration, qualifying education, testing, and continuing education may help facilitate improved tax compliance. The courts determined that IRS does not have sufficient authority to regulate unenrolled preparers. In March 2014, the Administration proposed that the Treasury and IRS be granted the authority to explicitly regulate all paid preparers. Providing IRS with the necessary authority for increased oversight of the paid preparer community will help promote high quality services from paid preparers, will improve voluntary compliance, and will foster taxpayer confidence in the fairness of the tax system.

**Matter for Congressional Consideration**

If Congress agrees that significant paid preparer errors exist, it should consider legislation granting IRS the authority to regulate paid tax preparers.

Chairman Wyden, Ranking Member Hatch, and Members of the Committee, this concludes my statement. I would be pleased to respond to any questions that you may have.

For questions about this statement, please contact James R. McTigue at (202) 512-9110 (mctiguej@gao.gov). Individuals making key contributions to this testimony include; Wayne McElrath, Director; Libby Mixon, Assistant Director; Gary Bianchi, Assistant Director; Amy Bowser; Sara Daleski; Mary Diop; Rob Graves; Barbara Lewis; Steven Putansu; Ramon Rodriguez; Erinn Sauer; and Julie Spetz.

(451077)

USA-0025940