## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ADAM STEELE, BRITTANY MONTROIS, and JOSEPH HENCHMAN, on behalf of themselves and all others similarly situated**,

    *Plaintiffs,*

**v.**

**UNITED STATES OF AMERICA**,

    *Defendant*.

**Case No. 1:14-cv-1523-RCL**

## <u>MEMORANDUM OPINION</u>

On January 23, 2023, this Court issued an opinion that granted in part and denied in part plaintiffs' motion for summary judgment and defendant's motion for partial summary judgment. Plaintiffs have filed a motion for partial final judgment under Federal Rule of Civil Procedure 54(b). They have also filed a motion for clarification on the issues of ghost preparers and foreign preparers. Upon consideration of those motions (ECF Nos. 229, 230), defendant United States' opposition (ECF Nos. 233, 234), and plaintiffs' replies (ECF Nos. 238, 239), the Court will **DENY** both motions.

The Court will deny the motion for partial final judgment not because the plaintiffs violated Local Rule 7(m)—although they did—but because the plaintiffs failed to ask the Court to direct entry of final judgment on an entire "claim" in the sense of Rule 54(b). The Court will also deny the motion for clarification on both matters. The Court does not reach plaintiffs' argument concerning ghost preparers because plaintiffs breached both requirements of Local Rule 7(m). And although the Court does reach the issue of foreign preparers, the plaintiffs' motion fails because the plaintiffs seek not clarification, but relitigation of a matter already decided.

## I.    BACKGROUND

The Court assumes familiarity with its Memorandum Opinion granting in part and denying in part plaintiffs' motion for summary judgment and defendant's motion for partial summary judgment.  That opinion details this case's factual background and procedural posture up until the current, post-summary judgment disputes.  *See Steele v. United States*, No. 1:14-cv-1523 (RCL), 2023 WL 2139722, at *1–7 (D.D.C 2023) (ECF No. 226).  Accordingly, the Court will provide only the background information necessary to resolve the present motions.

### A.  Summary Judgment Opinion

Following remand, the parties cross-moved for summary judgment.  *See* ECF Nos. 173, 175.  Plaintiffs argued that many of the expenses used to justify the Preparer Tax Identification Numbers (PTIN) fees were unnecessary to the maintenance of the PTIN system and thus that those fees were excessive in violation of the Independent Offices Appropriations Act.  The government moved only for partial summary judgment.  It conceded that the IRS unlawfully included certain expenses in its PTIN fee calculations.  But it maintained that the agency had authority to include others.  The government further argued that it was entitled to an offset to its liability for sums it could have charged in fees while it was enjoined by this Court from assessing them.

The Court granted in part and denied in part each party's motion.  The Court held that the FY 2011 through FY 2017 PTIN and vendor fees were excessive as a matter of law.  In reaching this conclusion, the Court held that it would not defer to the IRS's determination of whether the activities used to justify the PTIN and vendor fees were sufficiently related to the provision of PTINs to return preparers, but it would defer to the IRS's estimation of the costs to carry out those activities.  *See Steele*, 2023 WL 2139722, at *10.  As relevant here, the Court considered the extent to which the activities of the Compliance Department of the IRS's Return Preparer Office (RPO)

offered a valid basis for the FY 2011 through 2015 PTIN fees.  *See id.* at \*11.  The government

identified three categories of RPO Compliance Department activities:

> (1) investigating "ghost preparers" (return preparers that do not list their PTINs on returns they prepared for compensation as required by law); (2) handling complaints from return preparers that a client's prior return preparer may have acted improperly by using a compromised PTIN or committed identity theft to obtain a PTIN; and (3) composing the data to refer complaint cases to IRS business units outside the RPO for further enforcement if necessary.

*Id.* at \*11 (quoting Def.'s Opp'n to Pls.' MSJ, ECF No. 183, at 19).  The Court agreed with the

government that "the IRS permissibly charged for at least some of" those three specific categories

since "[t]o the extent that they relate to misuse of PTINs, all three are reasonably related to the

provision of the private benefit that the [D.C.] Circuit identified in [*Montrois v. United States*, 916

F.3d 1056 (D.C. Cir. 2019)]—protection of preparers' identity—because the misuse of PTINs

compromises their ability to serve as a secure means of identification."  *Steele*, 2023 WL 2139722,

at \*11.  But the Court went on to state that "uncontroverted record evidence establishes that the

Compliance Department undertook additional activities unrelated to the misuse or nonuse of

PTINs."  *Id.* at \*11.  Therefore, the Court held concerning the Compliance Department that:

> only the direct and indirect costs of (1) investigating ghost preparers; (2) handling complaints regarding improper use of a PTIN, use of a compromised PTIN, or use of a PTIN obtained through identity theft; and (3) composing the data to refer those specific types of complaints to other IRS business units were valid bases for the corresponding amount of the FY 2011 through 2015 PTIN fees.

*Id.*, at \*12.

One matter raised by the plaintiffs at the summary judgment stage, Pls.' MSJ, ECF No.

175, at 20–21, but not expressly addressed in the Memorandum Opinion was whether PTIN fees

could be used to recover registration costs for foreign preparers even though foreign preparers lack

Social Security numbers and the benefit provided by the PTIN is protection of preparers' identity

from identify theft.  *Steele*, 2023 WL 2139722, at \*9, 11.

In addition, the Court held that the government is not entitled to an offset to restitution for fees it was unable to charge due to the Court's prior injunction.  It also held that plaintiffs' challenge to the questions asked on the PTIN application was improperly raised.  Finally, the Court remanded to the IRS to determine an appropriate refund for the class in a manner consistent with the IOAA.

### B.  Motions Presently Before the Court

Before the Court are two motions.

First, the plaintiffs have moved for partial final judgment under Federal Rule of Civil Procedure 54(b).  Pls.' Mot. Partial Final J. (MPFJ), ECF No. 229; *see also* Fed. R. Civ. P. 54(b).  They urge the Court to enter partial final judgment for the PTIN fees that the government has conceded were unlawfully imposed from FY 2011 to FY 2017: a sum of approximately $110 million.  MPFJ at 1; *see also* Declaration of Carol A. Campbell, ECF No. 183-2; Second Declaration of Carol A. Campbell, ECF No. 203-1.  The plaintiffs seek for this amount to be immediately placed into escrow so that interest can begin accruing for the benefit of the class.  MPFJ at 1–2.  The United States opposes the motion.  Defendant's Opp'n to Pls.' MPFJ (Def.'s Opp'n), ECF No. 233.  Plaintiffs submitted a reply.  Pls.' Reply in Support of MPFJ., ECF No. 239.

Second, the plaintiffs have moved for clarification of the summary judgment opinion.  Pls.' Mot. Clarification Summ. J. Op. (Motion for Clarification), ECF No. 230.  In particular, they seek clarification on two alleged "points of ambiguity" in the opinion: whether the PTIN fee may include costs relating to unidentified return preparers (i.e., "ghost" preparers) and whether the PTIN fee may include the costs of registering foreign preparers.  *Id.* at 1.  The United States

opposes the motion.  Def.'s Opp'n to Pls.' Motion for Clarification, ECF No. 234.  Plaintiffs

submitted a reply.  Pls.' Reply in Support of Motion for Clarification, EF No. 238.

These motions are now ripe for review.

## II.    LEGAL STANDARDS

### A.  Local Rule 7(m)

Local Rule 7(m) of the Local Rules for the United States District Court for the District of

Columbia reads:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the
> anticipated motion with opposing counsel in a good-faith effort to determine
> whether there is any opposition to the relief sought and, if there is, to narrow the
> areas of disagreement.  The duty to confer also applies to non-incarcerated parties
> appearing pro se.  A party shall include in its motion a statement that the required
> discussion occurred, and a statement as to whether the motion is opposed.

LCvR 7(m).  When a nondispositive motion is at issue, the Local Rule therefore imposes twin

duties of consultation and certification.  The rule's purposes are "to encourage informal resolution

to such disputes, or at least to reduce or narrow the issues the Court will consider."  *U.S. ex rel.*

*Pogue v. Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006).

The threshold question for Local Rule 7(m) is whether the motion in question is

"nondispositive."  The D.C. Circuit has defined "dispositive motion" to "include[] a motion that,

if granted, would result either in the determination of a particular claim on the merits or elimination

of such a claim from the case."  *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207,

1215 (D.C. Cir. 1997).

If the motion is in fact nondispositive, the next issue is the duty to confer.  "The obligation

to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the

non-dispositive disputes that occur in the course of litigation."  *Pogue*, 235 F.R.D. at 529.  That

means that the Local Rule "at least 'contemplates that counsel will speak to each other.'"  *U.S. ex*

*rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006) (quoting *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 194 (D.D.C. 2003)), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008).  A party must therefore take "real steps" to confer with its opponent, such as contacting the other side's counsel "by telephone or within a reasonable period prior to filing the motion." *K & R Ltd. P'ship*, 456 F. Supp. 2d at 52.  But conferring is not itself enough: the party must also certify whether it has done so and whether the motion is opposed.  LCvR 7(m).

If Local Rule 7(m) has been violated, that is not the end of the analysis.  Breach raises the further question of remedy.  This Court has often denied motions for failure to comply with Local Rule 7(m) and its precursors.  *See, e.g.*, *Andrades v. Holder*, 286 F.R.D. 64, 65 n.2 (D.D.C. 2012); *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006); *Alexander v. F.B.I.*, 186 F.R.D. 185, 186–187 (D.D.C. 1999).  Under the right circumstances, however, a nonconforming motion will not be denied.  This may be the case if one side's efforts to initiate dialogue are met with silence. *See, e.g.*, *GFL Advantage Fund*, 216 F.R.D. at 194; *Day v. Cornèr Bank (Overseas) Ltd.*, 789 F. Supp. 2d 136, 144 (D.D.C. 2011).

This Court has chosen not to deny nonconforming motions under other appropriate circumstances too.  *See Lopes v. JetSetDC, LLC*, 994 F. Supp. 2d 126, 133 (D.D.C. 2014); *Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (noting "the general judicial preference for resolving motions on their merits rather than dismissing them on technicalities"); *see also J.T.F. v. D.C.*, No. 21-cv-1453 (RC), 2023 WL 5528037, at *5 (D.D.C. 2023) ("Here, Plaintiffs did not attempt to confer with the District and therefore could not certify that the required discussion occurred . . . .  Nevertheless, in the interest of resolving this dispute, this Court will consider Plaintiffs' motion on its merits.") (internal citations omitted).  Therefore, when a party has failed to respect the requirements of Local Rule 7(m), the Court will exercise its discretion in

selecting the remedy, bearing in mind the purposes of the rule.  *See Day*, 789 F. Supp. 2d 136 at

144 ("The decision to grant or deny a motion to strike is vested in the Court's discretion.").

**B.  Motion for Partial Final Judgment Under Rule 54(b)**

In an action involving multiple claims for relief, Rule 54(b) authorizes a district court to

"direct entry of a final judgment as to one or more, but fewer than all, claims."  Fed. R. Civ.

P. 54(b).  Granting a Rule 54(b) motion expands opportunities for appeal, since entry of final

judgment on a particular claim means there is now a "final decision," which is a statutory

requirement for appellate jurisdiction over the claim.  *See Gelboim v. Bank of Am. Corp.*, 574 U.S.

405, 409 (2015); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956); 28 U.S.C. § 1291

(granting the courts of appeals jurisdiction over appeals from "all final decisions of the district

courts of the United States").

In considering such a motion, the district court must take two steps.  *See Curtiss-Wright*

*Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980).  The court must first consider whether it is dealing

with a "final judgment."  *Id.* at 7.  The decision for certification under Rule 54(b) must be "'a

"judgment" in the sense that' it determines a claim for relief," and "it must be 'final'" in that it

constitutes "an ultimate disposition of an individual claim entered in the course of a multiple claims

action."  *Bldg. Indus. Ass'n of Superior California v. Babbitt*, 161 F.3d 740, 744 (D.C. Cir. 1998)

(quoting *Curtiss-Wright*, 446 U.S. at 7).

A Court considering a Rule 54(b) motion must thus consider whether the alleged "claim"

sought to be finally resolved is a truly "distinct" from the other claims for relief that would remain

pending before the district court.  *Attias v. CareFirst, Inc.*, 969 F.3d 412, 417 (D.C. Cir. 2020).

The D.C. Circuit "has no general test for determining when claims are distinct enough to allow

entry of final judgment under Rule 54(b)" on only some of the alleged claims.  *Univ. of Colorado*

*Health at Mem'l Hosp. v. Becerra*, No. 14-cv-1220 (RC), 2023 WL 4999323, at *3 (D.D.C. 2023). However, in *Tolson v. United States*, the Court of Appeals provided a "rule of thumb." 732 F.2d 998, 1001 (D.C. Cir. 1984); *see also Attias*, 969 F.3d at 417 (discussing and applying *Tolson*). At a minimum, when alleged "claims [are] so closely related that they would fall afoul of the rule against splitting claims if brought separately . . . they do not qualify as 'separate' claims within the meaning of Rule 54(b)." *Tolson*, 732 F.2d at 1001 (quoting *Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co.*, 642 F.2d 1065, 1070 (7th Cir.1981) (Wisdom, J.)).

In other words, claims that res judicata would bar from being brought separately after judgment are not separate claims for the purposes of Rule 54(b). *Tolson*, 732 F.2d at 1001. Under the doctrine of res judicata, when a valid and final judgment extinguishes a plaintiff's claim, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1) (Am. L. Inst. 1982); *see also Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595 (2020) (observing that "[s]uits involve the same claim . . . when they 'aris[e] from the same transaction' or involve a 'common nucleus of operative facts.'") (alteration in original) (citations omitted).

If the court finds finality, next it must "determine whether there is any just reason for delay." *Curtiss-Wright*, 446 U.S. at 8. The court must decide "the 'appropriate time' when each final decision in a multiple claims action is ready for appeal," as "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Curtiss-Wright*, 446 U.S. at 8. On this issue, the court must consider both the equities involved and the interests of sound judicial administration. *Id.* at 8. Accounting for judicial administrative interests "is necessary to assure that application of the Rule

effectively 'preserves the historic federal policy against piecemeal appeals.'" *Id.* at 10 (quoting *Sears*, 351 U.S. at 438).  The Court should thus "consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8.  At any rate, even if judicial administrative interests do not weigh against granting the motion, "it is still within the court's discretion to grant or deny final judgment under 54(b) based on the equities involved." *Johnson v. Mukasey*, 248 F.R.D. 347, 357 (D.D.C. 2008) (citing *Curtiss-Wright*, 446 U.S. at 10), *aff'd sub nom. Johnson v. Holder*, No. 08-5157, 2009 WL 3568647 (D.C. Cir. 2009).

### C.  Motion for Clarification

"[T]here is no Federal Rule of Civil Procedure specifically governing 'motions for clarification.'" *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011).  Nonetheless, these motions are "generally recognized and allowed by federal courts." *Barnes v. D.C.*, 289 F.R.D. 1, 13 n.6 (D.D.C. 2012); *see also Philip Morris*, 793 F. Supp. 2d at 168–69 (collecting cases in which district courts entertained motions for clarification).  Parties are encouraged "to file motions for clarification when they are uncertain about the scope of a ruling." *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 99 (D.D.C. 2018).

But motions for clarification have a limited role.  "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *See Philip Morris*, 793 F. Supp. 2d at 168 (quoting *Resolution Trust Corp. v. KPMG Peat Marwick, et al.*, No. 92–cv-1373, 1993 WL 211555, at *2 (E.D. Pa. 1993)).  A motion for reconsideration, not a motion for clarification, is proper when "a party seeks to alter or modify the result, rather than

merely to grasp its meaning or scope in the face of an actual and material ambiguity." *Sai v. Transportation Sec. Admin.*, No. 14-cv-403 (RDM), 2015 WL 13889866, at *3 (D.D.C. 2015). But neither motion is "simply an opportunity to reargue facts and theories upon which a court has already ruled." *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 81 (D.D.C. 2015) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)).

### III.   DISCUSSION

#### A.  Plaintiff's Motion for Partial Final Judgment Under Rule 54(b)

Although the plaintiffs violated Local Rule 7(m) by not stating in their motion that they had consulted with the government and that the government opposed the motion, the Court will not deny it on that basis.  To do so even though the plaintiffs conferred with their counterparts would not serve the Local Rule's purposes.  But the Court *will* deny the motion on the merits because the plaintiffs failed to ask the Court to direct entry of final judgment on an entire "claim" in the sense of Rule 54(b).  And even if the Court agreed with the plaintiffs that they were seeking final judgment on a "claim," it would still deny the motion because the plaintiffs waived their argument to have satisfied Rule 54(b)'s two-part test by not raising it until their reply brief.

#### 1.  The Court Will Not Deny the Rule 54(b) Motion for Violating Local Rule 7(m)

The United States argues that the plaintiffs failed to comply with Local Rule 7(m) by failing to confer with the United States about the motion for partial final judgment under Rule 54(b) and not including in their motion a statement that such discussion had occurred.  Def.'s Opp'n at 1. The United States therefore urges the Court to strike the plaintiffs' motion.  *Id.*.  In their reply, the plaintiffs argue that the Local Rule does not apply because the plaintiffs are seeking partial final judgment, which they characterize as a dispositive motion not governed by Local Rule 7(m).  Pls.' Reply in Support of MPFJ at 1.  In addition, the plaintiffs say they did in fact raise the issue with

the government in advance of the motion.  *Id.* at 1.  As evidence, the plaintiffs offer an email chain involving attorneys for each side.  Exhibit A, ECF No. 239-1.

An alleged violation of Local Rule 7(m) presents three issues.  First, is the relevant motion dispositive?  If so, the Local Rule does not apply.  Second, if the motion is nondispositive and Local Rule 7(m) does control, did the party conform to the Local Rule's requirements?  If not, the party has breached the rule.  Third, if the party did breach the rule, what should be the remedy?  This Court holds that the plaintiffs' motion is nondispositive, because if the Court were to grant the motion, that would not determine a particular "claim."  The Court further holds that while the plaintiffs satisfied Local Rule 7(m)'s conferral requirement, they did not meet its certification requirement.  Nonetheless, out of consideration for the Local Rule's purposes, the Court will not deny the motion for having violated the rule.

### (i)  The Plaintiffs' Rule 54(b) Motion Is Nondispositive

In this case, the plaintiffs' motion for partial final judgment under Rule 54(b) is nondispositive.  A Rule 54(b) motion that properly seeks entry of final judgment on a "claim" is a dispositive motion under *Burkhart* because, if granted, it "would result . . . in the determination of a particular claim on the merits or elimination of such a claim from the case."  *Burkhart*, 112 F.3d at 1215.  Indeed, the Supreme Court has suggested that granting a Rule 54(b) motion would be a dispositive ruling.  *See Gelboim*, 574 U.S. at 409 ("Rule 54(b) permits district courts to authorize immediate appeal of dispositive rulings on separate claims in a civil action raising multiple claims.").  Yet while ordinarily a Rule 54(b) motion will be a dispositive motion, the motion in this case is different.  For the reasons detailed in Section III(2)(i), the Court concludes that the plaintiffs' do not actually request final judgment on an entire "claim" as required by Rule 54(b).  Instead, they merely seek immediate payment of a portion of the damages sought under their

claims.  If the Court were to grant this motion on this *part* of the plaintiffs' claims, it would not actually dispose of any claim on the merits.  The plaintiffs' Rule 54(b) motion therefore does not meet the *Burkhart* standard and must be considered nondispositive.  As the Court is faced with a nondispositive motion, Local Rule 7(m) governs.

### (ii) The Plaintiffs Satisfied Local Rule 7(m)'s Requirement of Consultation

Since Rule 7(m) applies, the plaintiffs were obliged to consult with the United States before filing the Rule 54(b) motion.  As discussed above, the obligation to confer requires a "good faith effort to resolve" the dispute, *Pogue*, 235 F.R.D. at 529, in which the moving party takes "real steps" to confer with opposing counsel, *K & R Ltd. P'ship*, 456 F. Supp. 2d at 52.  The Court is satisfied that plaintiffs made such an effort.  Exhibit A of plaintiffs' reply brief documents their consultation with the lawyers for the United States.  *See* Exhibit A, ECF No. 239-1.  Over a month before the filing of plaintiffs' motion, counsel for both sides participated in a phone call.  The next day, an attorney for the plaintiffs memorialized the conversation in an email to lawyers on the other side.  He recorded, among other enumerated topics, the request for immediate payment of money concededly owed by the government:

> 3. You will make inquiry of the IRS as to whether it would be willing to make payment now of the conceded amounts in excess of the $28,982,499 paid to date. We calculate that to be $81,183,033.35. The payment would go into an escrow account for the benefit of the class . . . . We would like an answer on this issue at your earliest convenience as we may seek relief from the court, if the IRS does not wish to make payment voluntarily.

*Id.* at 4.  The next week, the plaintiffs' attorney sent another email to the government's attorneys, writing: "consistent with No. 3 below, we intend to ask the Court to order that the IRS pay the conceded amounts now."  *Id.* at 3.  After several days apparently without a response, the attorney nudged the government lawyers: "we would appreciate receiving your position on the issues

below." *Id.* at 3.  A government lawyer then responded that the government did not consent to plaintiffs' requests.  *Id.* at 2.

Clearly, plaintiffs' efforts to confer were more than "perfunctory."  *Pogue*, 235 F.R.D. at 529.  As Local Rule 7(m) contemplates, counsel for each side communicated with each other about whether the government would pay the concededly unlawful sums.  *K & R Ltd. P'ship*, 456 F. Supp. at 52.  The parties discussed the matter over the phone, and then over email.  Plaintiffs sought to informally resolve the dispute.  And they told the government to expect their request to the Court.  On these facts, the plaintiffs met their burden of consultation under Local Rule 7(m).

### (iii) The Plaintiffs Have Not Satisfied Local Rule 7(m)'s Requirement of Certification

Consultation, however, does not suffice to satisfy Local Rule 7(m).  A party must also "include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed."  LCvR 7(m).  Failure to do so may result in the motion being denied even if the party fulfilled its duty to consult.  *See Ellipso*, 460 F. Supp. 2d at 102 ("If a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion will be denied"); *HT S.R.L. v. Velasco*, No. 15-mc-664 (RBW), 2015 WL 13759884, at *5 (D.D.C. 2015) ("[T]he absence of a statement confirming compliance with Local Rule 7(m) is an appropriate basis alone for the denial of [the party's] motion to quash.").  Here, the plaintiffs did not include either required statement in their initial brief.  *See* MPFJ.  Therefore, despite their good

faith effort to consult with their opponents about this motion, the plaintiffs failed to comply with the letter of Local Rule 7(m).

### (iv) Despite Plaintiffs' Breach of Local Rule 7(m), the Court Declines to Deny Plaintiffs' Motion for That Reason

Violation of Local Rule 7(m) raises the question of remedy. When a party has breached the Local Rule 7(m), a court *may* strike the nonconforming motion from the docket. But it retains discretion not to. *See Niedermeier*, 153 F. Supp. 2d at 27; *Lopes*, 994 F. Supp. 2d at 133. This Court has declined to deny a motion that omitted the statement about having conferred with counsel when the breaching party made a good faith but fruitless effort to confer with the other side. *See GFL Advantage Fund*, 216 F.R.D. at 194. When this Court has struck motions for breaching Local Rule 7(m) and its precursors, that has typically been for violation of the requirement of consultation, not certification. *See, e.g.*, *Andrades*, 286 F.R.D. at 65 n.2; *Sec. & Exch. Comm'n v. Bilzerian*, No. 89-cv-1854 (RCL), 2011 WL 13267154, at *1 (D.D.C. 2011); *K & R Ltd. P'ship*, 456 F. Supp. 2d at 52; *Pogue*, 2007 WL 9703182, at *1; *Ellipso*, 460 F. Supp. at 102; *Alexander*, 186 F.R.D. at 186–187.

This pattern reflects the purposes of the Local Rule. Local Rule 7(m) serves to encourage parties to resolve their disputes informally without judicial intervention, or at least "to narrow the issues that must be brought to the court." *Ellipso*, 460 F. Supp. 2d at 102 (citing *Pogue*, 235 F.R.D. at 529). This aim is mainly furthered by the consultation requirement, as conferrals between counsel may lead to parties resolving or narrowing issues that would otherwise be presented to the court. The certification requirement essentially functions to prod parties into compliance with the conferral requirement and to reduce the burden on courts to assess adherence to that provision. Failure to include the required statements may leave a court uncertain about whether conferral

occurred.  But because conferral has in fact occurred, failure to certify would not lead a Court to unnecessarily expend its time and resources deciding an issue that the parties could have resolved on their own.  That is especially true when, as here, it is clear from the face of the plaintiffs' motion that the government would oppose it.

Declining to reach the merits of plaintiffs' motion on the basis of a failure to certify, even though the plaintiffs carried out the underlying substantive obligation, would not meaningfully further the purposes of Local Rule 7(m).  And it would conflict with the "general judicial preference for resolving motions on their merits rather than dismissing them on technicalities." *Niedermeier*, 153 F. Supp. 2d at 27.  For these reasons, although plaintiffs failed to certify their compliance with Local Rule 7(m), the Court declines to deny the motion on that ground.  That said, the Court admonishes the plaintiffs to be mindful of their obligations under the Local Rules, including Local Rule 7(m).

### 2.  The Court Will Deny the Motion Under Rule 54(b)

The plaintiffs urge this Court to enter partial final judgment under Federal Rule of Civil Procedure 54(b) for the approximately $110 million in PTIN fees that the government concedes it unlawfully exacted.  MPFJ.  Ordering immediate payment of this money into escrow, plaintiffs argue, would enable the class to benefit from interest earned on it.  MPFJ at 1.  Their argument has a certain commonsense appeal: if the government concedes this figure was unlawfully exacted from the plaintiffs, why should the plaintiffs have to wait months or years before they can earn interest on their own money?

The United States gives two reasons for why the plaintiffs have failed to satisfy Rule 54(b). First, they argue, the plaintiffs are not seeking final judgment on one or more "claims" within the meaning of Rule 54(b), but instead seeking judgment on a *portion* of their claims.  Def.'s Opp'n,

at 2–3.  This is so, the United States contends, because the plaintiffs do not seek judgment on any of the specific counts in their Second Amended Complaint (ECF No. 148) but rather request a portion of their claimed money damages.  Def.'s Opp'n at 2.  Second, the government argues that the plaintiffs have failed to demonstrate their satisfaction of Rule 54(b)'s two-part test and have waived their chance to do so.  Def.'s Opp'n, at 3–4.

Plaintiffs respond that the government is advancing "a highly formalistic view of what constitutes a 'claim' for Rule 54(b)."  Plaintiff's Reply in Support of MPFJ, ECF No. 239 at 1. They rely on a case from the United States Court of Federal Claims to argue that the uncontested portion of the damages sought amounts to a "claim" under Rule 54(b).[1]  Specifically, in *Entergy Nuclear Palisades, LLC v. United States*, the Court of Federal Claims held that an alleged "claim" to a sum of money concededly owed to plaintiffs by the government was indeed a separate "claim" for the purposes of Rule 54(b).  *See* 122 Fed. Cl. 225, 228 (2015) (stating that "[o]ther courts in [the Federal Circuit] have found that [Rule] 54(b)'s requirement of a final claim does not prevent the entry of partial judgment in cases where a portion of the damages has been definitively established and further litigation will not impact the government's obligation to pay at least that amount.") (citing *Stockton E. Water Dist. v. United States*, 120 Fed. Cl. 80 (2015)).

Thus the question is squarely presented: what counts as a separate "claim" under Rule 54(b)?

---

[1] As a fallback position, the plaintiffs state that "[s]hould the Court find it necessary, Plaintiffs are willing to amend their complaint to add a separate claim for the concededly unlawful exactions, which would then allow the Court to grant final judgment as to that claim even under the government's definition of what constitutes a 'claim' for Rule 54(b) purposes."  Plaintiff's Reply in Support of MPFJ at 3 n.2.  But as discussed elsewhere in this opinion, Rule 54(b)'s "claim" requirement reflects a policy against unspooling claims into separate threads in order to subvert the final decision rule.  *See Tolson*, 732 F.2d at 1002.  The Court therefore declines the invitation to permit plaintiffs to obtain piecemeal final judgments by recharacterizing their claims.

### (i)   The Plaintiffs Failed to Ask the Court to Direct Entry of Final Judgment on a "Claim"

Courts have interpreted the word "claim" as used in the Federal Rules of Civil Procedure to mean "the aggregate of operative facts which give rise to a right enforceable in the courts." *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943) (Swan, J.).  In *Liberty Mutual Insurance Company v. Wetzel*, the Supreme Court suggested that it understood the word similarly, stating in a footnote that a "complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief."  424 U.S. 737, 744 n.4 (1976).  But the Court did not "attempt any definitive resolution of the meaning of what constitutes a claim for relief within the meaning of the Rules."  *Id.*.  Whatever the precise definition of "claim" in the abstract, it is clear that the plaintiffs do not seek final judgment on an entire "claim," as the term must be understood in light of the case law of both the D.C. Circuit and the Supreme Court.  Plaintiffs' invocation of Rule 54(b) is thus fatally flawed.

First, according to the precedent of this Circuit, plaintiffs' alleged "claim" is inseparable from their wider claim for relief, and therefore not a proper "claim" for a Rule 54(b) motion.  Under Rule 54(b), a district court may not "certif[y] a matter that does not involve the 'final' disposition of an entire 'claim.'"  *Attias*, 969 F.3d at 417.  Per *Tolson*, the res judicata standard guides the determination of whether a Rule 54(b) judgment may be granted for any alleged claims.  *Tolson*, 732 F.2d at 1001.

In this case, res judicata would bar plaintiffs from bringing their "claim" for the concededly unlawful funds separately from their other claims once one of the claims was extinguished by a valid and final judgment.  In this suit against the IRS for its imposition of PTIN fees, a "claim" for a portion of the monetary relief sought by plaintiffs obviously arises out of the same transaction

or series of transactions as the plaintiffs' other claims. *See* Restatement (Second) of Judgments § 24 (Am. L. Inst. 1982). So under *Tolson* the plaintiffs cannot sever their alleged "claim" to the conceded funds from their broader claim against the government. Since Rule 54(b) does not permit a court to certify anything less than an entire claim, the plaintiffs' motion must be denied.

Second, the Supreme Court has left little doubt that Rule 54(b) is to be used to ultimately dispose of an entire claim, not to expedite part of a remedy linked to a particular claim. Congress and the Supreme Court promulgated Rule 54(b) to provide "a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on all the claims in the case." *Sears*, 351 U.S. at 435. The Rule was not designed, however, to "relax the finality required of each decision, as an individual claim, to render it appealable." *Id.*. Finality of judgment of a claim remains a statutory requirement for appellate jurisdiction. *See id.* at 437; 28 U.S.C. § 1291. Indeed, the Rule was designed to "effectively 'preserve[] the historic federal policy against piecemeal appeals.'" *Curtiss-Wright*, 446 U.S. at 8 (quoting *Sears*, 351 U.S. at 438). Granting plaintiffs' motion concerning the concededly unlawfully exacted money, however, would undermine finality because part of the plaintiffs' claim would be subject to appellate review while other parts remained pending in the district court.

Both the Supreme Court and the D.C. Circuit have rejected attempts by parties to fragment their claims in order to seek Rule 54(b) relief. In *Liberty Mutual*, the Supreme Court rejected the notion that a "claim" could refer to each of the different forms of relief sought because "a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief." *Liberty Mutual Insurance*, 424 U.S. at 743 n.4. And in *Tolson*, the D.C. Circuit warned against "formulat[ing] the definition of 'claim'" in a way that

would "erode the final decision rule." *Tolson*, 732 F.2d at 1002.  Plaintiffs ask this Court to do the very thing higher courts have warned against.

The only authority plaintiffs can cite in their favor is unavailing.  Plaintiffs ask this Court to rely on a case from the Court of Federal Claims.  MPFJ at 2; Pls.' Reply in Support of MPFJ at 2–3; *see Entergy*, 122 Fed. Cl. at 228.  But even if *Entergy* is correct in its implicit premise that the Supreme Court's precedents do not preclude its decision, this Court is bound by the case law of the D.C. Circuit.  And under decisions like *Tolson*, an alleged "claim" to a portion of plaintiffs' claim for monetary relief is not a separate "claim" that can be the subject to a Rule 54(b) motion.

In conclusion, this Court must reject plaintiffs' contention that their request for partial final judgment as for the concededly unlawful PTIN fees is a "claim" within the sense of Rule 54(b).  Since the plaintiffs do not ask the Court to direct entry of a final judgment as to a "claim," properly understood, the Court must deny the plaintiffs' motion.

### (ii)  Even If the Plaintiffs Have Asked for Final Judgment on a "Claim," They Have Waived Their Argument for Having Met Rule 54(b)'s Two-Part Test

But even the plaintiffs were correct that authorizing immediate payment of a portion of the damages sought counts as entering final judgment on an entire "claim," the Court would still deny the motion because plaintiffs failed to raise, and thus waived, the argument for why they satisfied Rule 54(b)'s two-part test.

The plaintiffs were apparently so focused on justifying their view of what constitutes a "claim" under Rule 54(b) that they forgot to explain why, were the Court to agree with them on that issue, it should grant their motion.  As previously discussed, the Supreme Court has interpreted Rule 54(b) to establish a two-part test.  Proponents must establish that the district court is dealing

with a "final judgment" and that there is no "just reason for delay."  *Curtiss-Wright*, 446 U.S. at 7–8.

But in their initial sally, the plaintiffs failed to allege that the Court was dealing with a "final judgment" in the sense of something that "determines a claim for relief" and that is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."  *Bldg. Indus. Ass'n of Superior California*, 161 F.3d at 744 (quoting *Curtiss-Wright*, 446 U.S. at 7); *see* MPFJ.  Nor did plaintiffs explain why there was no "just reason for delay."  *Curtiss-Wright*, 446 U.S. at 8.  Plaintiffs simply did not discuss either prong in their initial brief.

As the Court observed in its Memorandum Opinion, a party that fails to raise an issue in its initial brief waives its right to argue that issue in its reply brief.  *Steele*, 2023 WL 2139722, at *14 ("Arguments raised for the first time in a reply brief are waived.") (quoting *Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019)); *see also Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 37 (D.D.C. 2010) ("As the D.C. Circuit has consistently held, the Court should not address arguments raised for the first time in a party's reply.") (quoting *Jones v. Mukasey*, 565 F.Supp.2d 68, 81 (D.D.C. 2008)).  The waiver principle is a "prudential" doctrine. *Olatunji v. D.C.*, 958 F. Supp. 2d 27, 36 n.4 (D.D.C. 2013) (citing *Natural Res. Def. Council, Inc. v. E.P.A.*, 25 F.3d 1063, 1079 (D.C. Cir. 1994) (Wald, J., dissenting in part and concurring in part)).  It is grounded in a recognition that "'[c]onsidering an argument advanced for the first time in a reply brief . . . is not only unfair to' the opposing party, 'but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered'" because an Article III court depends on the adversarial process.  *Wultz*, 755 F. Supp. 2d at 37 (quoting *McBride v. Merrell Dow and Pharms., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986)).

True, plaintiffs made the high-level contention that they were entitled to partial final judgment under Rule 54(b).  But a summary assertion in the initial brief, made without argument or citations, does not suffice to preserve the more fine-grained argument.  *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("Mentioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones' is tantamount to failing to raise it.") (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).  By waiting until the reply to spell out their theory, the plaintiffs deprived the United States of a full opportunity to rebut their arguments.  *See Wultz*, 755 F. Supp. 2d at 37 (explaining that considering an argument first advanced in a reply brief would be unfair and risky "because the opposing party is not entitled to file a surreply to address new issues raised for the first time in a reply").

Therefore, even if the Court agreed that plaintiffs were indeed seeking partial final judgment on an entire "claim," it would deny the motion because they waived their argument to have met the two-part burden for Rule 54(b).

## B.  Plaintiff's Motion for Clarification of the Summary Judgment Opinion

In their motion for clarification of the Court's summary judgment opinion, plaintiffs ask the Court to clarify two alleged "points of ambiguity" in its opinion.  *See* Motion for Clarification at 1.  First is whether the PTIN fee may include costs relating to ghost preparers.  Plaintiffs point out that "in discussing the costs of Compliance Department activities that may be covered by the PTIN fee, the Court refers in one place to misuse and nonuse, and in another, just to misuse."  *Id.* at 1; *see Steele*, 2023 WL 2139722, at * 11.  In particular, the Court stated that the IRS permissibly charged for at least some of the Compliance Department's activities because "[t]o the extent that they relate to *misuse* of PTINs, all three are reasonably related to the provision of the private benefit

that the [D.C.] Circuit identified in *Montrois*—protection of preparers' identity—because the *misuse* of PTINs compromises their ability to serve as a secure means of identification." *Steele*, 2023 WL 2139722, at *11 (emphasis added).  Elsewhere, the Court suggested that recoverable costs include not only misuse of PTINs but also nonuse.  *See id.* at *11 (noting that "uncontroverted record evidence establishes that the Compliance Department undertook additional activities unrelated to the *misuse or nonuse* of PTINs.") (emphasis added).  The United States argues that the opinion does not need clarification on this issue, and that the motion should be denied for plaintiffs' failure to comply with Local Rule 7(m).  Def.'s Opp'n to Pls.' Motion for Clarification at 1–2.

The second alleged ambiguity is whether the PTIN fee may include costs relating to registration of foreign preparers, who lack Social Security numbers.  Motion for Clarification at 1. "Foreign Preparer Processing" was one of the activities the expected costs of which the IRS used to establish its 2010 Cost Model.  *Steele*, WL 2139722, at *3.  At the summary judgment stage, plaintiffs argued that foreign preparer registration costs could not be recovered through PTIN fees. Pls.' MSJ at 20–21.  Now they ask the Court to specifically address the issue. Motion for Clarification, at 2.  The United States counters that the opinion does not need clarification on this matter and that the motion should be denied because plaintiffs breached Local Rule 7(m).  Def.'s Opp'n to Pls.' Motion for Clarification.

For the reasons discussed below, plaintiffs have not shown they are entitled to a clarification of the summary judgment opinion.

### 1.   In Light of Local Rule 7(m), the Court Will Deny the Motion for Clarification as to Ghost Preparers but Not Foreign Preparers

Given plaintiffs' uneven adherence to Local Rule 7(m), the Court will deny plaintiffs' motion for clarification as to ghost preparers but not as to foreign preparers.

The threshold question is whether a motion for clarification is a nondispositive motion, and thus governed by Local Rule 7(m).   A motion that serves "to explain or clarify something ambiguous or vague, not to alter or amend," *Philip Morris*, 793 F. Supp. 2d at 168 (quoting *Resolution Trust.*, No1993 WL 211555, at *2), would not "result either in the determination of a particular claim on the merits or elimination of such a claim from the case." *Burkhart*, 112 F.3d at 1215.   Since this motion easily fails the *Burkhart* test, Rule 7(m) applies.[2]   The Court will consider whether the plaintiffs have conformed to the requirements of this Rule and, if not, what the remedy should be.

#### (i)   Ghost Preparers

As for the issue of ghost preparers, plaintiffs violated Local Rule 7(m) by failing to comply with either the conferral or certification requirements.   The duty to confer "requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation." *Pogue*, 235 F.R.D. at 529.   "[P]erfunctory action" will not suffice. *Id..*   As evidence of consultation, plaintiffs offer Exhibit A of their reply brief, containing email exchanges between lawyers for both sides. *See* Exhibit A, ECF No. 238-1.   Yet the only communication concerning ghost preparers is the

---

[2] Plaintiffs argue that Local Rule 7(m) does not apply because plaintiffs are seeking clarification of the summary judgment opinion, which itself was a ruling on a dispositive motion. Pls.' Reply in Support of Motion for Clarification at 1.   However, this argument is inconsistent with the Local Rule's plain text: plaintiffs have a conferral and certification obligation "[b]efore filing *any* nondispositive motion," LCvR 7(m) (emphasis added), regardless of whether the nondispositive motion concerns a prior ruling on a dispositive motion.   Plaintiffs have not given the Court a reason to impose this atextual limitation on Local Rule 7(m), and the Court will not do so. *See Niedermeier*, 153 F. Supp. 2d at 27 ("[T]here is simply no exception to Local Civil Rule 7.1(m) for nondispositive motions which happen to relate to dispositive motions.").

following statement from an attorney for the plaintiffs in an email to counsel for the government: "Also, we went ahead and assumed that you object to the piece on ghost preparers, but if that's not correct, let us know."  Exhibit A, ECF No. 238-1, at 2.  An email message inviting the other side to share its views on a topic is not enough to show that plaintiffs took "real steps," *K & R Ltd. P'ship*, 456 F. Supp. 2d at 52, to confer with opposing counsel and resolve the dispute without the need for judicial intervention.  Plaintiffs also failed to state in their motion whether the required discussion had occurred and whether the motion was opposed.  In light of plaintiffs' failure to comply with either requirement of Local Rule 7(m) on the ghost preparers issue, the Court will deny the motion with respect to that issue.[3]

---

[3] Even if the Court reached the merits, it would likely deny the motion with respect to ghost preparers.  On this topic the summary judgment opinion is not "ambiguous or vague." *Philip Morris*, 793 F. Supp. 2d at 168.  In fact, the Court stated *three times* that the PTIN fee properly included "the direct and indirect costs of . . . investigating ghost preparers."  *Steele*, 2023 WL 2139722, at *12, 14, 18.  And the Court defined ghost preparers are those who "used someone else's PTIN or an invalid number" (misuse) or "failed to use a PTIN" (non-use).  *Id.* at 2.  The opinion is therefore quite clear that costs relating to ghost preparers may be included in the PTIN fee.

### (ii)  Foreign Preparers

On the issue of the opinion's application to foreign preparers, the Court is satisfied that plaintiffs adequately conferred with opposing counsel.  This is evidenced by the email exchanges documented in Exhibit A of plaintiffs' reply brief.  *See* Exhibit A, ECF No. 238-1.  More than a month before the plaintiffs filed their motion, counsel for plaintiffs held a phone call with the lawyers for the government. The next day, plaintiffs' counsel sent an email to the government attorneys raising an issue not discussed on the call: foreign preparers.  *Id.* at 5.  The attorney noted his view that the summary judgment opinion did not address this issue, outlined his argument for why such expenses could not be charged as part of the PTIN fee, asked for the IRS's position on this issue, and advised that plaintiffs might raise the matter with the Court.  *Id.* at 5.  Just over a week later, the attorney sent another email to the government's attorneys stating plaintiffs' intention to ask the Court to address this issue.  *Id.* at 4.

After several days apparently without a reply, the plaintiffs' attorney again requested a response from the government lawyers.  *Id.* at 3.  A government lawyer then responded that the government did not consent to plaintiffs' "request" concerning foreign preparers.  *Id.* at 2.  The emails show that plaintiffs' counsel took real steps to confer with the government by communicating its argument on the issue of foreign preparers and its intention to ask the Court for clarification.  The plaintiffs therefore met their burden of consultation under Local Rule 7(m).

The plaintiffs did not, however, meet Local Rule 7(m)'s requirement that a party "include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed."  LCvR 7(m).  As discussed with reference to plaintiffs' motion for partial final judgment, failure to certify may suffice for a motion to be denied.  But again, the purposes of the Local Rule would not be furthered by denying this motion because the plaintiffs failed to certify,

even though they complied with the underlying substantive obligation of conferral.  The Court therefore will not deny the motion for clarification with respect to the issue of foreign preparers for failure to comply with Local Rule 7(m), and proceeds to the merits of the dispute.

### 2.  The Court Will Deny the Motion for Clarification

The Court will deny plaintiffs' motion to clarify whether registration costs for foreign preparers may be included in the PTIN fee.  The opinion is not vague or ambiguous on that topic, and this issue may not be relitigated via a motion for clarification.

"To justify a fee under the [IOAA], . . . an agency must show (i) that it provides some kind of service in exchange for the fee, (ii) that the service yields a specific benefit, and (iii) that the benefit is conferred upon identifiable individuals."  *Steele*, 2023 WL 2139722, at *7 (quoting *Montrois*, 916 F.3d at 1062–63).  *Montrois* identified "protection of preparers' identity" as a private benefit provided by the PTIN.  *Id.* at *11.  The D.C. Circuit explained that provision of a PTIN affords a benefit because "the PTIN helps protect tax-return preparers' identities by allowing them to list a number on returns other than their social security number."  *Montrois*, 916 F.3d at 1063.  In the Memorandum Opinion, this Court stated that to justify charging for an activity as part of an IOAA fee, "the government must be able to explain with respect to each activity that formed the basis for the PTIN fees how that activity was reasonably related to providing the private benefit that the Circuit identified in *Montrois*: a means of identifying return preparers that protects them from identity theft."  *Steele*, 2023 WL 2139722, at *9.  Plaintiffs have argued that "[b]ecause foreign preparers who did not have social security numbers received no benefit from the PTIN, the costs of their PTIN registration activities should not be recoverable through PTIN fees."  Motion for Clarification at 3.

But although the Court did not explicitly address foreign preparer processing, that does not mean its opinion is ambiguous or vague on that matter.  No opinion can expressly address every aspect of its application.  But the Memorandum Opinion nonetheless provided sufficient guidance on the foreign preparers issue.  The Court recognized that the benefit provided by the PTIN is "protection of preparers' identity" from identify theft.  *Steele*, 2023 WL 2139722, at *9, 11.  The Court spoke of identity theft simpliciter; it did not qualify the benefit as limited to protection against certain forms of identify theft, such as identity theft *of those who have Social Security numbers*.  Although foreign preparers will not have their nonexistent Social Security numbers stolen, they are not necessarily immune from identify theft.  Given the opinion's unqualified description of the benefit, the opinion permitted PTIN fees to be imposed for costs relating to foreign preparers.

Although plaintiffs have used their motion and reply to argue for why registration costs for PTIN fees may not be used to recover costs relating to registration of foreign preparers, "the purpose of a motion for clarification is not to re-litigate a matter that the court has considered and decided."  *Sai*, 2015 WL 13889866, at *3.  The Court will therefore deny the motion for clarification on the issue of foreign preparers.[4]

---

[4] Plaintiffs also argued that the government waived any argument that registration costs for foreign preparers may be included in PTIN fees by not responding to the argument plaintiffs raised at the summary judgment stage.  Pls.' Reply in Support of Motion for Clarification at 2.  However, even if the United States did waive its ability to respond to the argument about foreign preparers, that would not affect this Court's ability to decide the issue in its summary judgment opinion.  *Cf. Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) ("Of course not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research.").

## IV.   CONCLUSION

For the foregoing reasons, the Court will **DENY** plaintiffs' motion for partial final judgment and **DENY** plaintiffs' motion for clarification of this Court's January 23, 2023 opinion. A separate Order consistent with this Memorandum Opinion shall issue.

Date: _____9/25/23_____

Royce C. Lamberth
United States District Judge